1
2
3
4
5
6
7
8

**IN THE UNITED STATES DISTRICT COURT**

9

**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

10
11

| | | |
|---|---|---|
| PRESIDIO COMPONENTS, INC., | ) | Civil Action No.  08cv335 IEG (NLS) |
| | ) | |
| Plaintiff, | ) | **ORDER DENYING DEFENDANT'S** |
| | ) | **MOTION FOR SUMMARY JUDGMENT** |
| v. | ) | **OF INDEFINITENESS** |
| | ) | (Doc No. 18.) |
| AMERICAN TECHNICAL CERAMICS CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |
| | ) | |

19      Presently before the Court is Defendant's Motion for Summary Judgment of Indefiniteness.

20  For the following reasons the Court DENIES Defendant's motion.

21                                      **BACKGROUND**

22  **I.      Factual Background**

23          The disputed patent is entitled "Integrated Broadband Ceramic Capacitor Array."  A capacitor

24  is a device conventionally comprised of two metal plates separated by a non-conductor of direct

25  electric current.  This non-conductive material is known as a "dielectric."  Dielectric material includes

26  air or ceramic.

27          A capacitor is charged by coupling its plates to an electrical source.  Since electricity passes

28  easily through the metal plates—which are electrical conductors—but not the dielectric, a positive

electrical charge accumulates on one plate and a negative charge accumulates on the other plate.  Or,

1   put another way, electrons are introduced on one of the metal plates and electrons are depleted on the

2   other.   When thus charged, the capacitor stores energy which can then be released by connecting the

3   plates via an external path and permitting current to flow from one plate to the other.  The electrons

4   will flow off the negatively charged plate and to the positively charged plate, bringing the two plates

5   to equal relative voltage.   Two types of capacitors are utilized in the '356 patent, parallel plate

6   capacitors (left) and fringe effect capacitors (right).

7

8                                             

9

10

11        The '356 patent discloses and claims a capacitor consisting of a network of capacitors.  The

12   geometry and spacing of the multiple conductive and non-conductive layers of the multilayer capacitor

13   forms multiple parallel-plate capacitors and fringe-effect capacitors.

14        The embodiment pictured below demonstrates the positioning of conductive plates inside the

15   dielectric body (e.g., structures 10 and 11) as well as "fringe-effect capacitor" which is formed by

16   positioning the ends of two conductors in an edge-to-edge relationship (e.g., the space between 72 and

17   74 below).

18

19

20

21

22

23

24

25

26

27

28

1  **II.     Procedural Background**

2         On June 11, 2008, Defendant moved this court for summary judgment, seeking a holding that

3  claims 1-5, 16, 18 and 19 of the 356 patent are indefinite under 35 U.S.C. § 112, second paragraph,

4  which requires that "the specification shall conclude with one or more claims particularly pointing out

5  and distinctly claiming the subject matter which the applicant regards as his invention." 35 U.S.C. §

6  112. (Doc. No. 18.)

7         On the same day as Defendant filed its motion, the Court construed several disputed terms

8  associated with the 356 patent, including many at issue in the present motion.

9         From Claim 1, the Court construed **substantially monolithic dielectric body**

10        as "a dielectric body largely but not wholly without seams from the inclusion of plates

11        within the dielectric body."

12        From Claim 1, the Court construed **the second contact being located**

13        **sufficiently close to the first contact to form a first fringe-effect capacitance with**

14        **the first contact** as "an end of the first conductive contact and an end of the second

15        conductive contact are positioned in an edge-to-edge relationship in such proximity as

16        to form a determinable capacitance."

17        From Claim 3, the Court construed **the second contact being located**

18        **sufficiently close to the first contact on the second side of the dielectric body to**

19        **form a second fringe-effect capacitance with the first contact** as "another end of the

20        first conductive contact and another end of the second conductive contact are present

21        on the second side of the substantially monolithic dielectric body and are positioned in

22        an edge-to-edge relationship in such proximity as to form a determinable capacitance."

23        From Claim 19, the Court construed **the dielectric body has a hexahedron**

24        **shape** as "the substantially monolithic dielectric body has six sides."

25        On July 11, 2008, Presidio filed its opposition to Defendant's motion, along with a declaration

26  from expert Dr. Gary Ewell. (Doc. No. 23.) On July 18, 2008, ATC filed its reply. (Doc. No. 26.)

27  The Court heard oral argument on August 8, 2008.

28  //

    //

**LEGAL STANDARD**

**I.      Summary Judgment**

Summary judgment is proper where the pleadings and materials demonstrate that "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A material issue of fact is a question that a trier of fact must answer to determine the rights of the parties under the applicable substantive law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.  Summary judgment may be granted in favor of a moving party on an ultimate issue of fact where the moving party carries its burden of "pointing out to the district court that there is an absence of evidence to support the nonmoving party's case."  Celotex, 477 U.S. at 325.

The moving party bears "the initial responsibility of informing the district court of the basis for its motion." Celotex, 477 U.S. at 323.  To satisfy this burden, the moving party must demonstrate that no genuine issue of material fact exists for trial.  Id. at 322.  However, the moving party is not required to negate those portions of the non-moving party's claim on which the non-moving party bears the burden of proof.  Id. at 323.  To withstand a motion for summary judgment, the non-movant must then show that there are genuine factual issues which can only be resolved by the trier of fact.  Reese v. Jefferson School Dist. No. 14J, 208 F.3d 736, 738 (9th Cir.2000) (citing Fed. R. Civ. P. 56; Celotex, 477 U.S. at 323).  The nonmoving party may not rely on the pleadings but must present specific facts creating a genuine issue of material fact.  see Nissan Fire & Marine Ins. Co., v. Fritz Cos., 210 F.3d 1099, 1103 (9th Cir. 2000).  The inferences to be drawn from the facts must be viewed in a light most favorable to the party opposing the motion, but conclusory allegations as to ultimate facts are not adequate to defeat summary judgment.  Gibson v. County of Washoe, Nev., 290 F.3d 1175, 1180 (9th Cir. 2002).  The court is not required "to scour the record in search of a genuine issue of triable fact," Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir.1996), but rather "may limit its review to the documents submitted for purposes of summary judgment and those parts of the record specifically referenced therein."  Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1030 (9th Cir. 2001).

**II.     Indefiniteness**

Proof of indefiniteness requires an accused infringer to show by clear and convincing evidence

-4-

1   that a skilled artisan could not discern the boundaries of the claim based on the claim language, the

2   specification, and the prosecution history, as well as her knowledge of the relevant art area.

3   Halliburton Energy Services, Inc. v. M-I LLC, 514 F.3d 1244, 1249-50 (Fed. Cir. 2008).  Put another

4   way, a "claim is indefinite if its legal scope is not clear enough that a person of ordinary skill in the art

5   could determine whether a particular [apparatus] infringes or not."  Geneva Pharmaceuticals, Inc. v.

6   Glaxosmithkline PLC, 349 F.3d 1373, 1384 (Fed. Cir. 2003).

7        The definiteness requirement does not compel absolute clarity.  Only claims not amenable to

8   construction or insolubly ambiguous are indefinite."  Datamize, LLC v. Plumtree Sfotware, Inc., 417

9   F.3d 1342, 1347 (Fed. Cir. 2005).  If the meaning of the claim is discernable, even though the task may

10  be formidable and the conclusion may be one over which reasonable persons will disagree, the Federal

11  Circuit has held the claim sufficiently clear to avoid invalidity on indefiniteness grounds.  Id.  That is,

12  a claim is not indefinite due to alleged ambiguity when the meaning is ascertained from the description

13  in the specification.  Howmedica Osteonics Corp. v. Tranquil Prospects, Ltd., 401 F.3d 1367, 1371

14  (Fed. Cir. 2005) (claim not indefinite due to ambiguity when meaning readily ascertained from the

15  description in the specification).

16       The Federal Circuit has explained that determination of claim indefiniteness is a legal

17  conclusion that is drawn from the court's performance of its duty as the construer of patent claims.

18  Exxon Research and Eng'g Co. v. United States, 265 F.3d 1371, 1376 (Fed. Cir. 2001).  In making

19  such a determination, a Court may consider or reject certain extrinsic evidence in resolving disputes

20  en route to pronouncing the meaning of claim language.  In so doing, the court is not crediting certain

21  evidence over other evidence or making factual evidentiary findings, rather, the court is looking to the

22  extrinsic evidence to assist in its construction of the written document.  Id.

23       As several district courts have observed, however, while the Federal Circuit has described the

24  indefiniteness inquiry as a question of law, where evidence beyond the claims and written description

25  may be reviewed, factual issues are likely to arise.  See Hako-Med USA, Inc. v. Axiom Worldwide,

26  Inc., 2008 WL 2943367, *8 (M.D. Fla. July 29, 2008) (where evidence on indefiniteness consisted of

27  contradictory expert opinion, summary judgment as to indefiniteness improper); Enzo Life Sciences,

28  Inc. v. Digene Corp., 305 F.Supp.2d 406, 408 (D. Del. 2004) (recognizing inherent tension in case law

surrounding the appropriateness of resolving indefiniteness questions as a matter of law); System

1   <u>Management Arts Inc. v. Avesta Tech., Inc.</u>, 137 F.Supp.2d 382, 399 (S.D.N.Y. 2001) (collecting cases

2   and discussing tension in case law regarding indefiniteness as a question of law; concluding question

3   of indefiniteness must be evaluated under ordinary standards applicable to a summary judgment

4   motion; ultimately finding extrinsic evidence was sufficient to give rise to a genuine issue of material

5   fact as to indefiniteness).

6          Here, the Court considers the question of indefiniteness under the ordinary standards applicable

7   to summary judgment motion and bearing in mind the burden of proof on the party alleging invalidity.

8                                          **DISCUSSION**

9   **I.      Challenge to Claim 1**

10          a.      Background

11          Claim 1 describes the following integrated capacitor (terms challenged on indefiniteness

12   grounds are bolded):

13                  A capacitor comprising: **[1] a substantially monolithic dielectric body**;

14                  a conductive first plate disposed within the dielectric body;

15                  a conductive second plate disposed within the dielectric body and
16                  forming a capacitor with the first plate;

17                  a conductive first contact disposed externally on the dielectric body and
                    electrically connected to the first plate; and

18
                    a conductive second contact disposed externally on the dielectric body
19                  and electrically connected to the second plate, and **[2] the second
                    contact being located sufficiently close to the first contact** to form
20                  **[3] a first fringe-effect capacitance** with the first contact.

21          b.      Indefiniteness

22          ATC argues Claim 1 is indefinite because it contains three indefinite claim elements,

23   specifically, those identified above: (i) a substantially monolithic dielectric body; (ii) the second contact

24   being located sufficiently close to the first contact to form a first fringe-effect capacitance with the first

25   contact; (iii) a first fringe-effect capacitance.

26                  i.      "a substantially monolithic dielectric body"

27                          1.      Parties' Argument

28          ATC asserts that the evidence thus forth has established that the term "substantially monolithic

dielectric body," even as construed by the Court, is indefinite, in turn making Claim 1 indefinite.  ATC

1  notes that the '356 patent does not expressly define the phrase "substantially monolithic dielectric
2  body" and that Presidio's initial expert in this case, Dr. Goldshalk, admitted there is no objective test
3  in the technical literature or elsewhere to determine whether a dielectric body is substantially
4  monolithic.

5        Presidio relies on the declaration of its new expert Dr. Gary Ewell—a technical consultant with
6  at least twenty years experience in the field of multilayer capacitors, including a recent emphasis on
7  capacitor reliability testing—who asserts the term substantially monolithic dielectric body, as defined
8  by the Court, is clear and understandable to a person trained in the art.  He explains that when multiple
9  capacitors are sintered, as described and claimed in the '356 patent, the results in voids, gaps, and
10 seams, rendering the structure–an array of capacitors—"substantially monolithic." That is, monolithic,
11 but to a lesser degree than a single capacitor.  Dr. Ewell describes this "monolithicness" as a comment
12 on the structure's physical integrity, i.e., its ability to resist fracturing when subjected to the normal
13 range of forces involved in placing the component on a substrate and then to normal stresses involved
14 in its application by the user.  In accordance with this definition, Dr. Ewell proposes a test for
15 determining whether a particular dielectric body is "substantially monolithic" or not.  He posits that
16 a sample in question would be put through the normal manufacturing and testing sequence as well as
17 higher-level electronic assembly.  If the internal gaps, voids, and seams are so small or minor within
18 the parts that the samples remain integral under those conditions and do not fragment or break into
19 pieces, then the body would be considered "substantially monolithic."  If the samples did fragment or
20 shatter, then the body would not be considered "substantially monolithic."  (See Doc. No. 23,
21 Presidio's Opp'n, Ex. 5, Declaration of Gary James Ewell, pg. 2-5.)

22       In its reply, ATC rejects Dr. Ewell's proposed test, arguing there is no causal link between
23 whether a capacitor is "substantially monolithic" and whether the capacitor stays intact under certain
24 usage conditions.  ATC also finds Dr. Ewell's test insufficiently defined; ATC points out that Dr. Ewell
25 does not provide specific conditions in either his declaration or deposition which would outline the
26 parameters of the proposed reliability testing.

27                    2.     Court's Construction
28       This Court's Claim Construction Order construed the term **substantially monolithic dielectric**
**body** as "a dielectric body largely but not wholly without seams from the inclusion of plates within the

-7-

dielectric body." This was the Court's conclusion, based on examination of the patent as well as testimony of Defendant's expert, Dr. Joseph P. Dougherty, as to "the ordinary and customary meaning of a claim term," i.e., "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, as of the effective date of the patent application." Phillips v. AWH Corp., 415 F.3d 1303, 1313 (Fed. Cir. 2005). This was the construction advanced in the alternative by ATC—whose primary argument at the Claim Construction Hearing was (as it is now) that this claim term is indefinite.

ATC essentially contends the Court's construction did not cure the indefiniteness problem since a term of degree like substantially cannot be applied to the concept of "monolithicness." Further, even in the words of the Court's construction, argues ATC, a skilled artisan is without guidance as to whether a structure is largely but not wholly without seams.

3.   Analysis

The use of the word "substantially" in claim language does not by itself render a claim fatally indefinite. See e.g., Pave Tech, Inc. v. Snap Edge Corp., 952 F.Supp. 1284, 1292 (N.D. Ill. 1997) (term "substantial," when considered in light of entire claimed invention, was as accurate as subject matter permitted, and provided sufficient guidance to one skilled in the art); James River Corp. of Virginia v. Hallmark Cards, 915 F.Supp. 968, 989 (E.D. Wisc. 1996) (word "substantially" in the term "substantially integrated" was sufficiently defined, since one skilled in the art could recognize the difference between prior art and the claimed invention).

Instead, as the Federal Circuit has explained, the key consideration is whether the language provided sufficient guidance to one skilled in the art as to the scope of the claimed invention. See Verve, LLC v. Crane Cams, Inc., 311 F.3d 1116, 1120 (Fed. Cir. 2002) ("It is well established that when the term 'substantially' serves reasonably to describe the subject matter so that its scope would be understood by persons in the field of the invention, and to distinguish the claimed subject matter from the prior art, it is not indefinite.").

At the outset, the Court notes its rejection of ATC's challenge to Dr. Ewell's qualifications. While Dr. Ewell stated he does not design multi-layer capacitors in his current position, his long experience regarding capacitors, including evaluating capacitor reliability and compliance with a particular specification, qualify him to opine on how a skilled artisan would apply the claim language.

1    Dr. Ewell's declaration suggests someone skilled in the art would be able to apply the claim

2    language "a substantially monolithic dielectric body" so as to determine whether a particular device

3    was inside or outside the scope of Claim 1 by performing the reliability testing he frequently conducts

4    and which he asserts would be familiar to a skilled artisan.  While Dr. Ewell's testimony is less than

5    complete—he does not define parameters of the testing regime endorsed—Defendant has not

6    specifically rebutted Dr. Ewell's assertions concerning the accuracy or prevalence of such reliability

7    testing.  Dr. Dougherty's statement at the time of claim construction merely faulted the specification

8    for failing to teach the difference between a substantially monolithic and non-monolithic dielectric

9    body.  No subsequent statement from Dr. Dougherty has been made in reference to the type of testing

10   described by Dr. Ewell.  (See Doc. No. 18, Rule 4.2 Statement of Dr. Joseph P. Dougherty In Support

11   of ATC's Claim Construction, Ex. 8, pg. 22-23.)

12   Under the circumstances, ATC has failed to demonstrate by clear and convincing evidence that

13   the language of the claim is insolubly ambiguous, and Defendant's motion for summary judgment of

14   indefiniteness must fail.

15                      ii.    the second contact being located sufficiently close to the first contact to form
                               a first fringe-effect capacitance with the first contact"
16                      1.     Parties' Argument

17                 ATC argues this term is indefinite since there is no workable objective standard for determining

18   what degree of closeness is sufficient, the term "sufficiently close" does not distinguish the invention

19   from prior art, and "sufficiently close . . . to for a fringe-effect capacitance" is improperly functional

20   since it attempts to define the invention in terms of what it accomplishes as opposed to what it is.  ATC

21   asserts that a fringe-effect capacitance is always present wherever two electric conductors are

22   positioned in an edge-to-edge relationship meaning there is no minimum distance at which the fringe-

23   effect capacitance suddenly appears.  Accordingly, ATC argues such a term—which simply recites the

24   first and second conductive contacts located "sufficiently close" to form a fringe-effect capacitance—is

25   ambiguous.  ATC points out that Presidio's prior expert admitted there was not enough data in the

26   patent to define the fringe-effect capacitance reflected in the patent's drawings.  Similarly, ATC claims

27   that "sufficiently close to form a fringe-effect capacitance" fails to distinguish the alleged invention

28   from specific prior art identified in the '356 patent since none of the figures provide values of the gap

     widths for the fringe-effect capacitances represented.  Further, ATC argues the language is indefinite

1   because Presidio has used "functional language," that is, Presido has defined its invention by what it

2   is intended to do, i.e., form a fringe-effect capacitance by locating contacts sufficiently close, rather

3   than what it is, i.e., structural dimensions of the contacts.

4          Presidio argues the term is definite based on the Court's construction of "sufficiently close"

5   as a proximity close enough to form a "determinable capacitance." Presidio further asserts that whether

6   a fringe-effect capacitance is determinable, can be tested and there is an objective workable standard

7   that one skilled in the art would employ to do so. Dr. Ewell's declaration sets forth an objective test

8   for determining whether or not two edges are "sufficiently close to form a determinable capacitance":

9   If the first and second contacts are close enough such that the capacitance formed affects the insertion

10  or data loss of the network or array of capacitors, then it is determinable and falls within the scope of

11  this claim term. (See Doc. No. 23, Presidio's Opp'n, Ex. 5, Declaration of Gary James Ewell, pg. 5-8.)

12         ATC asserts Dr. Ewell's construction is inconsistent with the Court's Claim Construction Order

13  in which this Court rejected a definition of "sufficiently close" which would have incorporated an

14  effect on high frequency performance. In addition, ATC faults Dr. Ewell for failing to provide a

15  specification for how testing regarding the determinability of the capacitance formed by the fringe

16  effect capacitor would be conducted.

17                              2.      Court's Construction

18         The Court held the term **the second contact being located sufficiently close to the first**

19  **contact to form a first fringe-effect capacitance with the first contact** means "an end of the first

20  conductive contact and an end of the second conductive contact are positioned in an edge-to-edge

21  relationship in such proximity as to form a determinable capacitance."

22                              3.      Analysis

23         In his declaration, Dr. Ewell states that as defined by the Court, whether an edge-to-edge

24  capacitance is "determinable" depends on whether the presence of such a fringe-effect capacitance has

25  an effect on the performance of the entire capacitor array. He asserts that one of ordinary skill in the

26  art would be able to make such a determination through testing involving samples of each family of

27  array designs. Each design would seek to vary the strength of the fringe effect capacitor by varying

28  the spacing of the external surface conductors forming the capacitor. The artisan could then electrically

measure the properties of the various groups of samples and associate the change in electrical

1    properties, effect on insertion loss, and effect on data loss from group to group, with the variation in

2    the design of the fringe-effect capacitor.  If the capacitor change resulted in a specific change in the

3    array's electrical properties, then it would be determinable.  These changes in the array's properties

4    caused by fringe-effect capacitors, explains Dr. Ewell, distinguishes the '356 patent from prior art.

5           Dr. Ewell's testimony does not contradict the Court's Claim Construction but merely reflects

6    his opinion as to how the claim term as defined by the Court would be understood by a skilled artisan.

7    Once again, Dr. Dougherty's statement, delivered at the time of claim construction, contains no directly

8    contradictory claims regarding the propriety of such testing or whether it would reveal a

9    "determinable" capacitance.  (See Doc. No. 18, Rule 4.2 Statement of Dr. Joseph P. Dougherty In

10   Support of ATC's Claim Construction, Ex. 8, pg. 29-30.)

11          The Court also rejects ATC's functionality argument.  The Federal Circuit has held that claim

12   language is not necessarily indefinite for using functional language.  Microprocessor Enhancement

13   Corp. v. Texas Instruments Inc., 520 F.3d 1367, 1375 (Fed. Cir. 2008).  There is nothing intrinsically

14   wrong with using functional language in claims, unless it fails to provide a clear-cut indication of the

15   scope of subject matter embraced by the claim.  See id.  As discussed above, the specification and Dr.

16   Ewell's testimony provide sufficient description of the scope of the claim.

17          With respect to this challenged term, ATC has failed to demonstrate by clear and convincing

18   evidence that the language of the claim is insolubly ambiguous, and Defendant's motion for summary

19   judgment of indefiniteness as to this term must also fail.

20                      iii.     "a first fringe-effect capacitance"

21                      1.      Parties' Argument

22          ATC argues the term "first fringe-effect capacitance" is indefinite since the patent does not

23   define how to identify which fringe-effect capacitance is the "first."

24          Presidio argues the first and second contacts may be one of an arbitrary number of fringe-effect

25   capacitors along the surface of the monolithic array of capacitors.

26                      2.      Court's Construction

27          As discussed above, the Court held the term **the second contact being located sufficiently**

28   **close to the first contact to form a <u>first fringe-effect capacitance</u> with the first contact** means "an

     end of the first conductive contact and an end of the second conductive contact are positioned in an

1   edge-to-edge relationship in such proximity as to form a determinable capacitance."

2   //

3

4                          3.      Analysis

5          Dr. Ewell's explains that one of ordinary skill in the art would understand the word "first" in

6   the claim language as relating to the first of an arbitrary numbering of multiple fringe-effect capacitors.

7   Dr. Ewell's declaration is consistent with the Court's Claim Construction Order which treats the

8   numbering of the fringe effect capacitors formed by the contacts as arbitrary.

9          Defendant's motion for summary judgment of indefiniteness on this term also fails.

10  **II.      Challenge to Claims 2-5, 16, 18, and 19**

11         a.      Background

12         Claims 2-5, 16, 18, and 19 are all dependent on Claim 1.  Accordingly, ATC argues Claims 2-5,

13  16, 18, and 19 are indefinite because they do not cure the deficiencies of Claim 1 which is itself

14  indefinite.

15         As discussed above, the Court rejects Defendant's contention that summary judgment for

16  indefiniteness is appropriate as to Claim 1, thus the Court does not find dependant claims indefinite

17  based on Claim 1.

18         However, in addition to the arguments above, ATC argues certain of the claims are indefinite

19  for additional reasons.  Specifically, ATC identifies (1) Claim 3; (2) Claim 18; and (3) Claim 19.

20         b.      Indefiniteness

21              i.      Claim 3

22         ATC argues that in Claim 3, the term "the second contact being located sufficiently close to

23  the first contact on the second side of the dielectric body to form a second fringe-effect capacitance

24  with the first contact" is indefinite for the same reasons discussed with respect to use of "sufficiently

25  close" in Claim 1.

26         The analysis for this term and the challenged term in Claim 1 is identical.

27         For the reasons discussed above, the Court finds Defendant's motion for summary judgment

28  of indefiniteness on this term fails.

    //

1 //

2

3     ii.  Claim 18

4      1.  Parties' Argument

5   ATC argues the use of the term "the ceramic body" in Claim 18 makes the claim indefinite

6 since there is no prior recitation of "a" ceramic body, meaning the term "the" ceramic body lacks an

7 antecedent basis and has no reasonably ascertainable meaning.

8   Presidio maintains that dependent Claim 18 and the term the ceramic body" refers to the

9 dielectric body recited in independent Claim 1.  Presidio notes there is nothing else in Claim 1 to which

10 the term the ceramic body could refer.  Presidio cites Dr. Ewell's declaration and his assertion that one

11 skilled in the field would understand that the ceramic body in claim 18 refers to the dielectric body

12 recited in Claim 1.

13      2.  Analysis

14   The failure to provide explicit antecedent basis does not always render a claim indefinite.

15 Manual of Patent Examining Procedure ("MPEP") § 2173.05(e).  If the claim is reasonably

16 ascertainable by those skilled in the art, then the claim is not indefinite.  Energizer Holdings Inc. v.

17 International Trade Comm'n, 435 F.3d 1366, 1369 (Fed. Cir. 2006).

18   Dr. Ewell states that one of ordinary skill in the art would immediately understand the phrase

19 "the ceramic body" in Claim 18 is referring to the "dielectric body" in Claim 1 based on the practice

20 of many writers and manufacturers to use the terms interchangeably.  Dr. Ewell's declaration is

21 supported by Claim 18's dependance on Claim 1 and the '356 patent's express mention of ceramic as

22 a dielectric.

23   Defendant's motion for summary judgment of indefiniteness on this term also fails.

24     iii.  Claim 19

25      1.  Parties' Argument

26   ATC argues that while Claim 19 purports to claim a dielectric body having a particular shape,

27 the term "hexahedron" is indefinite because while stating the number of sides, it does not define any

28 shape.  ATC notes that several shapes have six sides.

  Presidio argues the claim term defines a structure that is a hexahedron shape and also a

capacitor.  Accordingly, someone learned in the art would understand that what is claimed is a capacitor with six sides, not counting very minor additional sides formed by the surfaces of external conductive layers.  Presidio cites Dr. Ewell's declaration, which notes that all commercially available monolithic dielectric bodies manufactured in the United States have at least six sides.

### 2.    Court's Construction

The Court construed the term **the dielectric body has a hexahedron shape** as "the monolithic dielectric body has six sides.

### 3.    Analysis

The parties' briefs have centered on the question of whether the Court's construction ("the monolithic dielectric body with six sides") would also include a monolithic dielectric body with more than six sides, i.e. six sides and two additional sides.

This inquiry is further afield than the definiteness issue presently before the Court, with the parties' arguments apparently previewing issues of infringement.

The declarations of both experts implicitly concede that a skilled artisan could determine whether a dielectric body has six sides.  Accordingly, Defendant's motion for summary judgment of indefiniteness on this term also fails.

### CONCLUSION

For the foregoing reasons, the Court concludes ATC has not shown by clear and convincing evidence that the challenged terms are indefinite, the Court DENIES Defendant's motion for summary judgment.

**IT IS SO ORDERED.**

**DATED: August 22, 2008**

**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**

-14-