UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| PRESIDIO COMPONENTS, INC., | ) | Civil No. 08cv335 IEG (NLS) |
| Plaintiff, | ) | |
| v. | ) | **ORDER:** |
| | ) | |
| AMERICAN TECHNICAL CERAMICS CORPORATION, | ) ) ) | **(1) GRANTING PRESIDIO'S MOTION TO QUASH DEFENDANT'S OBJECTIONS TO DISCLOSURE TO EXPERTS [Doc. No. 34]; and** |
| Defendant. | ) | |
| | ) | **(2) DENYING ATC'S MOTION TO DISQUALIFY DR. EWELL** |
| AMERICAN TECHNICAL CERAMICS CORPORATION, | ) ) | **[Doc. No. 41].** |
| Counterclaimant, | ) | |
| v. | ) | |
| PRESIDIO COMPONENTS, INC., | ) | |
| Counterdefendants. | ) ) | |

Plaintiff Presidio Components, Inc. (Presidio) filed a motion to quash certain objections of Defendant American Technical Ceramics Corp. (ATC) to Presidio's disclosure of experts. Presidio argues that ATC's objections are frivolous and lack reasonable justification, and are meant to unduly delay this lawsuit. ATC opposes the motion. In conjunction with its opposition to the motion to quash, ATC filed a motion to disqualify Presidio's designated expert, Dr. Ewell. ATC argues that Dr. Ewell should be disqualified due to a conflict of interest and appearance of impropriety. Presidio opposes the motion to disqualify.

1  The Court reviewed all records related to both motions and determined it could decide the
2  motions based on the papers and without oral argument.  For the reasons set forth below, the Court
3  **GRANTS** Presidio's motion to quash and **DENIES** ATC's motion to disqualify Dr. Ewell.
4  **Relevant Facts.**
5  Presidio told ATC on August 11, 2008 that it intended to disclose to its expert witnesses
6  confidential and/or attorney's eyes only information that ATC produced in discovery.  Mem. Ps&As,
7  Ex. A.  The three experts, Dr. Gary Ewell, Dr. Wayne Huebner and Mr. Glenn Newman, each executed
8  an agreement to be bound by the Protective Order.  Presidio sent ATC a detailed curriculum vitae (CV)
9  for each of the experts.  Those CVs disclose each expert's title, job responsibilities and affiliations.  *Id.*
10 Presidio claims they also disclose each expert's employment, consulting history for the past five years
11 and the subject matter of any consultations.  ATC disagrees that Dr. Huebner's CV discloses the subject
12 matter of his consultations for the past five years.
13 In brief, Dr. Gary Ewell has extensive experience regarding testing of multi-layer capacitors.  He
14 intends to provide testimony regarding the validity of the '356 patent and infringement of the '356
15 patent by ATC's 545L capacitor.  Dr. Ewell has already been deposed in this case.  Dr. Wayne Huebner
16 is an expert in multi-layer capacitors and the materials used in them, including ceramics.  He may
17 provide testimony regarding infringement of the '356 patent by ATC's 545L capacitor.  Mr. Glenn
18 Newman is a CPA expected to provide expert financial testimony.
19 On August 25, 2008, ATC objected to the disclosure to Presidio's three experts of information
20 that ATC had designated confidential and attorney's eyes only.  Mem. Ps&As, Ex. B.  ATC objected
21 because (1) the CVs did not disclose the past five years of consulting work for the three experts or the
22 subject matter of their engagements; and (2) there is no need to disclose the information to both Drs.
23 Ewell and Huebner.
24 On September 2, 2008, Presidio identified a single additional consultation for Dr. Ewell and one
25 for Dr. Huebner that were not listed in their CVs.  Presidio gave ATC a detailed list of every
26 consultation with which Mr. Newman had any connection over the last five years.  Mr. Newman
27 specifically represented that he had no conflict with any party involved in this matter.  Mem. Ps&As,
28 Ex. C.  After receiving this new information, ATC withdrew its objection to Mr. Newman having access

to confidential information regarding ATC's sales, finance and marketing, so that he may prepare Presidio's damages report. *Id.* ATC maintained the objection, however, regarding Mr. Newman's access to its confidential technical documents. *Id.* Presidio acknowledged that ATC withdrew its objection, and does not appear to argue that Mr. Newman should have access to ATC's confidential technical information. In addition, ATC raised a new objection that Dr. Ewell may have a conflict of interest due to his employment with the Aerospace Corporation. Mem. Ps&As, Ex. D.

The three issues remaining for this Court to resolve are whether (1) Dr. Huebner should have access to ATC's confidential information as a result of incomplete disclosure; (2) access to ATC's multilayer capacitor confidential information should be allowed for Presidio's two technical experts, Drs. Huebner and Ewell; and (3) Dr. Ewell should be disqualified for a conflict of interest or an appearance of impropriety due to his affiliation with the Aerospace Corporation.

**Discussion.**

### 1. Dr. Huebner's Access to ATC's Confidential Information.

ATC complains that the supplemental disclosure of consulting work for Dr. Huebner did not cure Presidio's initial alleged non-compliance with the disclosure requirements. ATC says that the consulting history provided in Dr. Huebner's CV includes only a selected list of companies for which he consulted and does not specify "the subject matter of such engagements." The CV also mentions "72 research contracts" sponsored by different named entities, but again does not specify the subject matter of that research. Without such information, ATC argues it cannot determine whether Dr. Huebner is in a position to inadvertently use or disclose its confidential information. ATC asks that the Court compel Presidio to make an additional disclosure regarding Dr. Huebner's consulting work in the last five years and state its subject matter.

The Protective Order requires that a party that wishes to disclose confidential information to an expert notify all counsel, in writing, of the intent to disclose. "[T]he notice shall also include the person's resume, curriculum vitae or other information *adequate* to disclose the person's employment and consulting history for the past five (5) years, including the subject matter of such engagements." Protective Order, Opp'n Ex. 1 ¶ 10(b) (emphasis added).

This Court finds that Dr. Huebner's CV, along with the supplemental letter from Presidio to

ATC, provides ATC with the necessary information to determine if there is any risk of disclosure of ATC's confidential information by Dr. Huebner. Dr. Huebner's CV includes information on his education, academic experience, honors and awards, professional societies, publications, conferences, books, patents, research accomplishments, Ph.D students, M.S. students, support to associates and professors, teaching techniques, courses taught, professional service and personal service. Mem. Ps&As, Ex. A. The CV discloses the identities of companies for which he performed research contracts and consultations. *Id.* at 12, 23. While the subject matters of Dr. Huebner's engagements are not listed next to each specific company identified, the other sections of his CV identify the subject matter of his research and work. Further, ATC has not objected to any of the companies identified.

Also, Presidio has already confirmed that Dr. Huebner has no other consulting history for the past five years except for a single additional consultation, which Presidio already identified to ATC. Mem. Ps&As, Ex. C. Finally, if Dr. Huebner did disclose confidential information to a prohibited person or entity under the protective order, ATC has a remedy to address that disclosure because Dr. Huebner executed an agreement to be bound by the Protective Order and is thus bound by its terms.

The Court finds Dr. Huebner's CV, and Presidio's additional disclosure about his CV, to provide information adequate to disclose Dr. Huebner's consulting history, including subject matters, for the past five years. Therefore, this Court finds no grounds to order Presidio to make an additional disclosure tying the subject matter of Dr. Huebner's work to a specific company, nor grounds to compel Presidio to make an additional disclosure regarding Dr. Huebner's consulting work in the last five years.

**2.     Access to ATC's Confidential Information for Presidio's Two Technical Experts.**

ATC objects to the duplicative disclosure of its confidential information to Presidio's two technical experts, Drs. Ewell and Huebner. ATC relies on *Carpenter Tech. Corp. v. Armco, Inc.*, 132 F.R.D. 24, 28 (E.D. Pa. 1991), where the court refused to grant access to confidential information for both in-house counsel because the plaintiff did not satisfactorily explain why they must both have access. ATC also relies on *In re Papst Licensing, GmbH, Patent Litig.*, 2000 U.S. Dist. LEXIS 6374 (E.D. La. 2000), which held that a patent prosecutor seeking access to an adversary's confidential information presented too great a risk of inadvertent disclosure because that attorney acted as a competitive decisionmaker regarding the company's patent prosecutions. Here, ATC is concerned that

because each expert will likely be assisted by others, the risk of inadvertent disclosure through others is even greater, given the larger number of recipients. ATC argues that Presidio's "unexplained need for multiple access must be balanced against ATC's need to reasonably protect its Confidential Information." Opp'n, p.5.

The Court disagrees with use of ATC's proposed balancing test to determine whether the confidential information should be disclosed. First, ATC assumes that Presidio, by using two technical experts, will seek to present duplicative infringement testimony at trial. Opp'n, p.5. At this point, the Court finds no basis on which to make such an assumption. Presidio represents that Dr. Ewell, who has extensive experience regarding the testing of multi-layer capacitors, will testify regarding validity of the '356 patent and infringement of the '356 patent by the 545L capacitor. Presidio's Reply, p.14. Presidio represents that Dr. Huebner, who has extensive experience regarding multi-layer capacitors and the relationship between capacitor performance and materials used in them, including ceramics, may testify regarding the use of materials and ceramics for use in multi-layer capacitors and infringement of the '356 patent by the 545L capacitor. *Id.* at 14-15. Presidio selected Drs. Huebner and Ewell based on their respective, and different, expertise.

Second, the Court does not agree with ATC that Presidio needs to explain to ATC why its technical experts need to access ATC's confidential information. ATC acknowledges that its confidential information is relevant to the issue of infringement. Opp'n, p.6. Further, case law recognizes that the commercial success of an infringing product, failure of other products and copying may be relevant to the issue of validity. *Graham v. John Deere Co. of Kan. City*, 383 U.S. 1, 17-18 (1966) (finding commercial success and internal failures may be relevant to the obviousness or non-obviousness of the product); *Allen Eng'g Corp. v. Bartell Indus.*, 299 F.3d 1336, 1351 (Fed. Cir. 2002) (stating "copying may have relevance not on infringement but on validity as one of a number of 'indicia of obviousness or nonobviousness'").

Third, ATC's need to reasonably protect its confidential information is already addressed by both experts executing agreements to be bound by the Protective Order. Because both experts are bound by the terms of the Protective Order, if there is an improper disclosure, ATC has remedies. Finally, ATC bases its argument on case law that relates to the disclosure of confidential information to in-house

counsel and outside counsel that prosecute patent applications. The Court finds the cases inapposite because disclosure to counsel in those cases hinged on whether the counsel at issue were competitive decisionmakers. Here, the two technical experts are not competitive decisionmakers for Presidio.

For these reasons, the Court finds that Presidio's two technical experts may access ATC's confidential and attorney's eyes only information.

### 3. Disqualification of Dr. Ewell.

ATC moves to disqualify Dr. Ewell as ATC's expert. Dr. Ewell has already participated substantively in this case. He submitted a declaration in support of Presidio's opposition to ATC's motion for summary judgment, and ATC deposed him regarding his declaration. ATC says that in his deposition, Dr. Ewell testified he is retired from full-time employment but currently works part-time for Aerospace Corporation.[1] ATC understands Dr. Ewell to be a current, part-time Aerospace employee. Opp'n, p.7 n.5. It also understands that Aerospace Corporation is part of the U.S. Government because it believes Dr. Ewell to be a "government auditor and tester." Opp'n, p.7. ATC argues that Dr. Ewell's engagement as Presidio's expert witness poses both a personal and an organizational conflict of interest, because Dr. Ewell is "a government inspector . . . taking sides in a private dispute between two current government suppliers." Opp'n, pp.8, 9. Further, ATC argues that due to Dr. Ewell's "employment by the Government" and service as Presidio's witness, ATC will be denied a fair trial.

Presidio argues that ATC has fabricated a potential conflict of interest regarding Dr. Ewell and his employment with Aerospace Corporation. First, it argues that, as Dr. Ewell stated in his deposition, he is no longer an Aerospace employee. Second, Presidio says that ATC cannot point to a single project or contract that could possibly result in a conflict of interest. Further, Dr. Ewell has confirmed under oath that there is no current conflict, nor could there be a future conflict, due to his relationship with Aerospace Corporation. Finally, Presidio argues that ATC will not be prejudiced at trial because Dr. Ewell has never been a government employee, as the Aerospace Corporation is not a branch of the U.S. Government.

///

---

[1] ATC cites to Dr. Ewell's deposition and includes portions of it as Exhibit 5 to its motion, but does not include in the exhibit the page they cite to for this quote.

### A. Conflict of Interest.

Aerospace Corporation has specific policies governing personal conflicts of interest:

> 6. The corporation's standard of conduct includes any potential or apparent conflicting interest in, profit from, or personal business relationship with, any organization that has a contractual *or business* relationship with The Aerospace Corporation or its customers, or has a proposal pending for any contract or subcontract.
>
> *6.1 Organizations of interest also include those over which the corporation may exercise some degree of review or oversight in the course of performing its contracts for Government customers, including without limitation, those principal associate contractors of the Air Force Space and Missile Systems Center and other U.S. Government organizations that interface with the corporation on a regular basis and who are included in the corporation's Conflict of Interest Listing available online at http://infodev2.aero.org/hr/resources/COI_listing.pdf.*

Ex. 7, Aerospace Employee Conduct - Conflict of Interest (emphasis in original).

Aerospace Corporation also has specific policies governing organizational conflicts of interest:

> Organizational conflicts of interest are those that can arise as a result of the corporation doing business with contractors that compete against each other or performing services for customers over which Aerospace may also exercise oversight responsibility in performing its traditional role for its government customers. It is the fundamental policy of The Aerospace Corporation that, where an organizational conflict of interest cannot be eliminated or mitigated to the satisfaction of the parties involved, the corporation will decline to accept or will recuse itself from performing the conflicted services.

Ex. 9, Aerospace Organizational Conflict of Interest.

ATC argues that a personal conflict of interest stems from Dr. Ewell's "personal business relationship with" Presidio because he is profiting from Presidio as its expert witness. It says this relationship is improper because Aerospace "exercise[s] some degree of review or oversight [over Presidio] in the course of performing its contracts for Government customers," due to Presidio supplying capacitors to large government defense contractors. Opp'n, p.9. ATC argues there is also an organizational conflict because Dr. Ewell's involvement in this case deviates from his responsibility to avoid conflicts of interest and appearances of impropriety.

The Court does not find a personal conflict of interest based on Dr. Ewell's past employment with or current consulting services for Aerospace Corporation. First, Dr. Ewell retired from Aerospace more than one year ago. Presidio Reply, Ex. C, Ewell Decl. ¶ 4. Before he accepted to serve as

Presidio's expert witness, he confirmed there would be no conflict of interest or appearance of conflict of interest based on the fact that he was formerly an Aerospace employee. *Id.* at ¶ 9. Dr. Ewell disclosed to Aerospace that he was considering serving as Presidio's expert witness for this matter, and Aerospace did not disapprove. *Id.*

Second, Dr. Ewell currently provides only limited consulting services for Aerospace. *Id.* at ¶ 5. He is paid hourly for those services. *Id.* Those consulting services "relate solely to government specifications for satellite applications. None of the consulting services . . . relate to commercial projects." *Id.* at ¶ 6. In particular, none of these services have related to or involved ATC, Presidio, or their products. *Id.* at ¶ 7. Further, ATC does not cite to any convincing evidence that Dr. Ewell is actually a part-time Aerospace employee. It only points to Dr. Ewell's statement that on Monday through Thursday of the week he was deposed, he had done some work for Aerospace--which to ATC-- did "not even sound like part-time or 'limited consulting services' as Presidio claims." ATC Reply, p.3. ATC's impression alone is not enough to conclude that because Dr. Ewell worked for four days on an Aerospace commitment, he is somehow an Aerospace employee. There is no other evidence suggesting that Dr. Ewell does this amount of work for Aerospace every week, or that he receives a salary from Aerospace, or is otherwise "employed" by Aerospace. Notably, at the deposition ATC did not follow up this line of questioning with further questions regarding Dr. Ewell's current work for Aerospace.

Third, the Court is unsure of how, as ATC contends, Aerospace Corporation exercises oversight over Presidio based on Presidio supplying capacitors to government customers. ATC does not definitively identify which Aerospace customers do business with Presidio, and how Aerospace might oversee Presidio for the products at issue. ATC's general allegations are insufficient to show that Presidio's retainer of Dr. Ewell violates Aerospace's personal conflict of interest provisions.

Finally, even if Dr. Ewell could be considered an Aerospace employee, he could still serve as an expert witness. Aerospace permits its employees "to engage in other outside business activities, which can be rewarding both professionally and monetarily, provided there is no conflict with the corporation's mission and contractual obligations." Presidio Reply, Ex. E, Aerospace Corporation Standards of Business Conduct. And, while he was an Aerospace employee, Dr. Ewell served as an expert witness on two occasions. *Id.* at ¶ 10.

Regarding the organizational conflict of interest, those may arise from the corporation doing business with competing contractors or the corporation performing services for customers over which it exercises oversight. First, this provision does not apply here because Dr. Ewell is not an Aerospace employee. Second, ATC has not definitively shown that Aerospace Corporation exercises oversight over ATC and Presidio for the products at issue.

Based on the information before it, the Court finds that no conflict of interest exists regarding Presidio's retainer of Dr. Ewell as one of its technical experts.

### B.     Status as Government Employee.

ATC argues that due to Dr. Ewell's "employment by the Government" and service as Presidio's witness, ATC will be denied a fair trial because the jury will hear that a "government agent" tested ATC's 545L capacitor and found it to infringe Presidio's patent application that the government had granted. ATC points to Presidio referring to Dr. Ewell's experience auditing capacitors for the Government at oral argument for the summary judgment motion. *See* Ex. 11 at 25:16-19 and 42:15-22.

Central to ATC's argument is its assertion that the Aerospace Corporation is a government entity. The Aerospace Corporation is a Federally Funded Research and Development Center (FFRDC). Opp'n, Ex.5, Tr. p.29. FFRDCs are

> unique independent nonprofit entities sponsored and funded by the U.S. government to meet specific long-term technical needs that cannot be met by any other single organization. FFRDCs typically assist government agencies with scientific research and analysis, systems development, and systems acquisition. They bring together the expertise and outlook of government, industry, and academia to solve complex technical problems.

Opp'n, Ex. 6. While they are part of the private sector, FFRDCs enjoy a special relationship with the U.S. Government, which allows them access to some of the Government's sensitive and proprietary data. 48 C.F.R. 35.017(a)(2). FFRDCs are "to be free from organizational conflicts of interest," but they may work for entities other than the sponsoring entity, if that work is not otherwise available in the private sector. *Id.* Here, the United States Air Force sponsors the Aerospace FFRDC. Opp'n, Ex. 6. Aerospace Corporation "provides scientific and engineering support for launch, space, and related ground systems" and "supports long-term planning and the immediate needs of our nation's military and reconnaissance space programs." *Id.*

Based on the information contained on the Aerospace Corporation's website, as well as the explanation in the Code of Federal Regulations, the Aerospace Corporation does not appear to be an express branch of the U.S. Government. Therefore, the Court does not find a basis to disqualify Dr. Ewell due to a former or current status as a government employee. Finally, to the extent ATC seeks to exclude Presidio from referring to Dr. Ewell as a "government tester," "agent of the government" or "government employee," ATC can seek that relief through a motion in limine. This Court finds that a possible reference to such a status is insufficient to warrant an outright disqualification of Dr. Ewell as Presidio's witness.

**Sanctions.**

Presidio argues that ATC's objections are both unjustified and made for an improper purpose, justifying sanctions. Presidio believes ATC should be sanctioned because it forced Presidio to incur unnecessary expenses related to bringing this motion.

The protective order states that if the court grants a motion to quash based on the showing that a party's objections were

> clearly unjustified or have been made for an improper purpose (e.g., to unnecessarily encumber or retard the case development process, or to impose unnecessary expenses and burdens on other parties), this Court may subject the objecting party to sanctions, including requiring the objecting party to reimburse the party intending to disclose . . . for the attorneys' fees and costs incurred by the party intending to disclose in bringing such motion to quash.

Protective Order, Opp'n Ex. 1 ¶ 10(b).

While Presidio has prevailed on its motion, this Court does not find that ATC's objections were clearly unjustified or made for an improper purpose. Therefore, the Court denies Presidio's request for sanctions.

The Court **GRANTS** Presidio's motion to quash and **DENIES** ATC's motion to disqualify Dr. Ewell.

**IT IS SO ORDERED.**

DATED: November 18, 2008

_____
Hon. Nita L. Stormes
U.S. Magistrate Judge