Miles D. Grant (SBN 89766)
**GRANT & ZEKO, APC**
1331 India Street
San Diego, California 92101
Telephone;  619-233-7078
Facsimile:  619-233-7036
E-Mail:  mgrant@grantandzeko.com

Gregory F. Ahrens (*Pro Hac Vice*)
Brett A. Schatz (*Pro Hac Vice*)
**WOOD, HERRON & EVANS, L.L.P.**
441 Vine Street
2700 Carew Tower
Cincinnati, Ohio 45202
Telephone:  513-241-2324
Facsimile:  513-421-7269
E-Mail:  gahrens@whepatent.com
        bschatz@whepatent.com

Attorneys for Plaintiff
Presidio COMPONENTS, INC.

## UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| Presidio COMPONENTS, INC. | ) | Case No. 3:08-CV-00335-IEG-NLS |
| | ) | |
| Plaintiff, | ) | **PLAINTIFF PRESIDIO** |
| | ) | **COMPONENTS, INC.'S** |
| v. | ) | **MEMORANDUM OF POINTS AND** |
| | ) | **AUTHORITIES IN SUPPORT OF** |
| AMERICAN TECHNICAL | ) | **ITS MOTION FOR PERMANENT** |
| CERAMICS CORP., | ) | **INJUNCTION** |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ ) | | Hearing Date:  February 26, 2010 |
| | | Hearing Time:  9:00 am |
| | | Courtroom 1 |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .................................................................................. 1

II.   STATEMENT OF FACTS ................................................................... 3

A. Presidio's Business ........................................................................ 3

B. Presidio Develops The Unique One-Piece BB Capacitor To Solve Long-Felt Needs In The Industry ............................................................. 4

C. Presidio Is Forced To File Suit To Obtain An Injunction Necessary To Maintain Its Business ..................................................................... 5

D. Irreparable Harm to Presidio Continues ......................................... 7

III.  ARGUMENT ..................................................................................... 7

A. The Standard For Granting A Permanent Injunction ..................... 7

B. Presidio Is Suffering An Irreparable Injury ................................. 10

   1.  The Jury's Finding Demonstrates Irreparable Harm ............................ 10

   2.  Presidio And ATC Are In Direct Competition ..................................... 15

   3.  ATC's Infringing Activities Have Damaged Presidio's Reputation .... 18

C. Monetary Damages Are Inadequate For Presidio's Injury ........................ 19

D. The Balance of Hardships Favors Presidio And Warrants An Injunction ......................................................................................... 22

E. The Public Is Served By Enforcing Presidio's Patent Rights .................... 24

IV.  CONCLUSION ................................................................................. 25

# TABLE OF AUTHORITIES

**Page**

## Cases

*3M Innovative Props. Co. v. Avery Dennison Corp.*, Case No. 01-1781,
2006 U.S. Dist. LEXIS 70263, at *5 (D. Minn. Sep. 25, 2006)...............................21

*Abbott Labs. v. Andrx Pharms., Inc.*, 452 F.3d 1331 (Fed. Cir. 2006) ....................24

*Advanced Cardiovascular Systems, Inc. v. Medtronic Vascular, Inc.*,
579 F.Supp. 2d 554 (D. Del. 2008) ............................................................13, 14, 24

*Amado v. Microsoft*, 517 F.3d 1353 (Fed. Cir. 2008) ................................................13

*Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531 (1987) .......................................16

*Atlas Powder Co. v. Ireco Chems.*, 773 F.2d 1230 (Fed. Cir. 1985) ........................20

*Bell & Howell Doc. Mgmt. Prods. Co. v. Altek Sys.*, 132 F.3d 701
(Fed. Cir. 1997)........................................................................................................17

*BIC Corp. v. Thai Merry Co.*, Case No. 98 Civ. 2113, 1999 U.S. Dist.
LEXIS 15991, at *14-15 (S.D.N.Y. Oct. 18, 1999) ............................................9, 12

*Black & Decker v. Robert Bosch Tool Corp.*, Case No. 04-C-7955,
2006 U.S. Dist. LEXIS 86990, at *11 (N.D. Ill. Nov. 29, 2006) ............................22

*Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683
(Fed. Cir. 2008)..............................................................................10, 11, 13, 23, 24

*Christiana Indus., Inc. v. Empire Elecs., Inc.*, Case No. 06-12568,
2006 U.S. Dist. LEXIS 54210, at *5 (E.D. Mich. Aug. 4, 2006)............................12

*Ciena Corp. v. Corvis Corp.*, 334 F. Supp. 2d 610 (D. Del. 2004)..........................12

*eBay Inc. v. MercExchange, L.L.C.*, 126 S. Ct. 1837 (2006) ...............1, 2, 7, 8, 9, 12

*Fisher-Price, Inc. v. Safety 1st, Inc.*, 279 F. Supp. 2d 526 (D. Del. 2003) ..............20

*Fresenius Medical Care Holdings v. Baxter Int'l.*, Case No. C-03-1431,
2008 U.S. Dist. LEXIS 79689, at *13 (N.D. Ca. April 4, 2008)................10, 11, 13

*Funai Electric Co v. Daewoo Electronic Corp.*, 593 F.Supp. 2d 1088
(N.D. Ca. Jan. 5, 2009) ............................................................................................13

*High Tech Medical Instrumentation v. New Image Indus.*, 49 F.3d 1551
(Fed. Cir. 1995)..........................................................................................................9

*Hybritech, Inc. v. Abbott Laboratories*, 849 F.2d 1446, 156 (Fed. Cir. 1988) .........17

*I-Flow Corp. v. Apex Medical Tech., Inc.*, Case No. 07-cv-1200,
2010 U.S. Dist. LEXIS 1021 (S.D. Cal. Jan. 6, 2010) ...............9, 10, 11, 13, 21, 25

*Kowalski v. Mommy Gina Tuna Resources*, Case. No. 05-679,
2009 U.S. Dist. LEXIS 26216, at * 3-4 (D. Haw. Mar. 30, 2009)....................12, 16

*L&W, Inc. v. Shertech, Inc.*, Case No. 01-73892, 2005 U.S. Dist LEXIS
   34635, at *9 (E.D. Mich. Sept. 28, 2005)....................................................12

*Mezzalingua Assocs. v. Arris Int'l, Inc.*, 298 F. Supp. 2d 813
   (W.D. Wis. 2003)........................................................................................23

*Muniauction, Inc. v. Thomson Corp.*, 502 F.Supp. 2d 477, 482-84
   (W.D. Pa. 2007) ..........................................................................................11

*Paice LLC v. Toyota Motor Corp.,* Case No. 2:04-cv-211-DF, 2006 U.S. Dist.
   LEXIS 61600 (E.D. Tex. Aug. 16, 2006) ................................................24

*Polaroid Corp. v. Eastman Kodak Co.*, 641 F. Supp. 828 (D. Mass. 1985) ............19

*Polymer Techs. v. Bridwell*, 103 F.3d 970, 975-976 (Fed. Cir. 1996)....16, 17, 18, 19

*Purdue Pharma L.P. v. Boehringer Ingelheim GmbH*, 237 F.3d 1359
   (Fed. Cir. 2001)..........................................................................................19

*Reebok Int'l Ltd. v. J. Baker, Inc.,* 32 F.3d 1552 (Fed. Cir. 1994).....................19, 22

*Richardson v. Suzuki Motor Co.*, 868 F.2d 1226 (Fed. Cir. 1989)...........................12

*Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538 (Fed.Cir.1995) ...................................24

*Smith Int'l, Inc. v. Hughes Tool Co.*, 718 F.2d 1573 (Fed. Cir. 1983)..............8, 9, 24

*TiVo Inc. v. EchoStar Communs. Corp.*, 446 F. Supp. 2d 664,
   669 (E.D. Tex. 2006) ................................................................................16

*Visto Corp. v. Seven Networks, Inc.*, Case No. 2:03-cv-333,
   2006 U.S. Dist. LEXIS 91453, at *12 (E.D. Tex. Dec. 19, 2006) ..........15

**Statutes**

35 U.S.C. § 154.............................................................................................................7

35 U.S.C. § 154(a)(1) ...................................................................................................8

35 U.S.C. §283...............................................................................................................8

# I.    INTRODUCTION

Plaintiff Presidio Components, Inc.'s ("Presidio") patent infringement case against Defendant American Technical Ceramics Corp.'s ("ATC") has never just been about obtaining a monetary judgment to compensate it for ATC's infringement.  From the day its Complaint was filed, Presidio's primary objective has been to obtain injunctive relief to stop its much larger competitor, ATC, from infringing its patented technology.  At trial, Presidio's Lambert Devoe testified that an injunction is critical for Presidio's survival and for this reason Presidio has never licensed its patented technology.  Demonstrating this is the fact that Presidio spent more money pursuing this case in order to obtain a permanent injunction against ATC than it ever hoped to recover in the form of infringement damages.  The jury's recent verdict, which found United States Patent No. 6,816,356, (hereinafter "the '356 patent") valid and willfully infringed, has established the appropriateness of the requested injunctive relief.

The Supreme Court's recent decision in *eBay Inc. v. MercExchange, L.L.C.*, reconfirmed this Court's power to grant permanent injunctive relief to plaintiffs who can demonstrate (1) irreparable harm, (2) inadequacy of monetary damages, (3) hardship, and (4) and no disservice to the public interest.  126 S. Ct. 1837, 1839 (2006).  Ever since *eBay,* courts almost always grant injunctive relief where, as here, the infringer is a competitor of the patent holder.  Indeed, such relief is certainly

appropriate in this case, where all of the aspects of the *eBay* test favor Presidio. Specifically, the facts of this case support a finding in favor of Presidio on each of these factors; thus, a permanent injunction is warranted:

1.    *Irreparable harm:* Presidio and ATC are direct competitors, selling a broad range of competing capacitor products in the same market and to the same customers and potential customers.  ATC's continued infringement is directly and irreparably harming Presidio, one reason why Presidio has refused to license this technology.

2.    *No adequate monetary remedy:* Presidio's competitive harms cannot be adequately compensated by an award of monetary damages as ATC's continued sales of a competing and infringing capacitor has altered and continues to alter the market.  Additionally, Presidio's reputation and goodwill as the sole provider of unique solutions to its customers' problems are being damaged.  Armed with Presidio's technology, ATC has infringed its way into a position where it has represented, and could in the future represent, to Presidio's customers that it can provide the same solutions to problems as can Presidio.

3.    *Balance of Hardships:* The balance of hardships favors the much smaller Presidio, whose loss of patent exclusivity presents a serious, irreparable injury and whose lost sales opportunities in this competitive marketplace create a significant hardship.  By contrast, ATC's $90 million plus in annual sales shows that

an injunction prohibiting the sale of one product line with modest (for ATC) annual sales will pose no hardship to ATC.

4.    *Public Interest:* Finally, the public interest factor of enforcing valid and infringed patents supports the grant of injunctive relief in this case.  ATC's ongoing infringement has irreparably harmed Presidio's business and it is apparent through ATC's continuing infringement to this day that ATC will only stop if this Court issues a permanent injunction.

## II.    STATEMENT OF FACTS

### A.    Presidio's Business

Presidio is a family-owned, small company located in San Diego.  Presidio began in 1980 when Dan and Violet Devoe devoted all of their savings, and took a second mortgage on their house, to start Presidio.  (Trial Tr. 1 at 11:13-25).  At the outset, Dan Devoe designed unique capacitor solutions for Presidio's customers on his kitchen table, working 12-hour days, 7 days a week.  *Id.*  Today, Dan's two sons Alan and Lambert take the lead in running Presidio.  *Id.* at 15:22-16:6.  Presidio has only 175 employees, but even with its sparse resources is able to develop and manufacture sophisticated and unique solutions for its customers. *Id.* at 12:9-13:5; Trial Tr. 2 at 72:10-22.

Presidio is a niche player, selling only a few products for a few industries that require a higher level of engineering expertise, and does not sell high volume,

standard capacitors. (Trial Tr. 1 at 12:9-13:5). Presidio has one dominant product, the Buried Broadband capacitor ("BB capacitor"). Presidio's BB capacitor is involved in this lawsuit and targets broadband frequency applications. *Id.* It has taken Presidio years of work with its customers in testing and developing technologies that match their customers' needs. *Id.* at 14:25-15:15. On this basis, Presidio has developed a reputation of a respected supplier of new products and new ideas that solve unique customer problems. *Id.* In short, the industry knows Presidio as the only company to contact when unique problems arise.

**B.      Presidio Develops The Unique One-Piece BB Capacitor To Solve Long-Felt Needs In The Industry**

Presidio was prompted to solve certain problems raised in the industry; specifically, capacitor manufacturers' limited offering to their customers for both low and high frequency applications involved two independent capacitors, to be joined in parallel. *Id.* at 18:1-17. However, this "two-piece design" resulted in particular frequencies where problematic "suckouts" were experienced. *Id.* Use of the two-piece design would therefore result in discontinuity, and loss, in the transfer of data. *Id.* at 18:18-19:8. Even more problematic for customers was that the two – piece capacitors had to be manually placed on a circuit board and joined through epoxy or paste, a time consuming and extremely difficult process, given how tiny these capacitors are. *Id.* at 19:9-18. This posed a "huge" problem and was "a nightmare assembly part" for customers. *Id.* at 19:9-18; 20:5-21:15. It was such a

severe problem for customers that the very few individuals in the entire United States that could work with the two-piece design were dubbed "golden operators." *Id.* at 19:9-18; 26:3-20.

Presidio's BB capacitors are background to the inventions ultimately claimed in United States Patent No. 6,816,356 ("the '356 patent").  That is, these capacitors were designed as a combination of two separate capacitors in a one-piece design. As a result, Presidio's BB capacitors could be placed directly on a circuit board by Presidio's customers, allowing them to avoid the time consuming and extremely difficult process of joining capacitors.  *Id.* at 23:7-24:3.  This solved the severe "golden operator" problems that customers were complaining about.  Presidio's BB capacitors employ a "substantially monolithic dielectric body," as used in the claims of the '356 patent.  *Id.* at 26:3-20.  The solution offered by Presidio's BB capacitors was previously unheard of.  *Id.* at 27:1-20.

**C.    Presidio Is Forced To File Suit To Obtain An Injunction Necessary To Maintain Its Business**

In April 2007, Presidio wrote to ATC regarding the '356 patent and the infringing 545L capacitor.  Specifically, Mr. Alan Devoe wrote to three officers of ATC, identifying the '356 patent and the 545L capacitor.  At trial, ATC's officer responsible for ATC's Code of Conduct and Compliance, Kathleen Kelly, testified that ATC did not recall receiving notice.  However, she would have forwarded it

individuals who should have handled it.  (Trial Tr. 5 at 34:5-35:15).  ATC never did respond.

It became evident through the trial testimony of other ATC employees, such as Mr. John Mruz, that ATC was fully aware of the '356 patent years before.  ATC reviewed the '356 patent publication while the 545L capacitor was being designed. (Trial Tr. 3 at 116:3; Dep. Tr. at 127:16-19).  Indeed, ATC admitted that it decided, after obtaining Presidio's BB capacitor and evaluating it, to "emulate" Presidio's capacitor design.  *Id.* at 91:3-92:3.  ATC did so because it was not smart enough to develop such a design on its own.  *Id.* at 99:11-100:4.  That "emulation" led to ATC's infringement.

ATC's infringement has severely damaged Presidio, including its reputation and goodwill with its customers.  Specifically, Presidio serves a niche market in which Presidio enjoys a reputation of being the problem – solver for difficult applications.  (Trial Tr. 2 at 110:24-112:16).  ATC's infringement leads customers to question why ATC has been able to solve the problems that, absent ATC's infringement, only Presidio has demonstrated a capability to solve.  *Id.* at 110:1-20. In doing so, ATC is "taking away [Presidio's] relationship that [it] has with [its] customer."  *Id.*  This has a strong negative impact on Presidio's future business.  *Id.*

Because ATC effectively ignored that its 545L capacitor infringed the '356 patent, and ignored the notice Presidio gave to ATC, Presidio was forced to sue for

infringement to protect its business.  The jury has now found that the 545L capacitor infringes the '356 patent, and that ATC's conduct was willful.

### D.   Irreparable Harm to Presidio Continues

Since the jury found Presidio's '356 patent valid and willfully infringed by ATC in December 2009, ATC has recklessly continued offering for sale the 545L capacitor.  (*See* Exhibit A).  Thus, Presidio has suffered and continues to suffer irreparable harm as a direct result of ATC's sales of infringing 545L capacitors. Clearly, ATC has taken improper advantage of Presidio's patented technology to obtain market advantage.  It has chosen to do so despite having been found a willful infringer.  Not even the jury's verdict has persuaded ATC that it should end its willful infringement.  Any further delay in granting an injunction deprives Presidio of the benefits of exclusivity under 35 U.S.C. § 154 meant to protect this innovative technology.

## III.   ARGUMENT

### A.   The Standard For Granting A Permanent Injunction

In accordance with well established principles of equity, as the Supreme Court recently reaffirmed in *eBay*, a plaintiff seeking a permanent injunction is to provide evidence according to a four-factor test:

1.   that it has suffered an irreparable injury;
2.   that remedies available at law, such as monetary
     damages, are inadequate to compensate for that injury;

3.    that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and

4.    that the public interest would not be disserved by a permanent injunction.

126 S. Ct. at 1839.  As Chief Justice Roberts wrote in a concurrence to the *eBay* case, the "long tradition" of entering injunctions upon the finding of patent infringement is natural "given the difficulty of protecting a right to exclude through monetary remedies that allow an infringer to use an invention against the patentee's wishes." *Id.* at 1841 (Roberts, C.J., concurring).  This "long tradition" is based on cases where, as here, the patentee should be given its Constitutional right to exclude others from "emulating" innovative technology.

Congress has explicitly provided patentees with a "right to exclude others" from practicing a patented invention. 35 U.S.C. § 154(a)(1).  Congress has given the courts authority to enforce this right by entering injunctions against infringers: "The several courts having jurisdiction of cases under this title may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable."  35 U.S.C. §283.

Federal courts routinely recognize and exercise this right: "The very nature of the patent right is the right to exclude others."  *Smith Int'l, Inc. v. Hughes Tool Co.*, 718 F.2d 1573, 1581 (Fed. Cir. 1983).  "Once the patentee's patents have been held

to be valid and infringed, he should be entitled to the full enjoyment and protection of his patent rights.  The infringer should not be allowed to continue his infringement in the face of such a holding."  *Id.*

Only weeks ago, Honorable Judge Sabraw for the Southern District of California gave credence to *eBay* by issuing a permanent injunction against a defendant having been found an infringer by a jury.  *I-Flow Corp. v. Apex Medical Tech., Inc.*, Case No. 07-cv-1200, 2010 U.S. Dist. LEXIS 1021 (S.D. Cal. Jan. 6, 2010).  Indeed, permanent injunctions may be entered after summary judgment and even before a trial.  *High Tech Medical Instrumentation v. New Image Indus.*, 49 F.3d 1551, 1554 (Fed. Cir. 1995) (35 U.S.C. §283 "authorizes courts in infringement actions to grant preliminary injunctions pending trial, as well as permanent injunctions after a full determination on the merits.").  In *BIC Corp. v. Thai Merry Co.*,, the Court granted the patentee's motion for permanent injunction after granting summary judgment of infringement and before the trial.  Case No. 98 Civ. 2113, 1999 U.S. Dist. LEXIS 15991, at *14-15 (S.D.N.Y. Oct. 18, 1999).  The *BIC Corp.* court stated that the fact "[t]hat patent validity and infringement are determined upon summary judgment should not affect" the general rule that "an injunction will issue when infringement has been adjudged."  *Id.*

Here, the jury found for Presidio after a full trial, finding the '356 patent to be valid and infringed.  This constitutes a full determination on the merits of the

parties' claims and defenses as they relate to the '356 patent.  Thus, it is proper for Presidio to move for a permanent injunction and for this Court to determine whether such an injunction is warranted.  Presidio is requesting a permanent injunction like that issued by Judge Sabraw in *I-Flow*.

### B.   Presidio Is Suffering An Irreparable Injury

#### 1.   The Jury's Finding Demonstrates Irreparable Harm

"[T]he principal value of a patent is the right to exclude arch competitors from making, selling and using an infringing product." *Fresenius Medical Care Holdings v. Baxter Int'l.*, Case No. C-03-1431, 2008 U.S. Dist. LEXIS 79689, at *13 (N.D. Ca. April 4, 2008).  Thus, it is no surprise that the Federal Circuit has declared that a competitor's infringement causes irreparable harm to a patent holder regardless of whether the patent holder's own product practices the invention.  Last year, in *Broadcom Corp. v. Qualcomm Inc.*,, the Federal Circuit concluded that there was irreparable harm, "despite the fact that [the patent holder] does not currently practice the claimed inventions."  543 F.3d 683, 703 (Fed. Cir. 2008) (affirming the district court's permanent injunction).  That is because the impact of a competitor's continuing infringement is not limited to the monetary value of the products themselves, but rather extends to the goodwill that is built up while supplying customers – goodwill which the patent holder, not the infringer, is entitled to accrue. Hence, "[t]he law favors [a patent holder's] right to the full value of its property,

particularly the ability to keep it out of its main competitor's hands." *Fresenius Medical*, 2008 U.S. Dist. LEXIS 79689, at *13 (citing *Muniauction, Inc. v. Thomson Corp.*, 502 F.Supp. 2d 477, 482-84 (W.D. Pa. 2007)).

As the *Broadcom* court recognized, the value to the patent holder is particularly high in markets for intermediate goods sold to end-manufacturers, as opposed to final, consumer goods.  In such markets, like that involved here, even indirect competition of products is significant:

> '[t]he market for baseband chips is unlike the typical
> market for consumer goods where competitors compete
> for each consumer sale, and the competition is
> instantaneous and on-going...In this kind of a market, the
> exclusion has a competitive effect on a firm even if it does
> not have an immediately available product.'

*Id.* at 703 (quoting the district court's Injunction Opinion, at 5-6) (emphasis added). The *Broadcom* court's rationale is as applicable to capacitors as to baseband chips. Simply by selling its infringing product, ATC is diluting Presidio's ability to develop long-term relationships with potential customers.

Countless courts have found irreparable harm upon a finding of infringement of a valid patent.  As noted above, Judge Sabraw recently determined that lost competitive advantage resulting from a defendant's infringing conduct demonstrates irreparable injury.  *I-Flow Corp. v. Apex Medical Tech., Inc.*, Case No. 07-cv-1200, 2010 U.S. Dist. LEXIS 1021, at * 5 (S.D. Cal. Jan. 6, 2010).  There are numerous other cases confirming that irreparable harm exists upon the jury's finding of

infringement.  *Kowalski v. Mommy Gina Tuna Resources*, Case. No. 05-679, 2009 U.S. Dist. LEXIS 26216, at * 3-4 (D. Haw. Mar. 30, 2009); *BIC Corp.*, 1999 U.S. Dist. LEXIS 15991, at *16; *L&W, Inc. v. Shertech, Inc.*, Case No. 01-73892, 2005 U.S. Dist LEXIS 34635, at *9 (E.D. Mich. Sept. 28, 2005); *Ciena Corp. v. Corvis Corp.*, 334 F. Supp. 2d 610, 612 (D. Del. 2004).

These cases follow the Federal Circuit's finding that "[i]n matters involving patent rights, irreparable harm has been presumed when a clear showing has been made of patent validity and infringement." *Richardson v. Suzuki Motor Co.*, 868 F.2d 1226, 1247 (Fed. Cir. 1989) (reversing the district court's denial of a permanent injunction upon a finding of infringement).  "This presumption derives in part from the finite term of the patent grant, for patent expiration is not suspended during litigation, and the passage of time can work irremediable harm." *Id.*  It should be noted that the court in *Christiana Indus., Inc. v. Empire Elecs., Inc.*, provided the correct finding that "*ebay* did not invalidate the presumption" but rather the "*ebay* Court addressed the proper analysis for permanent injunctive relief."  Case No. 06-12568, 2006 U.S. Dist. LEXIS 54210, at *5 (E.D. Mich. Aug. 4, 2006).

In light of the danger that a competitor will usurp a patent holder's rightful benefits, it is unsurprising that, since *eBay* was decided, competitors have been enjoined in over 30 cases.  *See, e.g., Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d at

703 (Fed. Cir. 2008); *I-Flow Corp. v. Apex Medical Tech., Inc.*, Case No. 07-cv-1200, 2010 U.S. Dist. LEXIS 1021, at * 5 (S.D. Cal. Jan. 6, 2010); *Funai Electric Co v. Daewoo Electronic Corp.*, 593 F.Supp. 2d 1088, 1111 (N.D. Ca. Jan. 5, 2009) (permanent injunction is appropriate in light of infringer's impact on relationship with customer and "that Daewoo's infringement put Funai in the position of aiding a direct competitor and denied it the right to exclude that a patent is intended to afford"); *Fresenius Medical*, 2008 U.S. Dist. LEXIS 79689, at *13 (permanent injunction granted).

When courts have refused to award injunctive relief, it is almost always because the infringer does not compete with the patent holder. *See, e.g., Amado v. Microsoft*, 517 F.3d 1353, 1360-61 (Fed. Cir. 2008) (upholding the decision to dissolve permanent injunction awarded to non-competitor).  In *Advanced Cardiovascular Systems, Inc. v. Medtronic Vascular, Inc.*, 579 F.Supp. 2d 554, 560 (D. Del. 2008), the district court denied injunctive relief to a patent holder which had licensed the patents in suit to other competitors.

By contrast, Presidio and ATC are direct competitors.  In addition, Presidio has never licensed the '356 patent.  (Trial Tr. 2 at 113:17-19).  Presidio's ability to exclude others from making and offering for sale products that infringe the '356 patent, like ATC's 545L product, give Presidio a competitive advantage.  *Id.* at 113:20-114:9.  The market is way too small for Presidio to survive if a competitor

like ATC is allowed to make an offer for sale products that infringe the '356 patent. *Id.* That, in combination with ATC's vastly larger size, would make it difficult, if not impossible, for Presidio to compete. (Trial Tr. 3 at 5:25-6:14).

In short, there is not enough room for two players in the market. (Trial Tr. 2 at 113:20-114:9). Further, "[i]f the outcome of this was a license to this patent to [Presidio's] competitor, it would pretty much spell the end of this, of this product area for [Presidio]…". *Id.* at 114:10-24. That is because ATC would be able to price the 545L capacitor far lower than could Presidio, forcing the entire market to ATC. *Id.*; Trial Tr. 6 at 88:14-21 (ATC employee Robert Grossbach discussing ATC's ability to "crush" Presidio and offer better deals because it is a large conglomerate affiliated with AVX and Kyocera). Thus, in the few cases in which post-*eBay* courts have denied permanent injunctive relief to competitors, there were circumstances that are absent from Presidio's situation.

Presidio's determination to reserve the benefits of exclusivity for itself shows the competitive value of the '356 patent to Presidio. As the *Advanced Cardiovascular* court observed: "Permanent injunctions are typically granted in two-competitor situations where the patentee has demonstrated an unwillingness to part with the exclusive right." *Id.* at 560-61 (emphasis added) (cited cases omitted)). Here, Presidio enjoys the rebuttable presumption of irreparable harm based upon the

jury's finding that the '356 patent is valid and infringed.  Moreover, as discussed below, the circumstances of this case unquestionably establish irreparable harm.

## 2.  Presidio And ATC Are In Direct Competition

"Intellectual property enjoys its highest value when it is asserted against a direct competitor in the plaintiff's market."  *Visto Corp. v. Seven Networks, Inc.*, Case No. 2:03-cv-333, 2006 U.S. Dist. LEXIS 91453, at *12 (E.D. Tex. Dec. 19, 2006) (post-*eBay* decision granting a permanent injunction to restrict the patentee's direct competitor and finding that direct competition "weighs heavily in the court's analysis.").  Here, the patentee, Presidio, manufactures, markets, and sells the BB capacitor, which is in direct competition with ATC's infringing 545L capacitor.  As demonstrated at trial, business that ATC gains through infringement is business that is lost to Presidio.

According to the jury, ATC has acted willfully.  Making matters worse, and despite the jury's finding that the '356 patent is valid and willfully infringed, ATC continues to offer for sale the 545L capacitor.  (*See* Exhibit A).  ATC's cavalier view of the jury's finding is incredible, and warrants imposition of an injunction:

> Where, as here, there is a continuing risk of future infringement, and '[b]ecause the principal value of a patent is the statutory right to exclude, the nature of the patent grant weighs against holding that monetary damages will suffice to make the patentee whole.' *Reebok Int'l v. J. Baker, Inc.*, 32 F.3d 1552, 1557 (Fed. Cir. 1994). As the patent holder, Mr. Kowalski has a right to license without having to pursue litigation, or if he chooses to

> produce his invention himself, he has the right to do so
> unhampered by infringing competitors.

*Kowalski v. Mommy Gina Tuna Resources*, Case No. 05-679, 2009 U.S. Dist.

LEXIS 26216, at * 3-4 (D. Haw. Mar. 30, 2009.

In the analogous case of *TiVo Inc. v. EchoStar Communs. Corp.*,, TiVo

requested a permanent injunction against its direct competitor, EchoStar, to stop its

infringing sales of digital video recorders.  446 F. Supp. 2d 664, 669 (E.D. Tex.

2006).  In granting a permanent injunction to the patentee TiVo, the Court found

that the "availability of the infringing products lead[] to loss of market share for

Plaintiff [TiVo]'s products."  *Id.*  Specifically, the Court noted that Echostar

targeted potential customers of TiVo's digital video recorder, and this direct

competition lead to TiVo's loss of critical market share. *Id.*

The Federal Circuit has expressly recognized direct competitive harm, such as

that experienced by Presidio, as irreparable: "Competitors change the marketplace.

Years after infringement has begun, it may be impossible to restore a patentee's (or

an exclusive licensee's) exclusive position by an award of damages and a permanent

injunction."  *Polymer Techs. v. Bridwell*, 103 F.3d 970, 975-976 (Fed. Cir. 1996)

(vacating denial of a preliminary injunction).[1]  "Customers may . . . establish[]

---

[1] The analysis of equitable factors for a preliminary injunction is relevant to the analysis for a permanent injunction because "the standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success." *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 546 n.12 (1987).

PRESIDIO COMPONENTS, INC.'S BRIEF IN SUPPORT
OF ITS MOTION FOR PERMANENT INJUNCTION
Case No. 3:07-cv-0893 IEG NLS                    16

relationships with infringers," and may no longer be available to be won back by the patentee. *Id.*

Indeed, that is precisely what has happened here. There have been numerous instances where, as a direct result of ATC's sales of its infringing 545L capacitor to Presidio's potential customers, Presidio has been effectively precluded from entering into business relationships with those potential customers. The availability of ATC's infringing 545L capacitor has therefore changed the marketplace, and ATC's solicitation of Presidio's actual and potential customers has caused these customers to form relationships with the infringer, ATC, rather than the market innovator, Presidio. Presidio has therefore been irreparably denied significant advantages of being the incumbent supplier.

Moreover, if ATC is permitted to sell an infringing product to a customer, that customer is not likely to need a different supplier for many years, thereby reducing Presidio's opportunity to sell to that customer for years. *See Hybritech, Inc. v. Abbott Laboratories*, 849 F.2d 1446, 156 (Fed. Cir. 1988) (irreparable harm may be found where the patentee is denied the opportunity to exercise its patent rights to establish a market position and create business relationships in the market). The denial of a permanent injunction deprives Presidio of any meaningful right to exclude others from using its invention. *See Bell & Howell Doc. Mgmt. Prods. Co. v. Altek Sys.*, 132 F.3d 701, 708 (Fed. Cir. 1997) ("When, as here, the market for a

patented product is in decline, the passage of time is particularly likely to irreparably harm the patentee."). A permanent injunction is the only remedy available to cease Presidio's harm and prevent its reoccurrence.

In the instant case, the continued availability of ATC's 545L, which the jury has found to be infringing, leads to loss of market share for Presidio. Furthermore, Presidio's loss of market share is heightened by the fact that ATC directly targets potential customers of Presidio.

### 3.   ATC's Infringing Activities Have Damaged Presidio's Reputation

At trial, the evidence of Presidio's reputation as the sole supplier that solves particular problems of customers went undisputed. Through at least the testimony of Lambert Devoe, Presidio demonstrated that customers look to Presidio as a provider of unique solutions to problems that go unresolved with other suppliers. If ATC is allowed to continue with its infringing 545L capacitor, and thereby provide customers with such unique solutions, Presidio's reputation is forever tarnished and damaged.

Additionally, ATC has freely sold its infringing products to the market at a reduced price. The Federal Circuit has found that price erosion that results from infringement, such as that caused by ATC, constitutes irreparable harm because "[r]equiring purchasers to pay higher prices after years of paying lower prices to infringers is not a reliable business option." *Polymer Techs.*, 103 F.3d at 976; *see*

*also Purdue Pharma L.P. v. Boehringer Ingelheim GmbH*, 237 F.3d 1359, 1368 (Fed. Cir. 2001) (affirming finding of irreparable harm due to price erosion).

## C.    Monetary Damages Are Inadequate For Presidio's Injury

From the day its complaint was filed, Presidio's primary objective has been to obtain injunctive relief to stop its much larger competitor, ATC, from infringing Presidio's patented technology.  Indeed, at trial Presidio's Lambert Devoe testified that an injunction is critical for Presidio's survival, and that Presidio has spent more money pursuing this case that it ever hoped to recover.

"It may be impossible through money damages to return a competitor to the position it would have been absent infringement." *Polymer Techs.*, 103 F.3d at 975-76.  Because the principal value of a patent is its statutory right to exclude, the very nature of the patent grant suggests that monetary damages cannot suffice to make the patentee whole for infringement.  *See Reebok Int'l Ltd. v. J. Baker, Inc.,* 32 F.3d 1552, 1557 (Fed. Cir. 1994).  As the trial court in the well-known Polaroid case explained:

> [District courts] have found money damages deficient against encroachments on rights of exclusivity, and they have judged the public interest better served by a broad policy favoring creativity than by narrow protection of specific consumers.

*Polaroid Corp. v. Eastman Kodak Co.*, 641 F. Supp. 828 (D. Mass. 1985), aff'd, 833 F.2d 930 (Fed. Cir. 1986) (affirming district court's entry of injunctive relief).

ATC's infringement has certainly damaged Presidio, a small company with relatively limited resources.  Presidio has funded the significant expense of this lawsuit to expose the infringing activities of ATC.  Now that the jury has determined that Presidio's '356 patent is valid and ATC's 545L capacitor is an infringement, the need for a permanent injunction is great.  The effects of future infringement cannot be fully measured in dollars because "there are certain tangential benefits associated with patent rights, such as a marketplace reputation for enforcing one's patents, the value of which cannot be quantified in monetary damages."  *Fisher-Price, Inc. v. Safety 1st, Inc.*, 279 F. Supp. 2d 526, 528 (D. Del. 2003) (granting the motion for permanent injunction); *see also Atlas Powder Co. v. Ireco Chems.*, 773 F.2d 1230, 1233 (Fed. Cir. 1985) ("The patent statute further provides injunctive relief to preserve the legal interests of the parties against future infringement which may have market effects never fully compensable in money.").

It must also be noted that the Southern District of California has recently determined that a defendant's infringement results in injury for which any legal remedy other than a permanent injunction is often inadequate:

> As Plaintiff points out, it made a strategic decision not to license the patented technology at issue in this case to anyone, thereby establishing its position as the market leader. By virtue of Plaintiff's dealings with Defendants, Plaintiff lost its status as the sole provider of soft shell pain pumps. That is an injury from which Plaintiff is unlikely to recover, and is one that is not amenable to a

legal remedy. Accordingly, this factor weighs in favor of an injunction.

*I-Flow Corp. v. Apex Medical Tech., Inc.*, Case No. 07-cv-1200, 2010 U.S. Dist. LEXIS 1021, at * 6 (S.D. Cal. Jan. 6, 2010).

In *3M Innovative Props. Co. v. Avery Dennison Corp.*, the district court found that money damages were inadequate because the grant of money damages to 3M for Avery's future infringement would essentially force 3M to grant a license to Avery.  Case No. 01-1781, 2006 U.S. Dist. LEXIS 70263, at *5 (D. Minn. Sep. 25, 2006) (considering the *eBay* factors and granting a permanent injunction).  The Court in *3M Innovative Props. Co.* stated that it would "not disturb 3M's determination that its business interests will not be served by the licensing of this product."  *Id.*

Similarly, Presidio has not licensed the '356 patent, which shows that it has not chosen to forego its granted exclusivity for compensation.   Therefore, Presidio should not be forced to grant a license to ATC by being compensated for future infringement only through monetary damages.  Furthermore, to preserve its reputation and goodwill, Presidio must be allowed to capture the market share associated with its innovations in the field of capacitors.  "Under such circumstances, a patent owner's right to exclude 'cannot be compensated through monetary damages,' especially because it is impossible to determine the portions of the market the patent owner would have secured but for the infringer or how much

damage was done to the patent owner's brand recognition or goodwill due to the infringement." *Black & Decker v. Robert Bosch Tool Corp.*, Case No. 04-C-7955, 2006 U.S. Dist. LEXIS 86990, at *11 (N.D. Ill. Nov. 29, 2006) (granting a permanent injunction against Bosch's infringing radios) (citing *Reebok Int'l*, 32 F.3d at 1558 ("Harm to reputation resulting from confusion between an inferior accused product and a patentee's superior product is a type of harm that is often not fully compensable by money because the damages caused are speculative and difficult to measure.")).

Presidio demonstrated at trial the many ways in which ATC has improperly used Presidio's patented technology to gain market advantages that Presidio should have exclusively enjoyed.  The loss of sales, the incumbency problems, and the price cutting perpetrated by ATC are all harms suffered by Presidio that cannot be fully remedied with an award of money damages.  Rather, they are classic instances of actual, irreparable harm that only a permanent injunction can cure going forward.

**D.     The Balance of Hardships Favors Presidio And Warrants An Injunction**

Because this case involves a fast changing marketplace where customer needs can change, an injunction is especially important to Presidio's ability to exercise its patent rights.  Where markets are defined by rapid changes or advances in technology, courts have recognized that there is often a limited window of opportunity to market one's inventions.  This limited window justifies the patent

holder's exclusive monopoly to practice the patented technology unimpeded by competitors.  *See Mezzalingua Assocs. v. Arris Int'l, Inc.*, 298 F. Supp. 2d 813, 821 (W.D. Wis. 2003) ("With the rapid changes in connector technology, the market for plaintiff's [product] will not last forever, or even necessarily for the entire term of its patent.  If plaintiff is going to be able to extract its bargained-for-benefit from its patented invention, it needs to be able to sell its product freely, unimpeded by infringers.").

ATC representatives testified at trial that ATC could always re-start sales of its 540L capacitor.  Thus, ATC has other products it can market to its customers.  ATC's more than $90 million in annual sales illustrates that being enjoined from selling one of its many products, which has modest (for ATC) annual sales, will pose no hardship to ATC.  (Trial Tr. 5 at 31:10-17:  ATC's sales of its 545L capacitor account for "a very small percentage.").  Furthermore, ATC is a wholly owned subsidiary of a company with more than $1 billion in annual revenue.  Regardless, ATC elected to offer for sale the 545L, and having been found to be a willful infringer, should not be heard to complain about an injunction.  *Broadcom*, 543 F.3d at 704.

Presidio is, on the other hand, a much smaller company and losing marketshare is a significant hardship.  Furthermore, being wrongfully deprived of the exclusivity granted by the '356 patent would be a serious injury to Presidio.

Thus, the harm to ATC as the result of an injunction would be minimal in comparison to the harm experienced by Presidio.

### E.    The Public Is Served By Enforcing Presidio's Patent Rights

"The public is best served by enforcing patents that are likely valid and infringed." *Abbott Labs. v. Andrx Pharms., Inc.*, 452 F.3d 1331, 1348 (Fed. Cir. 2006); *see also Smith Int'l, Inc.*, 718 F.2d at 1581 ("where validity and continuing infringement have been clearly established," failure to grant an injunction is "contrary to the public policy underlying the patent laws.").  Otherwise stated, it is in the public interest to uphold a patent holder's legally established rights.  *See generally Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1547 (Fed.Cir.1995) (en banc).

As the Federal Circuit stressed in *Broadcom*: an infringer should not be permitted to avoid a permanent injunction "on a theory 'that successful exploitation of infringing technology shields a party from injunctive relief.'" 543 F.3d at 704. Further, the removal of a product from the market only implicates the public interest where the product at issue is of unusual societal benefit.  *See Paice LLC v. Toyota Motor Corp.,* Case No. 2:04-cv-211-DF, 2006 U.S. Dist. LEXIS 61600 (E.D. Tex. Aug. 16, 2006) (noting that an injunction could harm the public interest in a "burgeoning hybrid [car] market"); *Advanced Cardiovascular Systems, Inc. v. Medtronic Vascular, Inc.*, 579 F. Supp.2d at 560 (finding removal against the public

interest in light of numerous cardiologist's affidavits that the success rate of their surgeries would precipitously drop if the infringing products were removed from the market).

Here, however,

> Plaintiff identifies three public interests that would be served by an injunction: The interest in maintaining a strong patent system, the interest in fair and healthy competition, and the interest in discouraging future wrongdoing. The Court agrees with Plaintiff that these interests would be served by an injunction in this case. Accordingly, this factor weighs in favor of an injunction.

*I-Flow Corp. v. Apex Medical Tech., Inc.*, Case No. 07-cv-1200, 2010 U.S. Dist. LEXIS 1021, at * 7 (S.D. Cal. Jan. 6, 2010).

The jury has found that the '356 patent is valid and infringed by ATC. Therefore, this fourth factor weighs heavily in favor of serving the public interest by enforcing the '356 patent and granting a permanent injunction to prevent continuing infringement by ATC. Failure to grant an injunction fails the public's interest by undermining the policy behind patent laws.

## IV.   CONCLUSION

Presidio respectfully requests that the Court permanently enjoin ATC from marketing, selling, and offering to sell its 545L capacitor, as set forth in Presidio's Motion for Permanent Injunction.

Dated: <u>January 29, 2010</u>                    Respectfully submitted,

WOOD, HERRON & EVANS L.L.P.


By:  <u>s/ Brett A. Schatz</u>
        Gregory F. Ahrens
        Brett A. Schatz
        Attorneys for Plaintiff
        Presidio Components, Inc.

**PROOF OF SERVICE**

STATE OF OHIO            )
                         )    ss.
COUNTY OF HAMILTON       )

I am employed in the County of Hamilton, State of Ohio.  I am over the age of 18 and not a party to the within action.  My business address is:  2700 Carew Tower, 441 Vine Street, Cincinnati, Ohio 45202.

On January 29, 2010, I served **PLAINTIFF PRESIDIO COMPONENTS, INC.'S BRIEF IN SUPPORT OF ITS MOTION FOR PERMANENT INJUNCTION** on the interested parties in this action by placing a true copy thereof enclosed in a sealed envelope at Cincinnati, Ohio addressed as follows:

Daniel T. Pascucci                      Marvin S. Gittes
Nathan R. Hamler                        Timur E. Slonim
MINTZ, LEVIN, COHN,                     Peter F. Snell
FERRIS,   GLOVSKY AND                   MINTZ, LEVIN, COHN, FERRIS,
POPEO, P.C.                             GLOVSKY AND POPEO, P.C.
3580 Carmel Mountain Road,              66 Third Avenue
Suite 300                               New York, NY  10017
San Diego, California 92130
Attorneys for Defendant AMERICAN TECHNICAL CERAMICS CORP.

[X]     (**BY MAIL AND EMAIL**) The envelope was mailed with postage thereon fully prepaid.  As follows:  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Cincinnati, Ohio in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[ ]     (**BY HAND DELIVERY**)    I caused the attached document to be personally delivered to the above named individual.

[ ]     (**BY FACSIMILE**)    I delivered such document by facsimile to the ABOVE persons at the facsimile telephone numbers listed ABOVE as a courtesy.

[ ]     (**FEDERAL**)   I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on January 29, 2010 at Cincinnati, Ohio.

s/ Brett A. Schatz
Brett A. Schatz

PRESIDIO COMPONENTS, INC.'S BRIEF IN SUPPORT
OF ITS MOTION FOR PERMANENT INJUNCTION
Case No. 3:07-cv-0893 IEG NLS                    27