Miles D. Grant (SBN 89766)
**GRANT & ZEKO, APC**
1331 India Street
San Diego, California 92101
Telephone;  619-233-7078
Facsimile:  619-233-7036
E-Mail:  mgrant@grantandzeko.com

Gregory F. Ahrens (*Pro Hac Vice*)
Brett A. Schatz (*Pro Hac Vice*)
**WOOD, HERRON & EVANS, L.L.P.**
441 Vine Street
2700 Carew Tower
Cincinnati, Ohio 45202
Telephone:  513-241-2324
Facsimile:  513-421-7269
E-Mail:  gahrens@whepatent.com
            bschatz@whepatent.com

Attorneys for Plaintiff
PRESIDIO COMPONENTS, INC.

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PRESIDIO COMPONENTS, INC. ) | Case No. 3:08-CV-00335-IEG-NLS |
| ) | |
| Plaintiff, ) | **PLAINTIFF PRESIDIO** |
| ) | **COMPONENTS, INC.'S** |
| v. ) | **MEMORANDUM OF POINTS** |
| ) | **AND AUTHORITIES IN SUPPORT** |
| AMERICAN TECHNICAL ) | **OF ITS MOTION FOR** |
| CERAMICS CORP., ) | **POST TRIAL REMEDIES** |
| ) | |
| Defendant. ) | Hearing Date:  February 26, 2010 |
| ) | Hearing Time:  9:00 am |
| ) | Courtroom 1 |
| ) | |

PRESIDIO COMPONENTS, INC.'S BRIEF IN SUPPORT
OF ITS MOTION FOR POST TRIAL REMEDIES
Case No. 3:07-cv-0893 IEG NLS

# TABLE OF CONTENTS

PAGE

I.     INTRODUCTION ................................................................. 1

II.    THE COURT SHOULD AWARD SUPPLEMENTAL DAMAGES FOR
       ATC'S CONTINUED INFRINGEMENT ............................................. 3

III.   THE COURT SHOULD TREBLE THE DAMAGES ......................................... 3

       A. The Jury Found That ATC Willfully Infringed The '356 Patent ................. 5

       B. ATC Copied Presidio's Buried Broadband Capacitor .......................... 6

       C. ATC Did Not Investigate The Scope Of The '356 Patent Or Present
          Evidence That It Had A Good Faith Belief That The '365 Patent Was
          Invalid Or Not Infringed .................................................. 9

       D. ATC's Behavior As A Party To The Litigation ............................... 12

          1.  ATC Vexatiously Multiplied The Proceedings ........................... 12

          2.  ATC's Vexatious Summary Judgment Motion .............................. 13

          3.  ATC's Vexatious Trial Subpoenas ..................................... 14

          4.  ATC's Vexatious Discovery Conduct ................................... 15

       E. ATC's Large Size and Strong Financial Condition .......................... 16

       F. This Case Was Not Close .................................................. 17

       G. The Duration of ATC's Misconduct ........................................ 17

       H. ATC Did Not Take Any Remedial Action .................................... 18

       I.  ATC Had The Motivation To Harm Presidio ................................. 18

       J.  ATC Attempted To Conceal Its Misconduct ................................ 19

IV.  THE COURT SHOULD DETERMINE THIS IS AN "EXCEPTIONAL CASE" ENTITLING PRESIDIO TO AN AWARD OF ATTORNEYS' FEES ................................................................................20

V.   THE COURT SHOULD AWARD PRESIDIO PREJUDGMENT AND POSTJUDGMENT INTEREST ON ITS DAMAGES, AND AWARD PRESIDIO ITS COSTS ....................................................................22

     A. Prejudgment Interest On The Damages Award Is Appropriate...................22

     B. Postjudgment Interest On The Damages Award Is Mandatory...................23

     C. Presidio Should Be Awarded Its Costs........................................24

VI. CONCLUSION.................................................................24

# TABLE OF AUTHORITIES

**Page**

## Cases

*Afros S.p.A. v. Krauss-Maffei Corp.*, 671 F. Supp. 1402 (D. Del. 1987)....................8

*Bard Peripheral Vascular, Inc. v. W.L. Gore & Assoc., Inc.*, Case No.
  cv-03-0597, 2009 U.S. Dist. LEXIS 31328, at * 11 (D. Ariz. Mar. 31, 2009) .........3

*Beckman Instruments, Inc. v. LKB Produkter AB*, 892 F.2d 1547
  (Fed. Cir. 1989)...............................................................................................12

*Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683 (Fed. Cir. 2008)........................11

*DeLong Equip. Co. v. Washington Mills Electro Minerals Corp.*,
  997 F.2d 1340 (11th Cir. 1993) ....................................................................23

*General Motors Corp. v. Devex Corp.*, 461 U.S. 648 (1983) .................................22

*Golden Blount, Inc. v. Robert H. Peterson Co.*, 438 F.3d 1354
  (Fed. Cir. 2006)...................................................................................11, 20

*Graco, Inc. v. Binks Mfg. Co.*, 60 F.3d 785 (Fed. Cir. 1995)...................................20

*Honeywell Int'l, Inc. v. Hamilton Sundstrand Corp.*, 166 F. Supp. 2d 1008,
  1041 (D. Del. 2001) .....................................................................................23

*J.P. Stevens Co., Inc. v. Lex Tex Ltd., Inc.*, 822 F.2d 1047 (Fed. Cir. 1987) ...........21

*Johns Hopkins Univ. v. CellPro, Inc.*, 152 F.3d 1342 (Fed. Cir. 1998).................4, 9

*Johns Hopkins Univ. v. Cellpro, Inc.*, 978 F. Supp. 184 (D. Del. 1997)...................16

*Jurgens v. CBK, Ltd.*, 80 F.3d 1566 (Fed. Cir. 1996) .............................................4, 5

*Kaufman Co. v. Lantech, Inc.*, 926 F.2d 1136 (Fed. Cir. 1991)...............................22

*Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209 (Fed. Cir. 2006) ................4

*Milgo Electronic Corp. v. United Business Communications, Inc.*,
  623 F.2d 645 (Fed. Cir. 1980) .......................................................................7

*Modine Mfg. co. v. Allen Group, Inc.*, 917 F.2d 538 (Fed. Cir. 1990).....................20

*NTP, Inc. v. Research in Motion, Ltd.*, 270 F. Supp. 2d 751
  (E.D. Va. 2003)..............................................................................12, 16, 20

*Read Corp. v. Portec, Inc.*, 970 F.2d 816 (Fed. Cir. 1992) ........................................4

*Rosemount, Inc. v. Beckman Instruments, Inc.*, 727 F.2d 1540, (Fed Cir. 1984)......11

*S.C. Johnson & Son, Inc. v. v. Carter-Wallace, Inc.*, 781 F.2d 198
  (Fed. Cir. 1986)................................................................................................5

*Smith Engineering Co., Inc. v. Eisenmann Corp.*, 28 Fed. Appx. 958
  (Fed. Cir. 2002)..............................................................................................11

*SRI Int'l, Inc. v. Advanced Tech. Labs, Inc.*, 127 F.3d 1462 (Fed. Cir. 1997)...........9

*Stryker Corp. v. Davol Inc.*, 234 F.3d 1252 (Fed. Cir. 2000)......................................7

*Tate Access Floors, Inc. v. Maxcess Tech. Inc.*, 222 F.3d 958 (Fed. Cir. 2000).........4

*Tivo, Inc. v. Echostar Comm'ns Corp.*, Case No. 2:04-cv-1-DF,
  2006 U.S. Dist. LEXIS 64291, at *7 (E.D. Tex. Aug. 17, 2006).............................3

*Trading Techs. Int'l, Inc. v. eSpeed, Inc.,* Case No. 04-C-5312,
  2008 U.S. Dist. LEXIS 295, at *8 (N.D. Ill. Jan. 3, 2008)........................................7

*Velcro Industries B.V. v. Taiwan Paiho Ltd.*, 2005 WL 2573383, *7
  (D.N.H. 2005) ........................................................................................................12

*WordTech Sys., Inc. v. Integrated Network Solutions, Inc.*, Case No.
  2:04-cv-1971, 2009 U.S. Dist. LEXIS 31348, at * 18-19
  (E.D. Cal. April 13, 2009) ......................................................................................23

**Statutes**
28 U.S.C. § 1927..............................................................................................................12
28 U.S.C. § 1961..............................................................................................................23
28 U.S.C. § 1920..............................................................................................................24
28 U.S.C. § 1924..............................................................................................................24
35 U.S.C. § 284........................................................................................................3, 22, 24
Fed. R. Civ. P. 54(d) ........................................................................................................24
L.R. 54.1 ...........................................................................................................................24

# I.    INTRODUCTION

Plaintiff Presidio Components, Inc. ("Presidio") is a small and family-owned San Diego company with approximately 175 employees.  In this patent case, Presidio litigated against Defendant American Technical Ceramics Corp. ("ATC"), a wholly - owned subsidiary of AVX Corp. ("AVX").  ATC by itself has multiple facilities located across the country and throughout the world, with annual revenues of $90 million, while AVX's annual revenue far exceeds $1 billion.  Through the relationship between ATC and AVX, ATC is able to outsource product finishing and assembly outside the United States.

As Presidio's Lambert Devoe testified, Presidio spent more money pursuing this case than the more than $1 million award from the jury.  In no uncertain terms, this is a material amount to Presidio, but an insignificant amount to a behemoth like ATC.  As found by the jury, Presidio's lost profits in this action were just over $1 million.  Again, that is a significant amount of money for Presidio, but borderline insignificant to ATC.  Yet, despite the paucity of ATC's financial exposure, ATC put all its legal and financial resources to bear against its much smaller competitor - even though ATC had knowingly and willfully infringed Presidio's '356 patent.

Adding insult to injury, ATC mounted every conceivable defense no matter how ill-conceived.  Further, ATC contended during trial that it had other products its customers could purchase, tacitly admitting it could have easily avoided its

infringement altogether by discontinuing its infringing conduct.  Instead of doing that, however, ATC continued its willful infringement against Presidio.  It is as if ATC were trying to send a message to Presidio – if you dare seek redress against ATC, even if ATC acts willfully, you will have to pay dearly for it.

The legal damages available to Presidio in this case do not truly compensate it for all the harm it has suffered at the hands of ATC.[1]  As Presidio demonstrated at trial, there are advantages to being the "incumbent" with Presidio's and ATC's customers and potential customers.  Armed with Presidio's innovative technology through copying and infringement, ATC has also gained an advantage of usurping Presidio's reputation of being the sole supplier of solutions to unique customer problems.  ATC's willful conduct has reaped the benefits of being the incumbent, and the full extent of harm ATC caused Presidio in the marketplace cannot be calculated with precision.

In this regard, the jury's finding of willful infringement is very significant.

The Court should respect the jury's finding and award Presidio supplemental damages, treble damages, and its attorneys' fees, together with prejudgment and postjudgment interest and costs.

---

[1] For this reason, Presidio is concurrently moving this Court for entry of a permanent injunction against ATC.

## II. THE COURT SHOULD AWARD SUPPLEMENTAL DAMAGES FOR ATC'S CONTINUED INFRINGEMENT

Despite the jury's finding that the '356 patent is valid and willfully infringed, ATC continues to offer for sale the 545L capacitor.  (*See* Exhibit A).  ATC's cavalier view of the jury's finding is incredible, and warrants imposition of supplemental damages for any sales occurring after December 1, 2009, the first day of trial.  *Tivo, Inc. v. Echostar Comm'ns Corp.*, Case No. 2:04-cv-1-DF, 2006 U.S. Dist. LEXIS 64291, at *7 (E.D. Tex. Aug. 17, 2006) ("Supplemental damages are calculated consistent with the damages awarded in the jury verdict…"); *Bard Peripheral Vascular, Inc. v. W.L. Gore & Assoc., Inc.*, Case No. cv-03-0597, 2009 U.S. Dist. LEXIS 31328, at * 11 (D. Ariz. Mar. 31, 2009).  Specifically, ATC should be ordered to account for all 545L sales made subsequent to the latest sales data it provided and that was utilized at trial.  Based on that information, the Court should apply the lost profit rate adopted by the jury (X $ / unit) and award Presidio supplemental damages to account for the as yet unaccounted for sales by ATC.

## III. THE COURT SHOULD TREBLE THE DAMAGES

The Court has discretion to enhance damages by up to three times those found or assessed.  35 U.S.C. § 284.  Where, as here, the jury has found that ATC willfully infringed the '356 patent, it is important for the Court to enhance damages; otherwise, the jury's finding of willful infringement would be rendered meaningless. Indeed, when a jury has found willful infringement, a decision *not* to enhance

damages must be supported by detailed reasons to justify the denial.  *Jurgens v. CBK, Ltd.*, 80 F.3d 1566, 1572 (Fed. Cir. 1996); *Tate Access Floors, Inc. v. Maxcess Tech. Inc.*, 222 F.3d 958, 972 (Fed. Cir. 2000).

The factors relevant to the Court's analysis of whether to treble damages are essentially the same as those considered by the jury in their finding of willfulness, namely: (1) whether the infringer deliberately copied the ideas of another; (2) whether the infringer investigated the scope of the patent and formed a good faith belief that it was invalid or not infringed; (3) the infringer's behavior as a party to the litigation; (4) the infringer's size and financial condition; (5) the closeness of the case; (6) the duration of the infringer's misconduct; (7) remedial action taken by the infringer; (8) the infringer's motivation for willfully infringing; and (9) whether the infringer attempted to conceal its misconduct.  *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1225 (Fed. Cir. 2006); *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826 (Fed. Cir. 1992).

At trial, Presidio presented evidence on each of these factors.  The jury's verdict shows that it found "clear and convincing evidence" that these factors were present such that willful infringement occurred.  The Court should respect and adopt the jury's finding of fact and give preclusive effect to that ruling.  *See Johns Hopkins Univ. v. CellPro, Inc.*, 152 F.3d 1342, 1364-65 (Fed. Cir. 1998) (affirming district court's award of treble damages after jury verdict of willful infringement);

*Jurgens*, 80 F.3d at 1572 (reversing failure of trial court to award enhanced damages due to court's "impropriety of second guessing the jury . . . .").

A.   **The Jury Found That ATC Willfully Infringed The '356 Patent**

After less than a day of deliberation, the jury returned a verdict of willful infringement.  (*See* Exhibit B).  Standing alone, the jury's verdict is sufficient for the Court to award Presidio's enhanced damages.  *Jurgens*, 80 F.3d at 1570 ("An act of willful infringement satisfies [the] culpability requirement and is, without doubt, sufficient to meet the first requirement to increase a compensatory damages award.").  Indeed, "[u]pon a finding of willful infringement, a trial court should provide reasons for *not* increasing a damages award or for not finding a case exceptional for the purpose of awarding attorneys' fees."  *Id*. at 1572 (emphasis added) (reversing district court's failure to award enhanced damages); *see also, S.C. Johnson & Son, Inc. v. v. Carter-Wallace, Inc.*, 781 F.2d 198, 201 (Fed. Cir. 1986) (necessary for trial court to explain why case was not exceptional after express finding of willful infringement).

In light of this Court's detailed jury instructions on the elements of willful infringement and that Presidio had to prove willful infringement by "clear and convincing evidence," the jury's finding of willfulness should be dispositive.  *See Jurgens*, 80 F.3d at 1572 (The "trial court … does not have discretion to reweigh

this evidence once the matter has been decided by the jury and the court finds evidence sufficient to support the jury determination.").

The jury sent a strong message to the Court and the Parties when it returned a verdict of willful infringement – ATC did more than just infringe.  It did so intentionally.  The fact that the jury expressed its belief that ATC conducted itself willfully indicates that the jury wanted to do more than just award lost profits to Presidio, further supporting an award of enhanced damages.

**B.     ATC Copied Presidio's Buried Broadband Capacitor**

There was significant evidence of copying, and ATC did not dispute the following essential facts:

First, it is undisputed that ATC, and its customers, were utterly unsatisfied with ATC's cumbersome, two – piece product, the 540L.  However, the designer of ATC's infringing 545L capacitor, Mr. Mruz, testified that ATC was not smart enough, on its own, to develop a successful one – piece product.  (Trial Tr. 3 at 116:3; Dep. Tr. at 99:11-100:4).  It was not until after ATC purchased and analyzed Presidio's one-piece Buried Broadband product, and after Mr. Mruz and others at ATC reviewed Presidio's patent application that issued as the '356 patent, that ATC elected to pursue a one-piece design.  (Trial Tr. 3 at 116:3; Dep. Tr. at 9:3-92:3, 127:16-19).  In fact, it was one of ATC's major undertakings at the beginning of its one-piece product development effort to "dissect and analyze" the Presidio product.

(*See* Plaintiff's Trial Exhibit 135).  At a minimum, ATC copied Presidio's idea of a one-piece, substantially monolithic construction.

Second, it is undisputed that ATC was tracking Presidio's patents.  ATC admitted that the patent application that later issued as the '356 patent-in-suit "seems to cover all bases for their broadband capacitors."  (*See* Plaintiff's Trial Exhibits 96, 279).  After ATC became aware of the '356 patent itself, ATC elected to proceed with its design and subsequent sales of the infringing 545L product. When Presidio brought the '356 patent to ATC's attention directly to three separate corporate officers, ATC's incredible explanation was that it had no recollection of receiving notice, but would have given it serious attention but for the fact it was purportedly involved in more important matters.  (Trial Tr. 5 at 34:5-35:15).

Third, ATC admitted that it decided, after obtaining Presidio's own products, to "emulate" Presidio's capacitor design.  (*See* Plaintiff's Trial Exhibit 163).  That "emulation" led to ATC's infringement, and is particularly significant because ATC's "pre-patent conduct consists of egregious copying."  *Trading Techs. Int'l, Inc. v. eSpeed, Inc.,* Case No. 04-C-5312, 2008 U.S. Dist. LEXIS 295, at *8 (N.D. Ill. Jan. 3, 2008); *see also Stryker Corp. v. Davol Inc.*, 234 F.3d 1252, 1259 (Fed. Cir. 2000) (upholding willfulness finding despite the infringer's argument that "its copying …pre-dated the issuance of the patent."); *Milgo Electronic Corp. v. United Business Communications, Inc.*, 623 F.2d 645, 665 (Fed. Cir. 1980) (explaining that

while "there can be no liability for infringement before a patent issues," pre-patent copying can be used to establish willfulness where the infringer knew of the plaintiff's claim to the technology).  Indeed, after ATC spent years developing its own two-piece capacitor, it decided to re-design its product as a substantially monolithic capacitor like Presidio's.  Moreover, its final decision to do so occurred in or after April 2004 – one month after ATC became aware of the '356 patent application was published.  A jury could reasonably conclude that ATC's design shift -- and particularly the decision to continue down that path even after obtaining Presidio's patent application, and later the '356 patent itself – strongly indicates ATC's willingness to infringe Presidio's patent rights.  *See Afros S.p.A. v. Krauss-Maffei Corp.*, 671 F. Supp. 1402, 1437-38 (D. Del. 1987) (finding "strong circumstantial evidence" of copying from  "the sudden emergence" of an infringing product after defendant's "apparently extensive research and development program" focused on a non-infringing design).

Although ATC employees testified that they did not copy Presidio's products, such testimony is wholly incredible.  In the end, the jury found "clear and convincing evidence" that ATC willfully infringed despite ATC's denials that it did not copy.

**C.   ATC Did Not Investigate The Scope Of The '356 Patent Or Present Evidence That It Had A Good Faith Belief That The '365 Patent Was Invalid Or Not Infringed**

ATC presented no competent evidence on these critical subjects at trial.  ATC had actual knowledge of the patent application that ultimately issued as the '356 patent in March 2004, and it was aware of the '356 patent before Presidio filed the lawsuit.

The law is clear that upon notice of the '356 patent, ATC had a duty to investigate and determine whether it had a good faith belief it could continue making, using, selling, and offering for sale its 545L capacitor without violating this patent.  *See Johns Hopkins*, 152 F.3d at 1564 ("Because [the infringer] had knowledge that it might infringe the . . . patents, it had an affirmative duty to exercise due care to avoid infringement.").  The focus is on "whether the infringer, acting in good faith and upon due inquiry, had sound reason to believe that it has the right to act in the manner that was found to be infringing."  *SRI Int'l, Inc. v. Advanced Tech. Labs, Inc.*, 127 F.3d 1462, 1464-65 (Fed. Cir. 1997).  ATC presented no evidence of any competent investigation—much less any evidence that such an investigation led to any good faith belief it could continue making and selling its 545L capacitor.

Second, as was its right, ATC chose before trial to assert the attorney-client privilege to withhold opinions of counsel on the '356 patent.  The Court carefully

avoided any suggestion or jury instruction that would have conceivably created an adverse inference that ATC's opinion of counsel was adverse to ATC's alleged "good faith."  However, having made its choice, ATC cannot now complain that the jury lacked all the evidence supporting ATC's alleged "good faith."  In fact, the evidence demonstrated that ATC undertook testing during the development of the 545L capacitor, but refused to disclose that testing based on privilege.  (Trial Tr. 5 at 106:8-24).  ATC also spoke to a patent lawyer, who was not ATC's litigation counsel in this matter, and refused to disclose those communications.  (Trial Tr. 5 at 5:1-16; Dep. Tr. at 11:11-19:5).  ATC's testing and communications are no doubt telling, given that ATC made a strategic decision to not rely upon any opinions of counsel as a defense to the charge of willful infringement.

Finally, when it proffered evidence of "good faith," ATC chose to rely solely on lay witnesses.  The evidence of ATC's attempts to steer clear of infringement was disingenuous and incredible at best.  ATC's engineers did not review the patent claims, and in any event, they were "gibberish" to them.  (Trial Tr. 3 at 116:3; Dep. Tr. at 121:21-122:9; Trial Tr. 5 at 99:10-16).

Particularly damning to ATC here is its failure to produce or rely upon an opinion of counsel upon obtaining the published application that led to the '356 patent, and later the '356 patent itself, both of which occurred prior to ATC first selling the accused 545L product.  Even since *Knorr-Bremse*, the Federal Circuit has

held that while the failure to obtain an opinion of counsel may not create a presumption of willfulness, that fact may still be considered as one factor in favor of a finding of willfulness. *Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 698 (Fed. Cir. 2008) (holding proper a jury instruction that permitted the absence of a legal opinion as one factor in assessing willfulness); *Golden Blount, Inc. v. Robert H. Peterson Co.*, 438 F.3d 1354, 1369 (Fed. Cir. 2006) (approving of the district court's use of the absence of competent opinion of counsel as a factor in its willfulness analysis).

Also damning to ATC is that the Federal Circuit has specifically indicated that engineers are in no position to make a legal determination upon which a party can reasonably rely as a basis for justifying infringement. In *Smith Engineering Co., Inc. v. Eisenmann Corp.*, 28 Fed. Appx. 958, 965 (Fed. Cir. 2002), the defendant's engineering department conducted its non-infringement analysis. The Federal Circuit upheld the jury finding of willful infringement, observing that, "[t]his presents a textbook example of willful infringement, and a[n] instructive lesson on the need to consult *legal* counsel in evaluating the risk of patent infringement." *Id.* (emphasis in original). *Rosemount, Inc. v. Beckman Instruments, Inc.*, 727 F.2d 1540, 1548 (Fed Cir. 1984) (upholding the finding of willfulness even in light of in-house memoranda of defendant's executives and engineers which concluded that the patented invention was invalid); *see also Velcro Industries B.V. v. Taiwan Paiho*

*Ltd.*, 2005 WL 2573383, *7 (D.N.H. 2005) (noting that oral advice from an engineer will justify the conclusion of failing to obtain a "legal opinion").

### D.    ATC's Behavior As A Party To The Litigation

#### 1.    ATC Vexatiously Multiplied The Proceedings

In evaluating a party's litigation conduct, the Court is to consider that conduct as a whole, rather than view each action in isolation, to determine whether a pattern of inappropriate conduct is apparent.  *See Beckman Instruments, Inc. v. LKB Produkter AB*, 892 F.2d 1547, 1552 (Fed. Cir. 1989) (finding exceptional case where party engaged in a strategy of vexatious conduct).  Where such a "strategy" exists, the Court need not "set forth every underlying fact which contributed to its conclusions."  *Beckman*, 892 F.2d at 1551; *see also NTP, Inc. v. Research in Motion, Ltd.*, 270 F. Supp. 2d 751, 758 (E.D. Va. 2003) (enhancing damages based in part on party's filing of baseless summary judgment motions).

Title 28 provides a further, independent basis for such a sanction.  Under 28 U.S.C. § 1927, an attorney or other person who "so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  28 U.S.C. § 1927.

Regardless of the judicial or statutory basis, ATC vexatiously multiplied these proceedings with the intent of overburdening the Court and Presidio with baseless conduct, and in an effort to hide the truth of its own willful infringement.

## 2.    ATC's Vexatious Summary Judgment Motion

ATC filed for summary judgment in this action on virtually every issue. ATC's summary judgment motions included:

- No willful infringement [Denied]

- Invalidity of the '356 patent based on prior art [Denied]

- Invalidity of the '356 patent based on indefiniteness [Denied]

- No lost profits [Denied]

- No permanent injunction [Denied]

At trial, ATC threw everything and the kitchen sink at Presidio, including defenses of improper inventorship, inequitable conduct, invalidity due to lack of enablement, invalidity due to lack of written description, and invalidity based on prior art.  In short, the Court completely denied five of ATC's requests for summary judgment, and the jury rejected all of its defenses.

ATC's defenses lacked substantial merit from the outset and were interposed merely to drive up the cost of these proceedings.  For example, ATC had the temerity to move for non-infringement of the '356 patent despite the fact that its technical expert, Dr. Dougherty, admitted at one point during the trial that the 545L

capacitor fell within the scope of the '356 patent.  (Trial Tr. 5 at 137:21-23).  During trial, ATC's legal expert testified that his demonstrative exhibits were not created by him, were not accurate, and included information he was not even relying upon. (Trial Tr. 7 at 45:21-47:25; 48:19-49:20).  The Court even questioned why the information was on the demonstrative exhibits, and concluded it was not accurate and should not be received.  *Id*. at 50:1-5.

### 3.    ATC's Vexatious Trial Subpoenas

Only a few days before trial, ATC served upon counsel for Presidio several trial subpoenas for Presidio and its employees.  ATC served the subpoenas by mail, on Presidio's counsel, and failed to tender with the subpoena either the per diem witness fee or mileage costs as required by Rule 45(b) of the Federal Rules of Civil Procedure.  Pursuant to Rule 45, the subpoenas were fatally defective for improper service and for failure to tender with the subpoena either the per diem witness fee or mileage costs.  The subpoenas were also improper because ATC utilized at least one of them to command the production of the originals of documents that had been produced in discovery years prior, despite the fact that discovery had concluded months prior to trial.  ATC's tactic was clear – to divert Presidio and its counsel from its trial preparation by demanding originals of documents just prior to trial, at a time when counsel would need to direct its efforts toward trial preparation.

Moreover, several of the witnesses subpoenaed for trial by ATC were never called to the stand by ATC!

### 4.      ATC's Vexatious Discovery Conduct

Incredibly, counsel for ATC performed an inspection of documents produced by third party JDSU pursuant to an issued subpoena, but intentionally concealed this inspection from Presidio.  Moreover, counsel for ATC only produced selective documents from this secretive inspection.  Making matters worse, counsel for ATC lied to Presidio about the inspection when asked about it.

During the depositions of the former JDSU employees, Presidio discovered the fact that ATC's lawyers had undertaken the secret inspection.  Presidio also discovered that ATC's lawyers had produced only certain of the documents reviewed during the secret inspection.  Making matters even worse, the documents ATC did produce were not produced until only one business day before the depositions.  ATC thereby prevented Presidio from fully cross-examining the witnesses, including with respect to the documents inspected but intentionally not produced by ATC.

ATC's subsequent conduct is masked with deception and cover-up.  The depositions of former JDSU employees Charles Rosier and Gary Bastin were scheduled for January 27 and 28, 2009.  On January 16, 2009, during the deposition of a Presidio employee, counsel for Presidio asked counsel for ATC, Attorney

Slonim, on the record whether any documents had been received in response to the

subpoenas Slonim had issued:

> MR. AHRENS:   Okay.  And I don't have any more questions of the witness.
>
> My question for you [Mr. Slonim] is, have you gotten any documents from JDSU, Mr. Bastin and Mr. Rosier, in response to the subpoenas that were issued to them, because we're about to have the depositions and we've seen no documents.
>
> MR. SLONIM:  I'm not aware of any.

(Devoe Dep., at 313:10-15) (*See* Exhibit C).

Thus, as late as January 16, 2009, Slonim represented that he was not aware

of any documents responsive to the subpoenas.  This turned out to be blatantly false.

### E.    ATC's Large Size and Strong Financial Condition

As stated in *Johns Hopkins Univ. v. Cellpro, Inc.*,  "[p]unishing a larger

company in a stronger financial condition may call for higher damages, where a

lower number may be equally effective in punishing a smaller company."  978 F.

Supp. 184, 195-96 (D. Del. 1997); *see also NTP, Inc., 270 F. Supp. 2d at 758*

("[T]he primary consideration of this Court is the amount of enhanced damages that

[the infringer] can withstand.").

ATC's annual revenues approach $90 million every year, and AVX's over $1

billion.  ATC's misconduct here is all the more palpable because it was against a

company a mere fraction of its size.  ATC employed its vast resources in an effort to

crush Presidio by attempting to out-spend Presidio in this litigation while it continued to willfully infringe.

ATC's massive size and financial condition counsels for greater enhanced damages so as to meaningfully deter it from future willful misconduct.  It is clear that ATC is able to pay treble damages and, moreover, that treble damages are necessary to punish ATC for its willful infringement.

### F.    This Case Was Not Close

The infringement and validity cases were not close because ATC lost at trial on every issue, including virtually every single defense that a defendant could mount in response to an infringement claim.  As is evident by the jury reaching a verdict in less than one day, the damages and willful infringement cases were also not close.  With respect to damages, the jury fully agreed with Presidio's damages expert, both with respect to the form of damages (lost profits) and the amount of those lost profits.  Similarly, the willful infringement case was not close because ATC offered no evidence of "good faith" and the jury found willful infringement by "clear and convincing evidence."

### G.    The Duration of ATC's Misconduct

ATC's misconduct began when it copied Presidio's products and then concealed that fact.  Making matters worse, the '356 patent application was passed around to several ATC employees as early as March 2004.  Thus, ATC knew for

years that its copying might pose a serious problem later when Presidio's patent issued.

ATC's misconduct continued when, upon receiving actual notice of the patent directly from Presidio before Presidio filed this lawsuit, it continued to make and sell its infringing 545L capacitor without any evidence of a reasonable basis for continuing to do so.  ATC's misconduct continued after Presidio filed this lawsuit, and continues today.  (*See* Exhibit A).

The bottom line is that ATC did not cease infringing.  ATC's infringing conduct continues to this day.  This factor therefore weighs heavily toward granting enhanced damages to Presidio.

## H.    ATC Did Not Take Any Remedial Action

It is a fact that ATC did not make any changes to the 545L capacitor as a result of its knowledge of the '356 patent.  It is also a fact that ATC continued to sell the 545L capacitor during the lawsuit, and offers it for sale today, even after the jury's verdict.

## I.    ATC Had The Motivation To Harm Presidio

Numerous ATC employees admitted at trial that Presidio was and is a "competitive threat" to ATC.  Indeed, evidence presented at trial indicates that Presidio was the only true competitor, but that Presidio was small and could therefore be exploited.   (Trial Tr. 3 at 116:3; Dep. Tr. at 84:3-15:  ATC's Mr. John

Mruz testifying that Presidio is ATC's primary competitor).  Internal ATC documents likewise show that ATC recognized that Presidio was a technologically superior company to ATC and Presidio would, if left to its own devices, quickly start eating into ATC's market.  Indeed, the designer of the 545L capacitor testified that he was practically stalking Presidio because he had so much respect for it.  (Trial Tr. 5 at 101:4-102:11:  "It goes way beyond just taking the pulse of a competitor.").  ATC documents also suggest that ATC was out to "crush" Presidio.  (Trial Tr. 6 at 84:1-15).  ATC even made it a "joke" to "crush" Presidio.  *Id*.

### J.      ATC Attempted To Conceal Its Misconduct

Before Presidio filed this lawsuit, and despite the fact that ATC had been well aware of the '356 patent for years, Presidio brought the '356 patent to the attention of three ATC corporate representatives.  In response, an ATC representative testified that ATC had no recollection of receiving notice, but would have given it serious attention but for the fact it was purportedly involved in more important matters.  ATC's testimony is incredible.  It also makes clear that ATC representatives will say just about anything to conceal and excuse its deliberate decision to infringe.

In conclusion, every willfulness factor is present in this record.  The jury found willfulness based on these factors and this court should follow the jury's decision and award treble damages to Presidio.

## IV.   THE COURT SHOULD DETERMINE THIS IS AN "EXCEPTIONAL CASE" ENTITLING PRESIDIO TO AN AWARD OF ATTORNEYS' FEES

Section 285 provides, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."  35 U.S.C. § 285.  There is no question that Presidio is the prevailing party on infringement, validity, damages, and willful infringement of the '356 patent.  Therefore, if the Court determines this case is exceptional, the Court can in its discretion award all or part of Presidio's attorneys' fees.  A finding by the Court that a case is exceptional is a factual determination, whereas the decision to award fees is discretionary.  *Graco, Inc. v. Binks Mfg. Co.*, 60 F.3d 785, 795 (Fed. Cir. 1995).

Based on the jury's determination that ATC willfully infringed the '356 patent, this Court should find this case to be exceptional and award Presidio its attorneys' fees.  *See, e.g., Golden Blount, Inc. v. Robert H. Peterson Co.*, 438 F.3d 1354, 1373 (Fed. Cir. 2006) (affirming award of attorneys' fees where willful infringement found).  Not only *should* the Court award Presidio its attorney's fees, where there has been an express finding of willful infringement a trial court must detail its reasons if it does *not* declare the case "exceptional."  *See Modine Mfg. co. v. Allen Group, Inc.*, 917 F.2d 538, 543 (Fed. Cir. 1990); *see also NTP, Inc.*, 270 F. Supp. 2d at 761 ("Although the moving party must show that attorney fees are warranted, in the face of the jury's express finding of willful infringement, which,

standing alone, is a sufficient basis to award attorney's fees, [the infringer] must put forth a showing as to why attorney fees are not warranted in this case.").

Beyond the jury's finding of willful infringement, the Court may also consider "the closeness of the case, tactics of counsel, the conduct of the parties and any other factors that may contribute to a fairer allocation of the burdens of litigation as between winner and loser." *J.P. Stevens Co., Inc. v. Lex Tex Ltd., Inc.*, 822 F.2d 1047, 1051 (Fed. Cir. 1987). These are essentially the same factors as those applied in the analysis of whether damages should be enhanced pursuant to Section 284. As described above, these factors are present in this case and warrant the determination that this is an exceptional case, and the award of Presidio's attorneys' fees.

All the factors weigh heavily in favor of granting Presidio enhanced damages. Those factors also, therefore, weigh heavily in favor of finding this to be an "exceptional case," justifying an award of Presidio's attorneys' fees. Indeed, Presidio's successful litigation against ATC, a conglomerate with vastly greater monetary and legal resources, makes an award of Presidio's attorneys' fees eminently reasonable.

If the Court awards Presidio its attorneys' fees, Presidio will attempt to work with ATC to provide a summary of those fees so as not to overburden the Court with detailed billing statements.

# V. THE COURT SHOULD AWARD PRESIDIO PREJUDGMENT AND POSTJUDGMENT INTEREST ON ITS DAMAGES, AND AWARD PRESIDIO ITS COSTS

## A. Prejudgment Interest On The Damages Award Is Appropriate

It is well settled that a successful plaintiff in a patent case is entitled to prejudgment interest on the damages award. 35 U.S.C. § 284 (providing for the calculation of damages "together with interest . . . as fixed by the court."); *General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 657-58 (1983) ("Prejudgment interest should ordinarily be awarded."). The determination of prejudgment interest is committed to the discretion of the district court. *See, e.g., Kaufman Co. v. Lantech, Inc.*, 926 F.2d 1136, 1144 (Fed. Cir. 1991). However, as recently noted by the Eastern District of California, the underlying purpose of prejudgment interest indicates that it should normally be awarded in patent cases:

> In its January 15, 2009, Order, the Court awarded Plaintiff pre-judgment interest on the $ 250,000 damages award. '[T]he underlying purpose of the provision strongly suggests that pre-judgment interest should ordinarily be awarded where necessary to afford the plaintiff full compensation for the infringement.' *General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 654, 103 S.Ct. 2058, 76 L.Ed. 2d 211 (1983). 'The standard governing the award of prejudgment interest under §284 should be consistent with Congress' overriding purpose of affording patent owners complete compensation…In the typical case an award of prejudgment interest is necessary to ensure that the patent owner is placed in as good a position as he would have been in had the infringer entered into a reasonable royalty agreement. An award of interest from

> the time that the royalty payments would have been
> received merely serves to make the patent owner whole,
> since his damages consist not only of the value of the
> royalty payments but also of the foregone use of the
> money between the time of infringement and the date of
> the judgment.' *Id.* at 655-656.

*WordTech Sys., Inc. v. Integrated Network Solutions, Inc.*, Case No. 2:04-cv-1971, 2009 U.S. Dist. LEXIS 31348, at * 18-19 (E.D. Cal. April 13, 2009). California courts have applied California's statutory rate for liquidated amounts, which is simple interest at seven percent, accruing from the date of first infringement, which in this case is June 2006. *Id.* at *20.

### B.     Postjudgment Interest On The Damages Award Is Mandatory

Pursuant to 28 U.S.C. § 1961, "interest shall be allowed on any money judgment in a civil case recovered in a district court . . . .". *See Honeywell Int'l, Inc. v. Hamilton Sundstrand Corp.*, 166 F. Supp. 2d 1008, 1041 (D. Del. 2001). The provision for postjudgment interest is mandatory. *See, e.g., DeLong Equip. Co. v. Washington Mills Electro Minerals Corp.*, 997 F.2d 1340, 1341 (11th Cir. 1993). Postjudgment interest is now calculated from the date of entry of judgment at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System. 28 U.S.C. § 1961(a); *see also WordTech Sys.*, 2009 U.S. Dist. LEXIS 31348, at * 20. That figure can be found at http://www.federalreserve.gov/Releases/H15/Update/h15upd.htm and is currently .34%.

PRESIDIO COMPONENTS, INC.'S BRIEF IN SUPPORT
OF ITS MOTION FOR POST TRIAL REMEDIES
Case No. 3:07-cv-0893 IEG NLS                           23

## C.     Presidio Should Be Awarded Its Costs

It is also well settled that a successful plaintiff in a patent case is entitled to its costs.  L.R. 54.1 ("Unless otherwise ordered by the Court...the prevailing party is entitled to its costs."); *see also* Fed. R. Civ. P. 54(d); 35 U.S.C. § 284 (providing for the calculation of damages "together with . . . costs as fixed by the court.").  Further, pursuant to 28 U.S.C. §§ 1920 and 1924, this Court should also award Presidio its costs incurred in this action, including its costs for depositions and witness fees.  A Bill of Costs and the required supported documentation is attached as Exhibit D.

## VI.    CONCLUSION

For all the foregoing reasons, Presidio respectfully requests that this Court award Presidio supplemental damages, treble damages, declare this to be an "exceptional case," award Presidio its attorneys' fees, award Presidio prejudgment and postjudgment interest, and award Presidio its costs.

Dated:  January 29, 2010              Respectfully submitted,

WOOD, HERRON & EVANS L.L.P.

By:  s/ Brett A. Schatz
Gregory F. Ahrens
Brett A. Schatz
Attorneys for Plaintiff
PRESIDIO COMPONENTS, INC.

**PROOF OF SERVICE**

**STATE OF OHIO**            )
                               )     **ss.**

**COUNTY OF HAMILTON**     )

      I am employed in the County of Hamilton, State of Ohio.  I am over the age of 18 and not a party to the within action.  My business address is:  2700 Carew Tower, 441 Vine Street, Cincinnati, Ohio 45202.

      On January 29, 2010, I served **PLAINTIFF PRESIDIO COMPONENTS, INC.'S BRIEF IN SUPPORT IF ITS MOTION FOR POST TRIAL REMEDIES** on the interested parties in this action by placing a true copy thereof enclosed in a sealed envelope at Cincinnati, Ohio addressed as follows:

| | |
|---|---|
| Daniel T. Pascucci | Marvin S. Gittes |
| Nathan R. Hamler | Timur E. Slonim |
| MINTZ, LEVIN, COHN, FERRIS, | Peter F. Snell |
| GLOVSKY AND POPEO, P.C. | MINTZ, LEVIN, COHN, FERRIS, |
| 3580 Carmel Mountain Road, Suite 300 | GLOVSKY AND POPEO, P.C. |
| San Diego, California 92130 | 66 Third Avenue |
| | New York, NY  10017 |

Attorneys for Defendant AMERICAN TECHNICAL CERAMICS CORP.

      [X]     (**BY MAIL AND EMAIL**) The envelope was mailed with postage thereon fully prepaid.  As follows:  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Cincinnati, Ohio in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

      [ ]     (**BY HAND DELIVERY**)    I caused the attached document to be personally delivered to the above named individual.

      [ ]     (**BY FACSIMILE**)    I delivered such document by facsimile to the ABOVE persons at the facsimile telephone numbers listed ABOVE as a courtesy.

      [ ]     (**FEDERAL**)  I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

      Executed on January 29, 2010 at Cincinnati, Ohio.

                                     s/ Brett A. Schatz
                                     Brett A. Schatz