Daniel T. Pascucci, Esq. (SBN 166780)
dpascucci@mintz.com
Nathan R. Hamler, Esq.  (SBN 227765)
nhamler@mintz.com
MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO PC
3580 Carmel Mountain Road, Suite 300
San Diego, CA 92130
Telephone: (858) 314-1500
Facsimile:  (858) 314-1501

Marvin S. Gittes, Esq. (*pro hac vice in case no. 3:07-cv-00893-IEG(NLS)*)
E-mail: mgittes@mintz.com
Timur E. Slonim, Esq. (*pro hac vice in case no. 3:07-cv-00893-IEG(NLS)*)
E-mail: tslonim@mintz.com
Peter F. Snell, Esq. (*pro hac vice in case no. 3:07-cv-00893-IEG(NLS)*)
E-mail: psnell@mintz.com
MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO PC
666 Third Avenue
New York, NY 10017
Telephone:  (212) 935-3000
Facsimile:   (212) 983-3115

Attorneys for Defendant/Counter-Claimant
AMERICAN TECHNICAL CERAMICS CORP.

## UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PRESIDIO COMPONENTS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN TECHNICAL CERAMICS CORP.,<br><br>Defendant. | Case No. 3:08-cv-00335-IEG-NLS<br><br>**ATC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS OPPOSITION TO PRESIDIO'S MOTION FOR PERMANENT INJUNCTION**<br><br>**ORAL ARGUMENT REQUESTED** |
| AMERICAN TECHNICAL CERAMICS CORP.,<br><br>Counter-Claimant,<br><br>v.<br><br>PRESIDIO COMPONENTS, INC.,<br><br>Counter-Defendant. | Hearing Date: March 1, 2010<br>Hearing Time: 10:30 am<br>Courtroom 1 |

TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................................................... II

**I.** PRESIDIO'S REPUTATION IS BASED ON FALSE REPRESENTATIONS NOT DESERVING OF A PROTECTIVE INJUNCTION ................................................. 1

**II.** PRESIDIO IS NOT ENTITLED TO A PERMANENT INJUNCTION ............................... 3

    A. Presidio Relies On The Rejected Presumption Of Irreparable Harm ....................... 3

    B. Presidio Is Not Suffering Irreparable Harm -It Does Not Practice The '356 Patent And Does Not Need An Injunction ........................................... 5

    C. Money Damages Will Adequately Compensate Presidio ........................................ 10

    D. Balance Of Hardships Favors ATC, As An Innovator and An Underdog, And Its Customers ............................................................................ 13

    E. Public Interest Mandates Denial Of An Injunction ................................................. 15

    F. The Requested Injunction Is Overbroad ................................................................. 18

    G. Presidio's Is Double-Dipping As It Has Already Been Awarded Lost Profit Damages For the 545Ls Presidio Wants Recalled .......................................... 20

    H. ATC Should Not Be Required To Turn Over Existing 545L Capacitors to Presidio ................................................................................................ 21

TABLE OF AUTHORITIES

**Cases**

*Abbott Labs. v. Andrx Pharms., Inc.*,
452 F.3d 1331 (Fed. Cir. 2006) ...................................................................................... 15

*Amado v. Microsoft Corp.*,
2007 U.S. Dist. LEXIS 96487 (C.D. Cal. Mar. 13, 2007) ...................................................... 5

*Amstar Corp. v. Envirotech Corp.*,
823 F.2d 1538 (Fed. Cir. 1988) ...................................................................................... 20

*Automated Merchandising Systems, Inc., v. Crane Co.*,
2009 U.S. App. LEXIS 27667 (Fed. Cir. Dec. 16, 2009) .......................................................... 4

*Bard Peripheral Vascular, Inc. v. W.L. Gore & Ass., Inc.*,
2009 U.S. Dist LEXIS 31328 (D. Ariz. Mar. 31, 2009) ........................................................ 4

*BIC Corp. v. Thai Merry Co.*, No. 98 Civ. 2113,
1999 U.S. Dist. LEXIS 15991, at *16 (S.D.N.Y. Oct. 18, 1999) ........................................... 4

*Broadcom Corp. v. Qualcomm Inc.*,
543 F.3d 683 (Fed. Cir. 2008) ................................................................................. 9, 13

*Cardiovascular Sys. v. Medtronic Vascular, Inc.*,
579 F. Supp.2d 554 (D. Del. 2008) .......................................................................... 5, 9

*Christiana Indus., Inc. v. Empire Elecs., Inc.*,
No. 06-12568, 2006 U.S. Dist. LEXIS 54210 (E.D. Mich. Aug. 4, 2006) ............................. 4

*Ciba-Geigy Corp. v. Bolar Pharm. Co., Inc.*,
747 F.2d 844 (3d Cir. 1984) .......................................................................................... 17

*Ciena Corp. v. Corvis Corp.*,
334 F. Supp. 2d 610 (D. Del. 2004) .............................................................................. 4

*eBay Inc. v. MercExchange, LLC*,
547 U.S. 388 (2006) .............................................................................................. 3, 4

*Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*,
826 F.2d 837, (9th Cir.1987) ...................................................................................... 17

*I-Flow Corp. v. Apex Medical Tech., Inc.*,
No. 07-cv-1200, 2010 U.S. Dist. LEXIS 1573 (S.D. Cal. Jan. 6, 2010) ............................... 4

*IMX, Inc. v. LendingTree, LLC,.*,
469 F. Supp.2d 203 (D. Del. 2007) .............................................................................. 9

*In re Gabapentin Patent Lit.*,
648 F. Supp.2d 641,  n.20 (D.N.J. 2009) ................................................................... 18

*Innogenetics, N.V. v. Abbott Labs*,
512 F.3d 1363 (Fed. Cir. 2008) ...................................................................................... 20

ii

*Johnston v. IVAC Corp.,*
    885 F.2d 1574 (Fed. Cir. 1989)...................................................................................... 9

*Kowalski v. Mommy Gina Tuna Resources,*
    No. 05-679, 2009 U.S. Dist. LEXIS 26216 (D. Haw. Mar. 30, 2009)................................... 5

*KSM Fastening Sys., Inc. v. H.A. Jones Co.,*
    776 F.2d 1522 (Fed. Cir. 1985)...................................................................................... 19

*L&W, Inc. v. Shertech, Inc.,*
    No. 01-73892, 2005 U.S. Dist LEXIS 34635 (E.D. Mich. Sept. 28, 2005).......................... 4

*Paice LLC v. Toyota Motor Corp.,*
    504 F.3d 1293 (Fed. Cir. 2007)...................................................................................... 12

*Praxair, Inc. v. ATMI, Inc.,*
    479 F. Supp.2d 440 (D. Del. 2007) ................................................................................. 9

*Reebok Int'l Ltd. v. J. Baker, Inc.,*
    32 F.3d 1552 (Fed. Cir. 1994)........................................................................................ 12

*ResQNet.com, Inc. v. Lansa, Inc.,*
    533 F. Supp. 2d 397 (S.D.N.Y. 2008) .............................................................................. 9

*Richardson v. Suzuki Motor Co., Ltd.,*
    868 F.2d 1226 (Fed. Cir. 1989)....................................................................................... 3

*Rite-Hite Corp. v. Kelley Co.,*
    56 F.3d 1538  (Fed. Cir. 1995)....................................................................................... 16

*Softview Computer Prods. Corp. v. Haworth, Inc.,*
    2000 U.S. Dist. LEXIS 11274 (S.D.N.Y. Aug. 10, 2000) ................................................. 16

*Standard Havens Prods, Inc. Gencor Indus., Inc.,*
    1993 U.S. App. LEXIS 11963, at *2 (Fed. Cir. May 21, 1993) ......................................... 15

*Telcordia Tech., Inc . v. Cisco Sys., Inc.,*
    592 F. Supp.2d 727 (D. Del. 2009) ................................................................................. 9

*Translogic Tech., Inc. v. Hitachi, Ltd.,*
    2007 U.S. App. LEXIS 23951 (Fed. Cir. Oct. 12, 2007).................................................. 15

*Voda v. Cordis Corp.,*
    536 F.3d 1311 (Fed. Cir. 2008)................................................................................... 5, 6

**Statutes**

35 U.S.C. 283 ................................................................................................................ 12

**Rules**

Fed. R. Civ. P. 65(d)(2)................................................................................................... 19

## I.   PRESIDIO'S REPUTATION IS BASED ON FALSE REPRESENTATIONS NOT DESERVING OF A PROTECTIVE INJUNCTION

Despite claiming to sell only unique, high-tech solutions rather than "high volume, standard capacitors," Presidio perfected a business model for selling high-volume, standard capacitors at premium prices by misrepresenting them as unique and patented. The Buried Broadband ("BB") capacitor is a case in point. It is nothing but a standard, unpatented capacitor not practicing any claim of the '356 patent. Presidio sells the BB in large volumes for significant profit (approximately 1.8 million BBs annually since 2006 generating total BB revenue of more than $8 million).

BB capacitors are "a combination of two separate capacitors in a one-piece design." (Br. at 5) D. Devoe admitted that the one-piece idea is "pretty simple. It's two capacitors in parallel…." (12/01/09 Tr. at 27:18-20).[1] Simply, and obviously it uses two capacitors in a predictable way according to their well-known functions to achieve predictable results (lower and higher value capacitors provide higher and lower frequency performance, respectively). Indeed, the very first capacitors Presidio made for JDSU in 2001 became the BB capacitor which Presidio has been selling for nine years. (Ex. QR)[2]

Presidio knew that the simple idea of the BB was not enough for a patent, as it acknowledged in an email to JDSU when it weaseled out of a joint patent application with them. (Ex. PM) But to obtain a patent to mark (falsely) on the BBs, Presidio conjured up a variance on this simple idea and applied for a patent anyway. Presidio obtained this patent only by concealing from the PTO material prior art, including its own patents, and making material misrepresentations in the specification.[3]

---

[1] Trial transcripts are attached as Exhibits 1-5, which contain testimony from 12/1/09, 12/2/09, 12/4/09, 12/9/09 and 12/10/09, respectively. All emphasis has been added, and citations and quotations deleted unless otherwise noted.

[2] The BBs were not difficult to design as Presidio did it on the first try. According to Presidio's submission to the PTO, it started in February 2001 with a request from JDSU. (Ex. MF at 108) It then built capacitors in March and April 2001 to fulfill that JDSU order. (Exs. 138, 139, PCI lot nos. 56/A and 57/A)

[3] Presidio's story of long felt need for the BBs is specious as it is not related to an injunction. (Br. at 4-5) It has no connection to obviousness either as it has no nexus to fringe-effect capacitance, the alleged point of novelty.

1    Armed with the inequitably procured '356 patent, Presidio went out to the marketplace

2  falsely claiming that the unpatented BB capacitors were covered by the '356 patent, and thus it was

3  supplying a unique and patented capacitor only it could provide.[4] It marked its website product

4  pages, Quick Links pages, BB capacitor catalogues in print and on the website, and the product

5  labels for BB capacitors with the '356 patent number. For example, on the "products" page of its

6  website, Presidio prominently emphasized the patent numbers in red:

7    **Buried Broadband Capacitors** (10kHz-50GHz)
   **US Patent Numbers: 6,587,327 B1, 6,816,356 B2, 6,970,341 B1 & 7,075,776 B1**
8    **Other Patents Pending**
   **Features and Applications** (Ex. RD)

9  Thus, Presidio executed a comprehensive campaign of falsehoods, deterring competition and

10  transforming this conventional and obvious, high volume capacitor into its "dominant product, the

11  BB capacitor." (Br. at 4) Its "reputation of being the problem-solver for difficult applications" is

12  built on a web of lies. (Br. at 6)[5]

13    This deception bore fruit from the outset. For example, in 2006, the first year of Presidio's

14  false marking campaign, BB sales jumped 25%. This commercial fraud was so successful that it

15  made the Devoes millionaires many times over. It is not surprising that L. Devoe personally created

16  the BB sales literature falsely claiming BB capacitors to be covered by the '356 patent. (12/2/09 Tr.

17  at 101:11-17) Collectively, since 2006, the Devoes as sole owners of Presidio have enjoyed a profit

18  of almost $13 million. (Exs. AFI at 135 and ALD at 2) Their fraudulent activity was so profitable

19  that the Devoes even kept it going for an additional six months after they admitted the fraud, selling

20  approximately another million BBs under false pretenses, and pocketing another million dollars.

21  (12/2/09 Tr. at 123:14-17; 12/10/09 Tr. at 137:19-23)

22

23  ───────────────────
   [4] Presidio misrepresents the record when it argues that "Presidio's BB capacitors employ a
24  "substantially monolithic dielectric body," as used in the claims of the '356 patent. *Id.* at 26:3-20."
   (Br. at 5) D. Devoe did not use the words Presidio misleadingly put in quotes, nor did he refer to the
25  BB capacitors in the cited transcript portion.
   [5] BB sales manager G. Vorlop testified that Presidio's marking the BB capacitors with the '356
26  patent number would lead customers to believe that these capacitors are covered by the '356 patent
   and that such marking provides a market advantage or a sales entry to customers. Customers
27  perceive uniqueness if a capacitor is marked patented, especially if its standard counterpart is well-
   known. (12/09/09 Tr. at 194:9; Ex. 6, Dep. Tr. at 213:4-5; 211:23-212:3; 210:10-211:1; 214:11-14)

28
───────────────────────────────────────────────────
ATC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS OPPOSITION TO PRESIDIO'S
MOTION FOR PERMANENT INJUNCTION                    Case No. 3:08-cv-00335-IEG-NLS

1   Now that ATC has finally succeeded in terminating Presidio's campaign of deceit, Presidio

2   shamelessly relies on its illegally acquired market share and reputation as a basis for an injunction.[6]

3   Indeed, Presidio was so successful in its customer deception that it was only "ATC's infringement

4   [which] lead[] customers to question why ATC has been able to solve the problems that, absent

5   ATC's infringement, only Presidio has demonstrated a capability to solve." (Br. at 6) Having

6   brainwashed its customers so that they do not recognize that other companies may also provide

7   solutions, Presidio wants this Court's aid in perpetuating its fraudulently obtained reputation and

8   market share. This Court should firmly reject this attempt.

9   **II.      PRESIDIO IS NOT ENTITLED TO A PERMANENT INJUNCTION**

10          **A.      Presidio Relies On The Rejected Presumption Of Irreparable Harm**

11          Unable to prove irreparable harm, Presidio simply relies on the now dead <u>presumption</u> of

12   irreparable harm to shift its burden of proof to ATC. It is very upfront about it--"Presidio enjoys the

13   rebuttable presumption of irreparable harm based upon the jury's finding that the '356 patent is

14   valid and infringed." (Br. at 14-15) The presumption has not been the law since 2006.

15          Prior to the *eBay* decision, the Federal Circuit applied a presumption of irreparable harm:

16   "In matters involving patent rights, irreparable harm has been presumed when a clear showing has

17   been made of patent validity and infringement." *Richardson v. Suzuki Motor Co., Ltd.*, 868 F.2d

18   1226, 1247 (Fed. Cir. 1989) This presumption resulted in a general rule of automatic injunctive

19   relief in patent cases. The Supreme Court in *eBay* held that "the Court of Appeals erred in its

20   categorical grant of" injunctive relief and rejected "a 'general rule,' unique to patent disputes, that a

21   permanent injunction will issue once infringement and validity have been adjudged." *eBay Inc. v.*

22   *MercExchange, LLC*, 547 U.S. 388, 393-94 (2006).[7]

23   [6] Presidio's claim that it was forced to sue for an injunction because ATC ignored its notice of
24   545L's infringement is not true. Presidio's email did not accuse 545L or any other ATC capacitor of
     infringement. (Ex. NK) It did not make any demand on ATC or request a response by a date certain.
25   When ATC received the real notice of alleged infringement--the complaint in this case--it
     responded with vigorous defenses.
26   [7] Presidio also extorts the right to exclude as the essence of the patent right mandating an injunction.
     (Br. at 8-9) The Supreme Court rejected that view since "the creation of a right is distinct from the
27   provision of remedies for violations of that right." *eBay*, 547 U.S. at 392. Presidio's cite to Chief
     Justice Roberts' concurrence emphasizing " the long tradition of entering injunctions upon the

28                                                 3

1    Presidio grasps at straws in arguing that "Ebay did not invalidate the presumption." The

2    statement on which they rely was (erroneously) made by a court in the context of preliminary

3    injunctions, not at issue here,[8] and even in that context it was incorrect as recently explained by the

4    Federal Circuit:

> [T]he district court relied  on … the old presumption that harm from patent
> infringement was irreparable, [and thus] the burden was on the defendant to
> demonstrate that the potential harm from not granting a preliminary injunction was
> finite, calculable, and compensable. This is no longer the law, as these cases all pre-
> dated the Supreme Court's decision in *eBay Inc. v. MercExchange, L.L.C., 547 U.S.*
> *388, 392-94, 126 S. Ct. 1837, 164 L. Ed. 2d 641 (2006)*, in which the presumption of
> irreparable harm, based just on proof of infringement, was discarded. The burden is
> now on the patentee to demonstrate that its potential losses cannot be compensated
> by monetary damages.

10    *Automated Merchandising Systems, Inc., v. Crane Co.*, 2009 U.S. App. LEXIS 27667, at *8-9 (Fed.

11    Cir. Dec. 16, 2009) (unpublished). Presidio did not carry its burden of proving irreparable harm.

12    Despite the unequivocal rejection of the old, rejected general rule and its accompanying

13    presumption of irreparable harm, Presidio argues that "[c]ountless courts have found irreparable

14    harm upon finding of infringement of a valid patent" and cites to pre-*Ebay* decisions applying the

15    rejected presumption.[9] (Br. at 11-12) The few post-*eBay* decisions cited by Presidio did not find

16    irreparable harm based simply on infringement. For example, in *I-Flow*, Judge Sabraw held that

17    "Plaintiff has demonstrated it lost market share, the right to control its patent license agreement, and

18    its competitive advantage [which] are sufficient to demonstrate irreparable injury." None of this is

19    present here. *I-Flow Corp. v. Apex Medical Tech., Inc.*, No. 07-cv-1200, 2010 U.S. Dist. LEXIS

20    1573, at * 4-5 (S.D. Cal. Jan. 6, 2010) (the injunction was largely uncontested since defendants

21

22

---

23    finding of patent infringement" as a natural outgrowth of the right to exclude (Br. at 8), has been
      met with a critical reply by concurring Justices Kennedy, Stevens, Souter, and Breyer pointing out

24    that "this pattern simply illustrates the result of the four-factor test in the contexts then prevalent."
      *eBay*, 547 U.S. at 396. It does not support an injunction here for a non-practicing patentee.
      [8] Br. at 12; *Christiana Indus., Inc. v. Empire Elecs., Inc.*, No. 06-12568, 2006 U.S. Dist. LEXIS

25    54210, at *5 (E.D. Mich. Aug. 4, 2006) (deciding whether *eBay* "eliminated the presumption of
      irreparable harm for <u>preliminary injunctions</u> upon a showing of validity and infringement.").

26    [9] *BIC Corp. v. Thai Merry Co.*, No. 98 Civ. 2113, 1999 U.S. Dist. LEXIS 15991, at *16 (S.D.N.Y.
      Oct. 18, 1999); *L&W, Inc. v. Shertech, Inc.*, No. 01-73892, 2005 U.S. Dist LEXIS 34635, at *9

27    (E.D. Mich. Sept. 28, 2005); *Ciena Corp. v. Corvis Corp.*, 334 F. Supp. 2d 610, 612 (D. Del. 2004).

28                                                     4

1   "have discontinued" the offending product).[10]

2   **B.      Presidio Is Not Suffering Irreparable Harm -It Does Not Practice The '356**
           **Patent And Does Not Need An Injunction**

3       "Courts awarding permanent injunctions typically do so under circumstances where plaintiff

4   practices its invention and is a direct market competitor." *Adv. Cardiovascular Sys. v. Medtronic*

5   *Vascular, Inc.*, 579 F. Supp.2d 554 (D. Del. 2008). Presidio does not meet the first prong since its

6   BB capacitors do not practice the '356 patent.  The courts frequently deny injunctive relief to

7   patentees who do not practice their own patent. *See Amado v. Microsoft Corp.*, 2007 U.S. Dist.

8   LEXIS 96487 (C.D. Cal. Mar. 13, 2007) (dissolving a pre-*eBay* injunction because of the absence

9   of irreparable harm where patentee was "not in the business of selling any software that practices

10  claim 21 of the '615 patent" in suit), *aff'd*, 517 F.3d 1353, 1361 (Fed. Cir. 2008); *Voda v. Cordis*

11  *Corp.*, 536 F.3d 1311, 1329 (Fed. Cir. 2008) (affirming denial of injunction where patentee did not

12  practice the patent in suit and thus did not suffer irreparable harm); *Am. Calcar, Inc. v. Am. Honda*

13  *Motor Co.*, 2008 U.S. Dist. LEXIS 106476 (S.D. Cal. Nov. 18, 2008) (denying injunction because

14  patentee relied on a rejected presumption that legal remedies are inadequate and did not present

15  evidence of irreparable harm).  In addition, as explained below, Presidio's non-practicing BB

16  capacitor does not compete with ATC's 545L capacitor in the same market.

17      **1.      Presidio Has Not Lost Market Share Or Sales To Existing Customers**

18      None of Presidio's existing BB customers have switched to the 545L in the four-year period

19  since ATC began providing samples to them. Clearly Presidio is not suffering irreparable harm by

20  virtue of losing market share with existing customers. Presidio does not name a single BB customer

21  who switched to the 545L and it does not quantify or approximate a loss of market share. There is

22  no evidence that ATC deprived Presidio of the benefit of a continuing relationship with existing BB

23  customers. Thus, Presidio has not and is not losing market share or sales and has not suffered

24

25  ─────────────────

26  [10] In *Kowalski*, the Magistrate Judge noted that defendants failed "to meaningfully respond to Mr.
    Kowalski's first point, that infringement represents irreparable harm to his rights as patent holder"
    and uncritically followed the rejected presumption. *Kowalski v. Mommy Gina Tuna Resources*, No.
27  05-679, 2009 U.S. Dist. LEXIS 26216, at * 3 (D. Haw. Mar. 30, 2009).

28
                                            5

1   irreparable harm with respect to existing BB customers.[11]

2       **2.    There Is No Evidence That Presidio's Fictional "Potential" Customers Would Buy BB Capacitors**

3       Since Presidio cannot show irreparable harm with existing BB customers, it limits its claims

4   of irreparable harm to potential BB customers, *i.e.*, customers who have never purchased BBs.

5   "There have been numerous instances where, as a direct result of ATC's sales of its infringing 545L

6   capacitor to Presidio's potential customers, Presidio has been effectively precluded from entering

7   into business relationships with those potential customers." (Br. at 17) Presidio essentially admits

8   that it did not lose existing market share, but complains that it did not gain market share from non-

9   customers. Presidio does not offer an iota of proof that companies which started buying 545Ls, but

10  have never bought BBs or never expressed an interest in them, would buy BBs.  Without basis

11  Presidio assumes both that every electronics company is a potential BB customer and that it is a

12  two-capacitor market: 545L and BB. Both assumptions are wrong.

13      BBs do not satisfy every technical need of every electronics manufacturer. Certain projects

14  or applications require a much lower insertion loss than the 0.9 dB offered by the BB and would not

15  be technically feasible with BBs. Such projects simply would not go forward and the companies

16  would not automatically buy BBs as Presidio assumes. Alternatively, manufacturers may build their

17  own capacitors (two-piece) to meet their requirements, again without the BBs.

18      In the past, many manufacturers, including Synthesis Research, have done this as noted in

19  ATC's market assessment. (Ex. 24, A29097) Indeed, Synthesis Research is an example of a

20  customer who was not buying BBs because they did not satisfy its project requirements. (*Id*.) The

21  only commercial capacitors Synthesis bought were the ATC 540Ls and then 545Ls. A presumption

22  that absent the 545Ls every electronics manufacturer would form a relationship with Presidio and

23  use BBs is baseless. "Simply by selling its infringing product, ATC is [not] diluting Presidio's

24  ability to develop long-term relationships with potential customers." (Br. at 11)

25

_____

26  [11] The 545L and BB have coexisted for the last four years without existing BB customers switching to the 545L. Presidio is unlikely to suffer irreparable harm going forward because no tendency to

27  switch is even alleged by Presidio. Clearly no evidence to this effect has been provided.

28                                                        6

Synthesis Research is not the only 545L customer who would not buy BBs. Richardson Electronics is a distributor which prefers ATC's capacitors, and entered into an exclusive distributorship agreement with ATC. (12/04/09 Tr. at 201:22-202:15) It never bought BBs even during the five years when BBs were on the market and the 545L capacitors were not. There is no evidence that Richardson would abandon its high regard for ATC's capacitors and start selling Presidio product.

Presidio is also incorrect to assume that it is a two-supplier market. It is a multi-supplier, multi-capacitor market. BB sales manager G. Vorlop testified that Cisco refused to buy BBs and keeps buying DLI's Opticap as it has been doing for years. (12/09/09 Tr. at 194:9; Ex. 6, Dep. Tr. at 55:20 -56:5) Yet, Presidio would consider Cisco and similar staunch abstainers to be potential BB customers.

### 3. No Two-Supplier Market Nor Direct Competition Between The 545L and BB

The BB "targets broadband frequency applications." (Br. at 4) This same generic broadband frequency market is also the target of many other manufacturers. These companies provide capacitors having a broadband frequency response in a range in which they choose to compete. The insertion loss associated with the frequency range selected and the parameters of their particular capacitor further define the competitive market.  For example, DLI offers its Opticap at 0.9 dB insertion loss where the top of the tested frequency range is 40GHz. (Ex. BY at 21-22) ATC offers its Monsorno 500S capacitor at 0.4-0.5 dB insertion loss for frequency ranges up to at least 26 GHz. (Ex. AEV) For the lesser bandwidths (16-18 GHz), ATC offers the 520L and 530L capacitors at 0.6 dB insertion loss. (Exs. JP, JQ; 12/09/09 Tr. at 80:22-82:12) Vorlop also identified Murata and AVX as broadband capacitor competitors (12/09/09 Tr. at 194:9; Ex. 6, Dep. Tr. 45:18-24) The breadth of the bandwidth and the magnitude of the insertion loss across that bandwidth defines the market segment in which competition occurs because manufacturers needing low insertion loss and extended bandwidth, up to 40GHz, expect to pay for that required performance while those who do not require such performance expect and demand to pay less.

7

The competition for the BBs in the insertion loss space of 0.9 to 1.0 dB at 40GHz is primarily with DLI's Opticap and Millicap. (Ex. BY at 21-22) ATC chose to offer its capacitors in the higher performance segment where it did not face any existing competition and could charge $2.00 per capacitor. ATC entered this segment with the 540L at 0.5dB insertion loss at a top tested frequency of 40GHz.  That insertion loss is significantly better (lower) than that present in Presidio and DLI products and is far beyond the market segment in which BBs and Opticaps compete. ATC further differentiated itself from the lower performance segment with the 545L, which exhibits an even lower insertion loss of 0.3 dB at a top tested frequency of 40GHz.

L. Devoe confirmed that BBs do not directly compete with the 545Ls in the same market segment and thus it is not a two-supplier, two-capacitor market. L. Devoe explained that "I don't think that there was a market need for high-frequency performance of the level that the '356 [patent] offers."(12/02/09 Tr. at 115:13-14) Presidio designed the BB capacitors to compete in a market where it perceived the demand --the (three-times) lower level of performance market at lower prices when compared with the allegedly higher performance level delivered by the '356 patent. Presidio never improved the BB and its performance since it was content to compete in the market segment it chose.  The infringement verdict found that the 545L capacitors are covered by the '356 patent. According to L. Devoe that places the 545L and BBs in different markets. Indeed, BB sales manager G. Vorlop confirmed that "a capacitor with worse or greater insertion loss [BB (0.9dB)] is not competitive with a capacitor with a lower insertion loss [545L (0.3 dB)]." (12/09/09 Tr. at 194:9; Ex. 6, Dep. Tr. at 52:10-13)

If Presidio is correct that the "545L capacitor changed the marketplace…" (Br. at 17), then the 545L created its own market segment for superior performance. At the very least, 545Ls expanded the existing market by offering superior performance to new customers who have not bought BBs from Presidio. That market has not been available to BBs and is not available to them now, not because of the infringement, but because BBs do not offer the desired performance.

Since this is not a two-supplier market, BBs do not directly compete with the 545L, and BB capacitors do not practice the '356 patent, Presidio is not suffering irreparable harm and the Court

8

should not issue an injunction. *See Adv. Cardiovascular*, 579 F. Supp.2d at 554 (denying injunction in a market with four suppliers, each with a multitude of products, and at least two product-type submarkets). *Broadcom*, on which Presidio principally relies, is a two-supplier-market case, which is not present here. *Broadcom Corp. v. Qualcomm Inc*., 543 F.3d 683, 686 (Fed. Cir. 2008).[12]

Even in two-supplier cases, an injunction is not automatically granted. *See Praxair, Inc. v. ATMI, Inc.,* 479 F. Supp.2d 440, 443-44 (D. Del. 2007) (denying injunction in a two-supplier market, where patentee did not identify precisely what customers, market share, or revenues it lost to defendant).[13] Even if it were a two-supplier market, and overlooking the fact that BBs do not practice the '356 patent, Presidio did not perform any market or market share analysis and did not offer proof of what specific customers or sales it lost because of the 545L capacitors. Presidio simply failed to offer evidence and actually prove its alleged irreparable harm.

### 4.    ATC's Pricing Of 545Ls Does Not Threaten Presidio's Market

Presidio speculates that the "market is way too small for Presidio to survive if … ATC is allowed to make [and sell the 545Ls because] in combination with ATC's vastly larger size, [it] would make it difficult, if not impossible, for Presidio to compete." (Br. at 13-14) Nothing is further from the truth. Presidio is the 800-pound gorilla in its market. It correctly calls the BB capacitors a "dominant product" given their annual sales exceeding $1.8 million since 2006. (Br. at 4) It is an incumbent supplier at many high-tech customers who did not switch to the 545L despite its better

---

[12] Presidio's claim regarding some similarity between the market in *Broadcom* and here is nothing more than unsubstantiated attorney speculation. (Br. at 11) "Attorneys' argument is no substitute for evidence…" *Johnston v. IVAC Corp.,* 885 F.2d 1574, 1581 (Fed. Cir. 1989). Presidio is also speculating when it argues that if ATC sold 545Ls to a customer "that customer is not likely to need a different supplier for many years…." (Br. at 17) Without any examples or evidence, it simply cites pre-*eBay* cases relying on the rejected presumption of irreparable harm.

[13] *IMX, Inc. v. LendingTree, LLC*, 469 F. Supp.2d 203, 225-26 (D. Del. 2007) (denying injunction to competitor which did not prove irreparable harm and that its product was used in the defendant's market); *Telcordia Tech., Inc . v. Cisco Sys., Inc*., 592 F. Supp.2d 727 (D. Del. 2009) (denying injunction to competitor which did not present evidence of irreparable harm); *ResQNet.com, Inc. v. Lansa, Inc*., 533 F. Supp. 2d 397, (S.D.N.Y. 2008) (denying injunction to competitor which presented no evidence of irreparable harm), *rev'd on other grounds*, __ F.3d __(Fed. Cir. 2010); *Bard Peripheral Vascular, Inc. v. W.L. Gore & Ass., Inc*., 2009 U.S. Dist LEXIS 31328 (D. Ariz. Mar. 31, 2009) (denying injunction to direct competitor in two-supplier market because defendants products were unique, money damages were adequate, and public interest would be harmed by injunction).

1  performance and affiliation with ATC. The market itself proved Presidio's fears of Armageddon to

2  be unfounded over a four year period.[14]

3       Presidio's speculation that "ATC would be able to price the 545L capacitor far lower than

4  could Presidio, forcing the entire market to ATC" is unfounded and contrary to the record.  It cannot

5  be a basis for finding irreparable harm. (Br. at 14) It costs ATC 63 cents to make a 545L capacitor.

6  (12/9/09 Tr. at 144:5-6) Thus, ATC as a rational business would not price 545L below its cost; it

7  would not go below 63 cents for 545Ls as it would make them unprofitable. Over the four years that

8  ATC has been selling 545Ls it has not priced them below cost and has no intention of doing so.

9       In contrast, Presidio enjoys a much lower cost of between 8 and 14 cents per BB capacitor.

10 (Ex. ALD) Thus, it has no legitimate concern about ATC dropping prices below cost since even in

11 this unlikely scenario it would be earning a substantial profit while ATC would be losing money.

12 Indeed, this low cost structure is a reason Presidio offered BBs at low prices such as 62 cents per

13 BB as sold to Jabil, its number two customer, while Presidio still earns over 40 cents in profit per

14 capacitor. Factually, ATC has never priced 545Ls below a dollar. (Ex. ALB)[15] The average selling

15 price of 545Ls is $1.99. Indeed, ATC's "size [and] access to overseas manufacturing," factors that

16 Presidio baselessly fears would give ATC an advantage for 545Ls, did not enable ATC to reduce its

17 direct costs of 74 cents to anywhere near Presidio's direct costs of 14 cents per BB. The pretextual

18 advantage is simply nonexistent.

19      **C.   Money Damages Will Adequately Compensate Presidio**

20      Money damages are adequate to compensate Presidio for the infringement. If money

21 damages were truly inadequate and Presidio was actually suffering irreparable harm, Presidio would

22 [14] Presidio's repeated references to "ATC employee Robert Grossbach discussing ATC's ability to
23 'crush' Presidio…." do not amount to proof of L. Devoe's speculation that ATC would under-price
   the 545Ls or otherwise make it difficult for Presidio to compete with the 545Ls. (Br. at 14) In fact,
24 Grossbach's email asks "[l]et's get this order" and its joking sales tone does not amount to anything
   evil or anticompetitive. (Ex. 189, 12/09/09 Tr. at 84:1-15, 87:10-16) Grossbach explained that he
25 was not going to "drive [Presidio] into the ground and crush them out of business." (12/09/09 Tr. at
   87:10-16) Newman, Presidio's damages expert recognized it when he testified that "this e-mail talks
26 about them [ATC] <u>replacing</u>, crushing Presidio" at a potential large customer JDSU. (12/04/09 Tr.
   at 173:8-9)
27 [15] Long before the 545Ls were introduced to the market, Presidio sold and continues to sell BBs to
   Delphi Delco for 27 cents. (Exs. AHD, PCI-9785-87; ALC, PCI-10050)

28

have moved for a preliminary injunction. It did not! It could not prove irreparable harm and the inadequacy of money damages at the beginning of the case, and it cannot do so now. Instead, it relies on pre-*Ebay* cases where irreparable harm was presumed to be present and money damages were presumed to be inadequate simply because infringement was found. This is no longer the law.

Presidio did not present any non-speculative interest which cannot be compensated by money damages, particularly when the high lost profits number erroneously awarded by the jury is considered. First, Presidio argues that money damages cannot adequately compensate it for injuries to "tangential benefits associated with patent rights." (Br. at 20) The lost profits awarded by the jury average about $1.34 per capacitor. This should be enough to compensate for every interest of Presidio, including tangential and reputational ones in light of the fact that Presidio actually sells substantial quantities of the BBs below $1.00. For example, it charged 62 cents per BB capacitor sold to Jabil on 1/27/09 and 2/19/09. (Ex. ALC, PCI-10044) Per capacitor damages which are more than double the sale price of BBs are punitive, and surely compensate for every tangential, reputational, or hard to quantify damage. No injunction is needed to protect these penumbral, already overcompensated interests.

Second, in a conclusory fashion, Presidio claims that three harms "cannot be fully remedied with an award of money damages." (Br. at 22) This is illusory because these three harms do not exist. Presidio did not suffer "loss of sales " at existing BB customers because none switched to the 545L. Further, Presidio did not demonstrate that alleged "potential" customers were real and would have bought BBs. Presidio is not suffering from "the incumbency problems"--Presidio's BBs are the incumbent. There has not been any "price cutting perpetrated by ATC." The words "price cutting" or "price erosion" were not even uttered at trial. The average selling price of the 545L has been approximately $2.00 from its introduction. (Ex. ALB, A44063-64) Unsupported attorney argument cannot create price cutting.

The fact that Presidio has not licensed the '356 patent does not support irreparable harm or the inadequacy of money damages. The '356 patent is a paper patent of questionable validity as evidenced by the Reexamination Order finding nine substantial new questions of patentability. (Ex.

11

AKI) Indeed, Presidio was only able to obtain the '356 patent by withholding prior art references from the PTO. These references expressly describe fringe-effect capacitance between edge-to-edge conductors. Presidio also misrepresented that it had created fringe effect. The '356 patent has no value to a capacitor manufacturer because it does not add anything new to the capacitor art and does not teach how to make and use its examples. Factually, Presidio has never built any of the allegedly inventive capacitors, and Dr. Ewell testified that there is not enough data in the '356 patent to understand and replicate the fringe-effect capacitance in these prophetic capacitors. (12/10/09 Tr. at 112:11-14) It is no wonder that the '356 patent has not been recognized as a pioneering patent by any professional publication or group. Given the lack of value and interest from peers in the obvious teachings of the '356 patent, Presidio is simply putting a good face on the unfavorable reality.

If an injunction is denied, Presidio would not be left without an equitable remedy. The Court may award <u>ongoing royalties</u> to Presidio as an <u>equitable remedy</u> under 35 U.S.C. 283. *Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1314 (Fed. Cir. 2007) (holding that ongoing royalties satisfy the equitable relief provisions of 35 U.S.C. § 283). Presidio's unwillingness to grant a license to ATC is not relevant to the ongoing royalty analysis. Where the patentee does not practice the patent in suit or the infringing product serves the public interest, both factors present here, "awarding an ongoing royalty for patent infringement in lieu of an injunction may be appropriate." *Id*.

Finally, Presidio is not suffering "[h]arm to reputation resulting from confusion between an inferior accused product and a patentee's superior product…." (Br. at 22 (quoting *Reebok Int'l Ltd. v. J. Baker, Inc.,* 32 F.3d 1552, 1558 (Fed. Cir. 1994)) There is no confusion in the marketplace about the BBs and 545Ls. In fact, the 545L is widely recognized as a superior capacitor in terms of its performance. (12/09/09 Tr. at 194:9; Dep. Tr. at 46:6-7) Indeed, the 540L and 545L launched a new market segment for new customers such as Synthesis Research which was making its own capacitors rather than buying BBs. (Ex. 24, A29097) Having a superior capacitor, ATC is not trading on Presidio's reputation which itself is a result of false marking and fraud on the PTO. This fraudulently procured reputation, if it exists, should not be rewarded by a Court of equity. All legitimate, non-speculative interests of Presidio can be compensated by money damages.

12

### D.   Balance Of Hardships Favors ATC, As An Innovator and An Underdog, And Its Customers

The balance of hardships favors denial of an injunction. ATC will suffer significant hardships while Presidio suffers little if any hardship.

ATC would have to strip a truly unique capacitor from its product line and abruptly stop selling it. ATC would lose its four-year research and development investment in the 545L, and into creating a new market segment with new customers. The 545L provides unique performance (0.3 dB) which no other capacitor has, making it irreplaceable for certain customers. Dozens of ATC's customers have already committed to using 545Ls in their products. An abrupt termination in sales of the 545L would severely prejudice ATC's relations with these customers, who would have to spend considerable time and funds requalifying other capacitors and redesigning circuits to accommodate them (in order to compensate for higher insertion losses from any replacement capacitors). The prejudice would not stop there. The customers of ATC's customers would also have to requalify their products which use circuits, including the 545L.

Such an abrupt termination would cause ATC to suffer severe customer alienation, loss of reputation and business for other components. It is an industry practice to phase out components over approximately one year: giving approximately nine months advance notice of future discontinuance with an additional three months for extended deliveries. (Tierney Decl. ¶ 7) This orderly phase-out gives customers a reasonable opportunity to reevaluate their projects and needs in an orderly fashion and avoid excessive redesign costs. In *Broadcom*, the court entered an injunction with "sunset" provisions to permit Qualcomm to continue to sell its products for approximately one year subject to an ongoing royalty because an immediate injunction would "adversely affect the public," *i.e.*, the handset manufacturers who used the infringing chipsets in their cellphones and the network carriers that serviced the infringing technologies. *Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 687-88, 704-5 (Fed. Cir. 2008) Thus here, if an injunction is imposed, it should comport with this established industry practice of a grace period. During the discontinuance period, the Court could award appropriate ongoing royalties to Presidio.

Presidio's dismissive attitude towards the contribution of the 545L's sales to ATC's income is misplaced. In this recession, ATC's overall sales have already contracted to approximately $90 million and $400,000 in sales is important. (12/08/09 Tr. at 22:6-8) The sales of AVX are irrelevant as AVX is not a party to this case and ATC is independently operated.

Presidio's suggestion that "ATC could always restart sales of its 540L capacitor" mixes ATC's evaluation of the hypothetical "but for" market for damages purposes under *Panduit* with the present day realities of the marketplace. Although the non-infringing 540L has the next best performance after the 545L, without a transition period of 6-12 months, it would be difficult if not impossible to remanufacture and restart sales of the 540L. (Tierney Decl. ¶ 10)

**Presidio, on the other hand, will not suffer harm if an injunction is denied**. Presidio is not practicing the '356 patent and deliberately is not competing in the higher performance market segment for the 545Ls. It designed BBs to offer lower performance at a lower price in a different market. Any hardship it may suffer is the result of that decision, not because of any infringement.

Presidio has not suffered any loss of market share as no BB customers have switched to the 545Ls and it did not prove that "potential" customers would have liked BBs enough to buy them. Annual sales of BBs have exceeded $1.8 million dollars in the last four years. (Presidio sold more than $11 million of BB capacitors since the product was introduced.) A side-by-side table shows that the 545L has had no effect on BB sales:

|  | 2005 | 2006 | 2007 | 2008 | 2009 | Total |
|---|---|---|---|---|---|---|
| BBs Sales | $1,491,901 | $1,860,352[16] | $1,900,000 | $1,800,000 | $1,800,000 | $8,852,253 |
| 545Ls Sales | $90,000(540L) | $127,008 $72,000(540L) | $344,395 | $624,524 | $462,934 | $1,558,861 |

Citing a pre-*eBay* case, Presidio argues, without any cite to the record, that "this case involves a fast changing marketplace where customers needs can change." Thus it will have "a limited window of opportunity to market [its] inventions." (Br. at 22) Nothing is further from the

---

[16]  The 2006 and 2007 BB sales are reported in Ex. AFI_133. Other BB sales are estimates based on Exhibit AFI, sales logs, and trial testimony.

14

truth. Presidio presented no evidence of any customer needs, much less of what they were and what they are now. (ATC complained about this lack of important analysis with regard to damages.) BBs have not changed during the nine years they have been on sale. Prior to seeking an injunction, Presidio did not see any rapid changes in technology or customer needs as evidenced by its decision not to change capacitors it sold for the last nine years. (Presidio did not even recognize the market need for the higher performance of the 545L.)

Presidio does not need an injunction to "market its invention" which it does not make and sell. BB capacitors do not practice the claims of the '356 patent.

### E.     Public Interest Mandates Denial Of An Injunction

"The public is best served by enforcing patents that are <u>likely valid</u> and infringed." *Abbott Labs. v. Andrx Pharms., Inc.*, 452 F.3d 1331, 1348 (Fed. Cir. 2006). Presidio's injunction request does not fit this test. The '356 patent is <u>likely invalid</u> as explained in ATC's motion for JMOL as to anticipation, obviousness, lack of written description and enablement, and its indefiniteness submission. At the very least, the PTO's Reexamination Order makes its likely invalidity clear. Enjoining a unique, independently-developed 545L capacitor over a patent which the PTO found to have nine substantial new questions of patentability is not in the public interest.[17]

A strong patent system has its primary, systemic interest in self-correction (reexamination) of mistakes especially those visited upon it by patentees who obtained patents through inequitable conduct. Until the PTO completes its reexamination of the '356 patent, and given the indication of the seriousness of the patentability questions raised, this Court should not prematurely stifle legitimate innovation and irreplaceable products with an injunction. *Softview Computer Prods. Corp. v. Haworth, Inc.*, 2000 U.S. Dist. LEXIS 11274, at *9 (S.D.N.Y. Aug. 10, 2000) (staying litigation in favor of reexamination to give PTO a chance to correct mistakes in issuing invalid

---

[17] *See Standard Havens Prods, Inc. Gencor Indus., Inc*., 1993 U.S. App. LEXIS 11963, at *2 (Fed. Cir. May 21, 1993) (unpublished) (ordering a stay of the permanent injunction and damages phase of the case "until the reexamination decision becomes final" because the "reexamination proceeding "would control" the infringement suit."); *Translogic Tech., Inc. v. Hitachi, Ltd*., 2007 U.S. App. LEXIS 23951 (Fed. Cir. Oct. 12, 2007) (unpublished) (vacating a judgment of infringement, damages and an imposition of a permanent injunction after affirming rejection of the patent in suit as obvious in reexamination).

1   claims).

2       An injunction is especially inappropriate since Presidio does not practice the '356 patent and

3   has nothing in its product line that provides the unique benefits of the 545L. ATC's own patents on

4   the 545L demonstrate that it extends far beyond the '356 patent and itself fills a public need. "If a

5   patentee's failure to practice a patented invention frustrates an important public need for the

6   invention, a court need not enjoin infringement of the patent." *Rite-Hite Corp. v. Kelley Co.*, 56

7   F.3d 1538, 1547 (Fed. Cir. 1995).

8       Enjoining the uniquely performing 545L would cause important government, military,

9   space, and infrastructure projects to suffer immense harm as the 545L capacitor is irreplaceable.

10  (Tierney Decl. ¶ 3) Many government defense and space contractors such as Raytheon Missile

11  Systems Co., Lockheed Martin, and Sandia National Labs, purchase 545Ls which are installed in

12  systems used in classified, government military and space projects. An injunction against sales of

13  545L, would cause severe harm to these government projects. Thousands of taxpayer dollars would

14  be needlessly spent redesigning current systems for use with a new capacitor and retesting them

15  under stringent standards. (*Id.* at ¶¶ 5, 6)  This also cannot be done instantaneously, costing valuable

16  time and engineering resources that could be better spent elsewhere.

17      Many critical civilian industries also recognize and rely on the irreplaceable performance of

18  the 545L in their sensitive applications. For example, test equipment manufacturers such as

19  Synthesis Research and Finisar exclusively use the 545L in their test equipment for measuring

20  electrical parameters of telecommunications infrastructure products. (*Id.* at ¶¶ 4, 6) The vital

21  importance of upgrading the country's telecommunications infrastructure is widely recognized.

22  Therefore, the availability of sensitive test equipment is an important national interest. Removal of

23  the 545L would cause test equipment makers to spend substantial time and effort modifying their

24  critical test systems to function with lower performing capacitors. (*Id.*)

25      If an injunction were to issue, it should minimize this severe harm to the public interest by

26  permitting sales of 545L capacitors to existing 545L customers who have bought at least 500 units

27  of 545Ls (which indicates that they were incorporated into customers' systems or are in the process

28
                                        16

of such incorporation). An injunction could prohibit advertising, including website advertisement, of the 545Ls and sales to <u>new customers</u>. This would be a more equitable result.

Enjoining the sale of the 545L only to see the asserted claims of the '356 patent canceled or amended in the reexamination (thus resulting in a vacatur of the infringement judgment and injunction) in about 12 months would also harm the public interest. As the sales and market share of 545L would go to zero under an injunction, even subsequent permission to restart 545Ls' sales may be insufficient to recover customers who recently were forced to redesign and retest their systems. Thus, even a short-lived injunction would effectively remove the unique, independently-designed 545L from the market and deny the public the continued benefit of its irreplaceable performance.[18]

### 1.    An Injunction For The '356 Patent and The BBs Is Inequitable

Presidio has not done equity with respect to the very patent and capacitor for which it now seeks equity. Presidio hands were dirty throughout the course of acquiring the '356 patent.  Presidio continued its illegal tactics in acquiring BB market share by false marking. "A successful unclean hands defense to an <u>injunction proceeding</u> requires a showing by defendant that plaintiff's conduct is inequitable and that it involves the <u>subject matter of the plaintiff's claim</u>." *Ciba-Geigy Corp. v. Bolar Pharm. Co., Inc.,* 747 F.2d 844, 855 (3d Cir. 1984); *accord Fuddruckers, Inc. v. Doc's B.R. Others, Inc*., 826 F.2d 837,847 (9th Cir.1987) (*citing Ciba-Geigy*).

As demonstrated by ATC, Presidio committed inequitable conduct in the procurement of the '356 patent. This included many instances of non-disclosure to the PTO of material, non-cumulative prior art. <u>The '356 patent is the subject matter of Presidio's claim here.</u> Presidio withheld from the PTO the Devoes' own patents which taught that "fringe effect capacitance is always present." There is no question that having decided that there is nothing new to patent in view of the Devoes' own patents and not disclosing those patents to the PTO is inequitable. (Ex. PM) Misrepresenting that Presidio "created" fringe effect in certain capacitor drawings, which it never built, and misleading the PTO into believing that creation of fringe-effect capacitance between edge-to-edge

---

[18] If an injunction were imposed, it should have a sunset provision with respect to the progress of the reexamination of the '356 patent. If the claims are canceled or amended, an injunction should immediately terminate by its own terms.

17

1   contacts is novel is also inequitable. Since all of these omissions and misrepresentations took place

2   in the prosecution of the '356 patent, they demonstrate that the very rights Presidio seeks to enforce

3   through an injunction were inequitably procured.[19]

4          Presidio was also inequitable in acquiring market share and unjustified reputation through

5   the criminal offense of falsely marking the BBs with the '356 patent number. This also involves the

6   '356 patent, the subject matter of Presidio's claim in this case. Presidio realized that it "would be

7   deadly for [its] microwave business" if Presidio lacked the exclusive right to sell the BB capacitors

8   since there cannot be a sole provider of an unpatented component. (12/09/09 Tr. at 194:9; Dep. Tr.

9   at 207:5-9) Thus, Presidio engineered a very successful campaign to falsely portray the BB

10  capacitor as covered by the '356 patent and itself as the sole provider of the '356 patented product

11  which no one else could provide. Its market share and sales jumped 25% the first year it did this.

12  Indeed, that false reputation and ill gotten market share are so valuable that Presidio refused to stop

13  its purposeful deception with the '356 patent even after admitting its illegal acts. It would be

14  manifestly against the public interest to perpetuate its ill gotten market share and unjustified

15  reputation by an injunction. *See In re Gabapentin Patent Lit.*, 648 F. Supp.2d 641, 651 n.20 (D.N.J.

16  2009) (noting that defendants' arguments that patentee "should not be allowed to rely on illegally

17  acquired market share as a basis for injunctive relief and that it would be inequitable and against

18  public interest to use a permanent injunction to protect [patentee's] ill-gotten gains - are both

19  relevant and compelling" as to the patentee's "ability to obtain a permanent injunction").

20         **F.      The Requested Injunction Is Overbroad**

21         Rule 65(d) expressly provides that an injunction binds only "the parties, the parties' officers,

22  agents, servant, employees, and attorneys, and other persons who are in active concert or

23  participation with" any of the above. FED. R. CIV. P. 65(d)(2). Presidio's proposed injunction goes

24  far beyond this limited list as it is seeking to enjoin "parents, subsidiaries, … successors and

25  ───────────────

26  [19] Even if the omissions and misrepresentations do not rise to the level necessary to establish an independent inequitable conduct defense (which renders the '356 patent unenforceable against any

27  party forever), they would be sufficient to defeat a permanent injunction here, a much more limited remedy, at least in combination with the adjudged offense of false marking.

28

                                        18

1  assigns, and any and all persons or entities … attempting to act in concert or participation with

2  them….” (Prop. Order ¶ 1) The “parents” of ATC would include AVX Corp., and potentially even

3  the Kyocera Group, as a parent company of AVX. None of these entities were a party to this suit.

4  None of their products are accused of infringement. ATC, as a wholly owned subsidiary of AVX, is

5  independently operated. It does not exercise control over the actions of AVX or the Kyocera Group.

6  The “attempting to act in concert” language is vague and does not give specific notice regarding

7  what specific acts are enjoined. The injunction order should not include “parents” of ATC and any

8  other non-parties to this case not authorized to be enjoined under Rule 65(d)(2).

9  　　　Presidio also seeks to enjoin the manufacture and sale of “the 545L capacitor, and other

10  devices that are no more than colorably different therefrom and that are infringements of United

11  States Letters Patent No. 6,816,356” (Prop. Order ¶ 1) An injunction should be limited to the

12  asserted claims. There has been no adjudication of whether unasserted claims 6-15, 17, 20-34 have

13  been infringed by the 545L. Indeed, the Court has not even construed them. They should not be part

14  of an injunction. Thus, if a new capacitor is held to be no more than colorably different than the

15  545L but does not infringe asserted claims 1-5, 16, and 18-19, but is rather suspected of infringing

16  an unasserted claim, such a capacitor should not be subject to the simplified enforcement

17  mechanism of a contempt proceeding avoiding a jury trial on the merits.[20] Similarly, Presidio

18  should not be able to use a simplified contempt procedure for proving infringement by other pre-

19  existing ATC capacitors which could have been included in this suit.[21] The proposed language

20  should be revised as follows: “the 545L capacitor, and other capacitors devices that are no more

21  than colorably different therefrom, which do not include capacitors commercially available prior to

22  [20] See KSM Fastening Sys., Inc. v. H.A. Jones Co., 776 F.2d 1522, 1528 (Fed. Cir. 1985) (“It may

23  not properly be assumed, as does the Interdynamics standard, that, because the ULTRA-LOK devices, in a sense, are "equivalents" to the enjoined THERMAL-LOCK device, they are also equivalents of the patent claims.”).

24  [21] Presidio has long been on notice of the other ATC capacitors which have been available prior to December 1, 2009 and therefore, if it deemed any of them to be infringing the ‘356 patent, it should

25  have brought a separate suit against them or added them to this case prior to the jury trial. Since Presidio has not done so and has not accused any other ATC capacitors of infringement, it should be

26  precluded form doing so through “creative” injunction drafting. The injunction should only be applicable to the new capacitors which ATC may try to design after December 1, 2009 in order to

27  compete in the marketplace in lieu of the 545L.

28  　　　　　　　　　　　　　　　　　　19

December 1, 2009, and that are infringements of the asserted claims 1-5, 16, and 18-19 of United States Letters Patent No. 6,816,356."

### G.    Presidio's Is Double-Dipping As It Has Already Been Awarded Lost Profit Damages For The 545Ls Presidio Wants Recalled

Presidio proposes that "[w]ithin five (5) days of entry of this Order, ATC shall remove and recall all 545L capacitors from the marketplace that ATC sold to customers…." (Prop. Order ¶ 3) Presidio is not entitled to double its recovery. For all of the 545L capacitors ATC has sold, Presidio would already be receiving lost profit damages. Thus, Presidio would be compensated for the infringement by those capacitors and they would become effectively authorized. Now, on top of getting more than its full profits for these 545L capacitors, Presidio wants them recalled to deprive ATC's customers and ATC of the benefits of the 545L capacitors which have already been paid for. This is classic double recovery. It has been firmly rejected by the courts. *See Amstar Corp. v. Envirotech Corp.*, 823 F.2d 1538, 1549 (Fed. Cir. 1988) ("Having been awarded full compensation for the making and using of [the existing infringing devices] therefore, Amstar is not entitled to enjoin their use.")[22]

Essentially, Presidio wants a permanent injunction applied retroactively. It wants a result only a preliminary injunction could have provided. Having not requested a preliminary injunction, Presidio cannot now try to mold a post-trial injunction to reach back and rip the 545Ls out of commercial products that have long left even the factories of ATC's customers. Indeed, even if the Court were to impose a recall, it should not include removing the 545L capacitors which have already been paid for and which have already been installed in customers' products.[23]

If an injunction is entered, ATC should be allowed to fulfill customer orders taken prior to

---

[22] *Innogenetics, N.V. v. Abbott Labs*, 512 F.3d 1363, 1380 (Fed. Cir. 2008) (vacating an injunction against future sales because a patentee "cannot be heard to complain that it will be irreparably harmed by future sales" when it already requested and received from the jury "an upfront entry fee that contemplates or is based upon future sales by Abbott in a long term market").

[23] Tracing 545Ls in the hands of customers and customers' customers would be disproportionately costly and an impossible administrative nightmare. Removal of the paid-for-in-damages 545Ls would also render such products inoperable or could cause damage to them. Thus, the Court should not order a recall from ATC's customers. Presidio also wants the recall done in five days but it would take much longer, probably on the order of 9-12 months to accomplish this Herculean task. It is hard for ATC to predict even the feasibility of such a recall since it has never done one.

the date of entry of the injunction for which it could compensate Presidio through the supplemental damages it requested. Given the fact that Presidio itself does not offer any capacitors covered by the '356 patent, the customers should be spared additional disruption. ATC should be given five business days to stop taking <u>new</u> orders.

**H.    ATC Should Not Be Required To Turn Over Existing 545L Capacitors to Presidio**

Presidio requested that "ATC shall also turn over, within fourteen (14) days of entry of this Order, all the 545L capacitors products in their possession, custody or control to Presidio…." There is no need for such a drastic measure. ATC has complied with all orders of this Court, and there is no reason to believe that, if an injunction is entered, it will not comply with the Court's order prohibiting making and selling of the 545L capacitors in the United States. The Court's contempt power is enough to ensure compliance.[24]

Presidio is not entitled to receive excess 545Ls for free. If an injunction is entered, it is only entitled to stop ATC from making and selling them. Indeed, a turn over of unsold 545Ls to Presidio would be an unjustified windfall for Presidio. These capacitors contain valuable precious and other metals which could be taken out and reused in other capacitors. Presidio is not entitled to free precious metals from ATC.

Moreover, ATC may change the 545L capacitors into another non-infringing capacitor. ATC buys a prefabricated multilayer capacitor from a vendor and then fully metalizes it and creates a channel to create the 545Ls. The prefabricated MLCs from the vendor may be made into other capacitors ATC is selling or 540L's. This could be accomplished by removing or modifying the contacts of the 545Ls. Thus, ATC should have an opportunity to reprocess or reclaim material from the 545Ls.

---

[24] The turn over remedy is part of the trademark law where counterfeit goods are turned over to the trademark owner for potential destruction to ensure that a fly-by-the-night counterfeiter does not resell them illegally. This is not the situation here. 545Ls are not counterfeits of any of Presidio's products. ATC is not a shadowy counterfeiter, but an established and reputable company.

Dated:  February 12, 2009

Respectfully submitted,

MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY AND POPEO, P.C.

By:  /s/ Timur Slonim
    Daniel T. Pascucci, Esq.
    dpascucci@mintz.com
    Nathan R. Hamler, Esq.
    nhamler@mintz.com
    Marvin S. Gittes, Esq. (*pro hac vice*)
    mgittes@mintz.com
    Timur E. Slonim, Esq. (*pro hac vice*)
    tslonim@mintz.com
    Peter F. Snell, Esq. (*pro hac vice*)
    psnell@mintz.com
    **MINTZ, LEVIN, COHN, FERRIS,**
     **GLOVSKY AND POPEO, P.C.**
    666 Third Avenue
    New York, NY 10017
    Telephone:  (212) 692-6800
    Facsimile:   (212) 983-3115

22

## CERTIFICATE OF SERVICE

I, the undersigned, certify and declare that I am over the age of 18 years, employed in the County of New York, State of New York, and am not a party to the above-entitled action.

On February 12, 2010, I filed and served a copy of the following document(s):

**ATC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS OPPOSITION TO PRESIDIO'S MOTION FOR PERMANENT INJUNCTION**

by electronically filing the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| Miles D. Grant, Esq. | Attorneys for Plaintiff/Counter-Defendant |
| Grant & Zeko, APC | PRESIDIO COMPONENTS, INC. |
| 1331 India Street | |
| San Diego, CA  92101 | Email: mgrant@grantandzeko.com |
| | |
| Gregory F. Ahrens, Esq. | Attorneys for Plaintiff/Counter-Defendant |
| Wood Herron and Evans | PRESIDIO COMPONENTS, INC. |
| 441 Vine Street | |
| 2700 Carew Tower | Email:  gahrens@whepatent.com |
| Cincinnati, OH  45202 | |
| | |
| Brett A. Schatz, Esq. | Attorneys for Plaintiff/Counter-Defendant |
| Wood Herron and Evans | PRESIDIO COMPONENTS, INC. |
| 441 Vine Street | |
| Carew Tower | Email: bschatz@whepatent.com |
| Cincinnati, OH  45202 | |

Executed on February 12, 2010, at New York, New York.

/s/ Timur Slonim
Timur Slonim