Miles D. Grant (SBN 89766)
**GRANT & ZEKO, APC**
1331 India Street
San Diego, California 92101
Telephone;  619-233-7078
Facsimile:  619-233-7036
E-Mail:  mgrant@grantandzeko.com

Gregory F. Ahrens (*Pro Hac Vice*)
Brett A. Schatz (*Pro Hac Vice*)
**WOOD, HERRON & EVANS, L.L.P.**
441 Vine Street
2700 Carew Tower
Cincinnati, Ohio 45202
Telephone:  513-241-2324
Facsimile:  513-421-7269
E-Mail:  gahrens@whepatent.com
          bschatz@whepatent.com

Attorneys for Plaintiff
PRESIDIO COMPONENTS, INC.

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PRESIDIO COMPONENTS, INC.   ) | Case No. 3:08-CV-00335-IEG-NLS |
|                         ) | |
|          Plaintiff,   ) | **PLAINTIFF PRESIDIO** |
|                         ) | **COMPONENTS, INC.'S** |
|    v.                  ) | **SUPPLEMENTAL BRIEF** |
|                         ) | **ON THE ISSUE OF AN** |
| AMERICAN TECHNICAL   ) | **ONGOING ROYALTY** |
| CERAMICS CORP.,        ) | |
|                         ) | |
|         Defendant.   ) | |
|                         ) | |
|                         ) | |
|                         ) | |

# TABLE OF CONTENTS

PAGE

I. INTRODUCTION ................................................................................................. 1

II. POST-VERDICT DAMAGES ........................................................................ 3

III. THE ONGOING ROYALTY ........................................................................ 4

    A. The Court Should Consider That Presidio's Bargaining Position Is Strengthened Due To The Jury's Verdict And This Court's Order On Post Trial Motions ............................................................................................... 4

    B. Presidio's Bargaining Position Is Strengthened Due To The Fact That ATC's Sales Are Not A Source Of Revenue For Presidio; Presidio Has Its Own Profits ............................................................................................... 9

    C. Presidio's Bargaining Position Is Strengthened Due To The Fact That The Value Of The '356 Patent Has Been Defined By The Jury And Upheld By The Court ................................................................................................. 10

    D. Presidio's Bargaining Position Is Strengthened Due To The Fact That ATC's Years Of Infringement Have Reduced The Period To Exploit The '356 Patent ................................................................................................. 11

    E. ATC's Bargaining Position Is Weakened Due To The Fact That It Still Sells The 545L Capacitor, And Does So For Significant Profit ............................ 11

    F. ATC's Bargaining Position Is Weakened Due To The Fact That Demand Has Increased And It Must Sell The 545L Capacitor To Capitalize On That Demand ................................................................................................... 13

    G. ATC's Bargaining Position Is Weakened Due To The Fact That It Must Use The '356 Patent Through The 545L Capacitor To Maintain Continuity With Its Customers ........................................................................................... 13

    H. ATC's Bargaining Position Is Weakened Due To The Fact That It Must Sell The 545L Capacitor To Make Other Sales ................................................. 14

    I. ATC's Bargaining Position Is Weakened Because It Is Negotiating For Presidio To Give Up Valuable Business Considerations ............................. 15

IV. CASE LAW SUGGESTS THAT ADEQUATE COMPENSATION SHOULD BE MORE THAN THE JURY'S VERDICT ...................................................... 16

V.  TERMS OF THE ONGOING ROYALTY ....................................................... 17

VI. CONCLUSION .................................................................................. 17

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Amado v. Microsoft Corp.*, 517 F.3d 1353, 1362 (Fed. Cir. 2008) ..................5, 8, 10

*Amado v. Microsoft Corp.*, Case No. SA CV 03-242, 2008 U.S. Dist.
  LEXIS 110152 (C.D. Cal. Dec. 4, 2008)................................................6, 7, 9, 12, 16

*Bard Peripheral Vascular, Inc. v. W.L. Gore & Assoc., Inc.*, Case No.
  cv-03-0597, 2009 U.S. Dist. LEXIS 31328 (D. Ariz. Mar. 31, 2009) .....................4

*Boston Scientific Corp. v. Johnson & Johnson*, Case No. C02-00790,
  2008 U.S. Dist. LEXIS 98939 (N.D. Cal. Nov. 25, 2008)
  ("*Boston Scientific I*") ...............................................................................................5

*Boston Scientific Corp. v. Johnson & Johnson*, Case No. C02-00790,
  2009 U.S. Dist. LEXIS 35372 (N.D. Cal. Apr. 19, 2009)
  ("*Boston Scientific II*")....................................................................................4, 5, 6, 9

*Cordis Corp. v. Boston Scientific Corp.*, Case No. 03-027, 2009 U.S.
  Dist. LEXIS 93403 (D. Del. Oct. 1, 2008) ...............................................................7

*Creative Internet Advertising Corp. v. Yahoo! Inc.*, Case No. 6:07-cv-354,
  2009 U.S. Dist. LEXIS 114790 (E.D. Tx. Dec. 9, 2009) ..........................7, 8, 12, 16

*Tivo, Inc. v. Echostar Comm'ns Corp.*, Case No. 2:04-cv-1-DF, 2006 U.S. Dist.
  LEXIS 64291 (E.D. Tex. Aug. 17, 2006)..................................................................3

**Statutes**

35 U.S.C. § 284....................................................................................................2, 3

The Court's April 13, 2010 Order directed Plaintiff Presidio Components, Inc. ("Presidio") to file a supplemental brief on whether the Court should allow the parties to negotiate their own license agreement, or whether the Court should impose a specific amount of an "ongoing royalty" that adequately compensates Presidio for Defendant American Technical Ceramics Corp.'s ("ATC") ongoing infringement. Presidio does not believe it is likely that the parties would be able to reach an agreement on the terms of such a license agreement and, therefore, respectfully submits that the Court should impose a specific amount of an "ongoing royalty" and other related license terms that adequately compensates Presidio, as discussed herein.

## I.    INTRODUCTION

In December 2009, the jury in this matter returned a verdict that claims 1-5, 16, and 18-19 of United States Patent No. 6,816,356 ("the '356 patent") are infringed and not invalid. The jury was therefore instructed to determine an amount that was "adequate to compensate Presidio for the infringement." (Doc. 297, at p. 51). The jury determined that lost profits was "adequate to compensate" Presidio for ATC's use of the '356 patent and its inventions. Specifically, the jury awarded $1,048,677 in lost profits as adequate compensation for ATC's use of the '356 patent through sales of its infringing 545L capacitor, and the Court agreed when it

denied ATC's post trial motion on the issue of lost profits.  This award is in compliance with 35 U.S.C. § 284, which states in pertinent part:

> [u]pon finding for the claimant, the court <u>shall</u> award the claimant damages adequate to compensate for the infringement . . .

(emphasis added).

On an average unit basis, the jury's award equates to $1.34 per infringing 545L capacitor.  In other words, every time ATC sells an infringing 545L capacitor it costs Presidio $1.34 in lost profits.  Presidio has been well aware of this debilitating cost for years, and was assured of it when the jury returned its verdict.  Therefore, the "damages adequate to compensate [Presidio] for the infringement [by ATC]" has already been determined by the jury (and confirmed by the Court) as $1.34 per 545L capacitor.

Despite the jury's verdict that the '356 patent is valid and infringed, and despite the fact that the Court has now rejected ATC's scorch-of-the-earth defense tactic of raising every imaginable issue in numerous post-trial motions in a desperate attempt to overturn that verdict, ATC continues to offer for sale and sell the infringing 545L capacitor.  ATC's decision to continue to offer for sale and sell the infringing 545L capacitor, in view of the jury's verdict and this Court's ruling on ATC's post-trial motions, is a clear admission of the value of the '356 patent.  It is even more telling that ATC has made a reasoned business decision to continue

selling the 545L capacitor despite knowing that it has been ordered to account to Presidio for sales since the first day of trial. ATC has therefore made a reasoned business decision that selling the 545L capacitor is worth more to it than the $1.34 per unit that it has been ordered to account for. Moreover, by continuing to sell the 545L for the period December 1, 2009 through May 10, 2010, ATC is accepting the fact that paying Presidio $1.34 per capacitor is adequate compensation for its ongoing infringement. Thus, in view of the jury's finding, the Court's confirmation thereof, and ATC's tacit acceptance thereof, the Court should not deviate from the $1.34 per infringing 545L capacitor as being the appropriate amount of "damages adequate to compensate for the infringement." 35 U.S.C. § 284.

## II.   POST-VERDICT DAMAGES

In its April 13, 2010 Order, the Court Ordered ATC to account for sales of 545L capacitors occurring after December 1, 2009. (Doc. 348, at pp. 54-55).[1] The Court recognized that supplemental damages are appropriate for continued sales of the infringing 545L capacitor, and that such damages are calculated consistent with the damages awarded in the jury verdict. *Tivo, Inc. v. Echostar Comm'ns Corp.*, Case No. 2:04-cv-1-DF, 2006 U.S. Dist. LEXIS 64291, at *7 (E.D. Tex. Aug. 17, 2006) ("Supplemental damages are calculated consistent with the damages awarded in the jury verdict…"); *Bard Peripheral Vascular, Inc. v. W.L. Gore & Assoc., Inc.*,

---

[1] Presidio notes that the financial documents produced by ATC on the eve of trial only reflect sales of the 545L capacitor through September 2009. (*See* ATC 44063 – ATC 44082). Thus, ATC should also account for sales occurring after October 1, 2009.

Case No. cv-03-0597, 2009 U.S. Dist. LEXIS 31328, at * 11 (D. Ariz. Mar. 31, 2009).

As noted above, the jury returned a verdict that adequate compensation for ATC's use of the '356 patent is, on average, $1.34 per unit.

## III.   THE ONGOING ROYALTY

### A.   The Court Should Consider That Presidio's Bargaining Position Is Strengthened Due To The Jury's Verdict And This Court's Order On Post Trial Motions

ATC will undoubtedly argue that the jury's verdict should be ignored or discounted with respect to determining the appropriate amount to adequately compensate Presidio for ATC's continuing infringement.  Such an argument has been flatly rejected by the Federal Circuit, the District Courts for the Central and Northern Districts of California, and other district courts, which have held that the appropriate compensation to a patent owner like Presidio must take into consideration the jury's verdict:

> BSC effectively asks the Court to assume that a jury verdict in a patent case has no meaning. The Court will not do this. Over the course of a three-week trial, the jurors had to learn about an unfamiliar technology and listen to evidence on the complicated relationships between the parties and their patents. They deliberated and came to a conclusion about infringement. We must assume that the jury's finding means something.

*Boston Scientific Corp. v. Johnson & Johnson*, Case No. C02-00790, 2009 U.S. Dist. LEXIS 35372, at *11-12 (N.D. Cal. Apr. 19, 2009) ("*Boston Scientific II*")

*citing Amado v. Microsoft Corp.*, 517 F.3d 1353, 1362 (Fed. Cir. 2008).  The District Court for the Northern District of California in *Boston Scientific II* held unequivocally that the patent owner's bargaining position is strengthened by a jury's verdict of infringement and validity:

> Accordingly, the Court concludes that it must assume that the jury finding of liability in this case would have strengthened Cordis' bargaining position had the parties negotiated a license after the jury verdict.  This strengthened position would have resulted from the parties' knowledge that Cordis could have forced BSC's infringing product off the market for a limited period of time (creating what the parties refer to as a hold up effect).

*Id.* at *16.

It is important to note that the patent owner's strengthened bargaining position existed for purposes of negotiating the adequate compensation due it despite the fact that the infringer was not going to have to take its product off the market.  *Id*. at *8.  Indeed, the patent owner did not move for a permanent injunction, and had conceded earlier that a permanent injunction was not feasible.  *Boston Scientific Corp. v. Johnson & Johnson*, Case No. C02-00790, 2008 U.S. Dist. LEXIS 98939, at *10, n.1 (N.D. Cal. Nov. 25, 2008) ("*Boston Scientific I*").  One reason for the patent owner's strengthened bargaining position, even when a permanent injunction is not ultimately available, is that the appropriate analysis is to evaluate the hypothetical negotiation on the date the jury returned a verdict.  *Boston Scientific II*, at *16.   At that time, the patent owner can potentially force the

infringing product off the market. *Id*.  It follows that "[t]he expert witnesses should have assumed that the jury finding of liability would have allowed [Presidio] to force [ATC's] infringing product off the market." *Id.* at \*11.

Applied here, on the date the jury returned a verdict in favor of Presidio, it was a very tangible threat to ATC that it would be permanently enjoined.  During any negotiations at that time, ATC would be forced to consider such a weighty and grim forecast.  Indeed, given that there are virtually no cases in which a successful plaintiff selling a competing product has been denied a request for a permanent injunction, a permanent injunction was and remains a very tangible threat.  Otherwise stated, as did the District Court for the Northern District of California, this Court appropriately assumes for purposes of determining adequate compensation to Presidio that "the jury's decision would have led the parties to conclude that [Presidio] had the option of preventing [ATC] from selling its infringing product." *Id*. at \*18.

The decisions by District Court for the Northern District of California in *Boston Scientific I-II* that the patent owner enjoys a strengthened bargaining position is consistent with *Amado v. Microsoft Corp.*, Case No. SA CV 03-242, 2008 U.S. Dist. LEXIS 110152, at \* 33 (C.D. Cal. Dec. 4, 2008).  In *Amado*, the District Court for the Central District of California found that the patent owner's bargaining position was increased due to the jury's finding of infringement. *Id*. at \*22.  That is

because "the Court should focus on the effect that the finding of liability had on the parties' bargaining stances and economic positions,..." *Id*. at *15 (emphasis in original). The patent owner's bargaining position was increased sufficiently enough for the Court to <u>triple</u> the jury's verdict to arrive at adequate compensation for ongoing infringement. *Id*. at *33 (emphasis added). The patent owner's bargaining position was increased despite the fact that the defendant had a strong position for staying, and ultimately dissolving, any injunction. *Id*. at *28.

These California district courts and others have specifically held that a patent owner's bargaining position, like Presidio's position here, is strengthened in view of a jury's verdict of liability. *See e.g., Amado*, 2008 U.S. Dist. LEXIS 110152, at * 33 ("On balance, these factors demonstrate an increase in bargaining power for Amado. Specifically, Amado's bargaining position improved due to the finding of infringement subject to an injunction. Aside from other considerations, this increase in bargaining position would have been substantial.")[2]; *Cordis Corp. v. Boston Scientific Corp.*, Case No. 03-027, 2009 U.S. Dist. LEXIS 93403, at * 9 (D. Del. Oct. 1, 2008); *Creative Internet Advertising Corp. v. Yahoo! Inc.*, Case No. 6:07-cv-354, 2009 U.S. Dist. LEXIS 114790, at * 37 (E.D. Tx. Dec. 9, 2009) ("a jury verdict in the patentee's favor would have a 'significant effect' on the royalty rate.").

---

[2] It should be noted that in *Amado*, the injunction was stayed and then dissolved by the district court, and Amado did not sell any competitive products.).

In addition to the grim reality facing ATC after the jury's verdict that it could be prevented from selling the infringing 545L capacitor, which is a reality ATC may still face, another obvious reason that the jury's verdict has strengthened Presidio's bargaining position is that "[p]rior to judgment, liability for infringement, as well as the validity of the patent, is uncertain, and damages are determined in the context of that uncertainty." *Amado*, 517 F.3d at 1362. Indeed, ATC is a "willing licensee" that has become "an adjudged infringer." *Creative Internet*, 2009 U.S. Dist. LEXIS 114790, at * 37.

Here, the jury and the Court have upheld the infringement and validity of the '356 patent, despite ATC's voluminous attacks. Thus, Presidio's bargaining position has strengthened considerably. This is especially true given the jury's finding that adequate compensation for ATC's use of the '356 patent is, on average, $1.34 per unit. It costs Presidio $1.34 every time ATC uses the '356 patent through a sale of the infringing 545L capacitor, a fact Presidio knows full well.

Infringers have attempted to dispute the considerable impact a jury's verdict has on the patent owner's bargaining position, to no avail:

> The authorities cited by BSC do not persuade the Court otherwise. On remand from the Federal Circuit, the trial court in *Amado* weighed various factors to determine "the effect that the *finding of liability* had on the parties' bargaining stances and economic positions, as well as the evidence and arguments found material to the stay…." On balance, the court concluded that the plaintiff's bargaining position was improved due to the finding of infringement…

*Boston Scientific II* at \*11-12.

Accordingly, Presidio's bargaining position since the jury's verdict has been strengthened substantially.

**B.      Presidio's Bargaining Position Is Strengthened Due To The Fact That ATC's Sales Are Not A Source Of Revenue For Presidio; Presidio Has Its Own Profits**

Presidio's bargaining position is even stronger than that outlined in *Boston Scientific* and *Amado*, for several reasons.  First, on remand from the Federal Circuit, the District Court for the Central District of California in *Amado* stressed that Amado's bargaining position, although on balance was increased by the jury's finding of infringement, was not as strong as it would have otherwise been because his source of profits was from Microsoft's infringement.  *Amado*, 2008 U.S. Dist. LEXIS 110152, at \* 23, 33.  That is, Amado did not have a product to sell, such that he needed Microsoft to infringe to serve as a profit center.  *Id*. at 23.

Unlike the plaintiff in *Amado*, Presidio's "source of profits from the patent" is not from "the defendant's use of the infringing device."  Presidio does not need ATC to infringe as a source of revenue, and in fact does not want ATC to infringe at all.  Presidio has demonstrated this fact through its consistent refusal to license the '356 patent and the success of its own product sales.  The jury's award of lost profit damages further demonstrates that Presidio does not need or want ATC to infringe. That is because every time ATC sells an infringing 545L capacitor it costs Presidio

$1.34 in lost profits, precisely the "adequate compensation" for ATC's infringement.

### C.   Presidio's Bargaining Position Is Strengthened Due To The Fact That The Value Of The '356 Patent Has Been Defined By The Jury And Upheld By The Court

In *Amado*, the Federal Circuit noted that "[p]rior to judgment, liability for infringement, as well as the validity of the patent, is uncertain, and damages are determined in the context of that uncertainty." *Amado*, 517 F.3d at 1362.  Damages are no longer uncertain in this case, and both Presidio and ATC know it. Specifically, they are bargaining for intellectual property the use of which harms Presidio at the rate of $1.34 per unit.  It is notable that ATC tried to attack the jury's verdict on damages on numerous fronts, each of which was rejected.  Thus, the jury's verdict has been wholly upheld by the Court through its April 13, 2010 Order. It follows that Presidio, when bargaining for adequate compensation for ongoing infringement, is well aware of the fact that every time ATC sells a 545L capacitor, it is damaged at a rate of $1.34 per unit.  Presidio is also well aware of the fact that an allotment of $1.34 per unit is no more than adequate to make it whole for that damage.

**D.     Presidio's Bargaining Position Is Strengthened Due To The Fact That ATC's Years Of Infringement Have Reduced The Period To Exploit The '356 Patent**

ATC's infringement began in June 2006.  At that time, there was approximately 16 years during which Presidio could exploit the '356 patent.  Now, after ATC has enjoyed several years of use of the '356 patent, there are only approximately 12-1/2 years during which Presidio could exploit the '356 patent. Presidio would therefore bargain for more value from an ongoing royalty.  (*See* Exhibit A, Declaration of Mr. Lambert Devoe, at ¶ 3).

**E.     ATC's Bargaining Position Is Weakened Due To The Fact That It Still Sells The 545L Capacitor, And Does So For Significant Profit**

Despite the jury's verdict that the '356 patent is valid and infringed, ATC has made a voluntary decision to continue to offer for sale and sell the infringing 545L capacitor.  ATC has done so despite the fact that it knows full well that it must account for post-verdict sales, consistent with the damages awarded in the jury verdict.  ATC is selling the 545L, and every time it does so it realizes approximately $1.36 in profit.   In short, every time ATC sells the 545L, it realizes $1.36 in profit and it costs Presidio $1.34.

ATC's conduct is more than a tacit admission of the value of the '356 patent. Its conduct also demonstrates that it is worthwhile and ultimately profitable for ATC to continue to sell the 545L capacitor and pay $1.34 per unit to do so; otherwise, ATC would logically stop offering the 545L capacitor.  As noted below, continued

sales of the 545L capacitor is profitable through not only the profit it realizes from selling the 545L capacitor, but also through substantial profits from sales other products.  ATC's decision to continue to infringe supports a higher ongoing royalty. *Creative Internet*, 2009 U.S. Dist. LEXIS 114790, at * 40.

ATC's bargaining position is further weakened by the fact that it has, by continuing to sell the 545L capacitor, demonstrated that it is not able to sell an effective design-around.  Indeed, ATC representative Joseph Tierney admitted in connection with ATC's post-trial briefs that "it would be difficult if not impossible to remanufacture and restart sales of the 540L."  (Doc. 323, at p. 14).  That is because the inventions claimed in the '356 patent are novel and valuable in capacitor designs, and result in better capacitor performance.  (*See* Exhibit A, Declaration of Mr. Lambert Devoe, at ¶ 4).  These facts weaken ATC's bargaining position considerably.  *Compare Amado*, 2008 U.S. Dist. LEXIS 110152, at * 22-23, 29 (Microsoft's bargaining position is improved because it demonstrated it could remove infringing functionality from the infringing product); *see also Creative Internet*, 2009 U.S. Dist. LEXIS 114790, at * 40 ("where the adjudge infringer chooses to continue to infringe, this decision supports a higher ongoing royalty rate.").

For these reasons, ATC's bargaining position is extremely weak.  On the other hand, Presidio is able to, and in fact would, take a hard line approach to negotiating the amount adequate to compensate it for continued infringement.

**F.      ATC's Bargaining Position Is Weakened Due To The Fact That Demand Has Increased And It Must Sell The 545L Capacitor To Capitalize On That Demand**

The market in which ATC's 545L capacitor and Presidio's Buried Broadband capacitor compete is expanding and increasing.  (*See* Exhibit A, Declaration of Mr. Lambert Devoe, at ¶ 5).  Undoubtedly, this is one reason why ATC has voluntarily elected to sell the 545L capacitor knowing that it must account to Presidio for such sales.  ATC has made logical business decision that it is profitable to pay $1.34 per unit to use the '356 patent and its inventions.

**G.      ATC's Bargaining Position Is Weakened Due To The Fact That It Must Use The '356 Patent Through The 545L Capacitor To Maintain Continuity With Its Customers**

In support of its opposition against Presidio's Motion for Permanent Injunction, ATC represented to the Court that termination of the 545L capacitor product would be detrimental to its business and to the business of its customers.  ATC succinctly represented that "termination in sales of the 545L would severely prejudice ATC's relations with these customers..." (Doc. 323, p. 13).  ATC must continue selling the 545L, such that it has no position to bargain from because, in ATC's own words:

> [s]uch an abrupt termination would cause ATC to suffer
> severe customer alienation, loss of reputation and business
> for other components.

*Id.* at p. 13.

### H.   ATC's Bargaining Position Is Weakened Due To The Fact That It Must Sell The 545L Capacitor To Make Other Sales

ATC has represented to the Court that its 545L capacitor drives sales of other products.  *Id*. at p. 13.  This demonstrates additional value to ATC for use of the '356 patent, beyond just the value it attributes to being able to continue to sell the 545L capacitor.  Indeed, a capacitor manufacturer's ability to provide a panoply of products creates significant value, including but not limited to value through sales of other products.  (*See* Exhibit A, Declaration of Mr. Lambert Devoe, at ¶¶ 6-10).  By way of example only, ATC's parent purchased ATC for an extremely high valuation, and has advertised that providing a broad product line of passive components allows its customers to streamline their purchasing, thereby generating business it would not otherwise obtain.  *Id*. at ¶ 10.  This also has the effect of excluding competitors from a large variety of products beyond the 545L, thereby exploiting it so that it can offer a panoply of products.  *Id.*

The value ATC has attributed to use of the '356 patent weakens its bargaining position considerably.

**I.     ATC's Bargaining Position Is Weakened Because It Is Negotiating For Presidio To Give Up Valuable Business Considerations**

In a hypothetical negotiation post-verdict, ATC would have to do more than simply negotiate for a per unit royalty; rather, there are a whole host of issues that would be considered to reduce an amount adequate to compensate Presidio to a per unit royalty.  First, an ongoing royalty that allows ATC to continue to sell the 545L capacitor implicitly requires it to negotiate for Presidio giving up the right to offer to a third party an exclusive license.  In short, ATC would be negotiating for Presidio to forego that valuable right.  *Id*. at ¶ 11.

Second, as amply demonstrated at trial, it has taken Presidio years of work with its customers in testing and developing technologies that match their customers' needs.  *Id*. at ¶ 12; Trial Tr. 1 at 14:25-15:15.  On this basis, Presidio has developed a reputation of a respected supplier of new products and new ideas that solve unique customer problems.  *Id*.  The industry knows Presidio as the primary company to contact when unique problems arise.  *Id*.  Therefore, ATC would be negotiating for Presidio to forego this valuable reputation, to the benefit of its competitor.  *Id*.

Finally, ATC would be negotiating for a per unit royalty that must account for valuable business considerations that would otherwise be available to Presidio.  For example, it is typical in connection with license agreements to include terms setting per annum minimums that ensure value to the licensor.  *Id*. at ¶ 13.  It is also typical

for the licensor to obtain a cross-license to practice the licensee's technology. *Id*. These are all considerations that Presidio would otherwise negotiate for, and would require to be reflected in any per unit royalty. *Id*.

## IV. CASE LAW SUGGESTS THAT ADEQUATE COMPENSATION SHOULD BE MORE THAN THE JURY'S VERDICT

Presidio's proposal of a per unit compensation equal to the amount determined to be adequate compensation by the jury, is in fact more than reasonable given that case law amply suggests that the jury's verdict is to be increased to account for the considerable strengthening of the patent owner's post-verdict bargaining position. By way of example only, the ongoing royalty imposed in *Creative Internet* was 3% higher than the jury's verdict. *Creative Internet*, 2009 U.S. Dist. LEXIS 114790, at * 37-39 (recognizing that courts have "adopted the Plaintiff's position that a license negotiated after the verdict would be higher than one negotiated on the eve of trial."). The ongoing royalty imposed in *Amado* was three times the jury's verdict. *Amado*, 2008 U.S. Dist. LEXIS 110152, at * 34. The significant increase of the ongoing royalty in Amado is notable given that it was imposed in view of the fact that the plaintiff did not sell a competitive product. *Id*. at *34. Unlike the circumstances presented in *Amado*, Presidio does sell a product competitive to ATC's 545L.

## V.     TERMS OF THE ONGOING ROYALTY

In order to ensure compliance with any ongoing royalty ordered by the Court, Presidio requests the following in connection with such an order:

1.     That ATC provide to counsel for Presidio a quarterly certified accounting of all offers for sale and sales of the 545L capacitor and colorable variations thereof that identifies the date of quotation, quotation price, date of sale, sales price, and customer.

2.     That Presidio be afforded the right per annum to inspect ATC's records and documents in order to ensure compliance, at ATC's cost.

3.     That Presidio be afforded the right to seek modification of any ordered ongoing royalty, to account for changes in future circumstances, by way of example due to inflation or other business considerations.

4.     That ATC be ordered to notify counsel for Presidio of any design changes that may be applied to the 545L capacitor should ATC take the position that such design changes take the modified product outside the scope of the ongoing royalty, whether the modified product is designated as a 545L capacitor or otherwise.

5.     That ATC be required to mark the 545L capacitor with the '356 patent.

6.     That any ongoing royalty is applicable to any product that meets the limitations of claims 1-5, 16, and 18-19 of the '356 patent.  Any ongoing royalty affords ATC no rights associated with any other claims of the '356 patent.

## VI.    CONCLUSION

For all the foregoing reasons, Presidio respectfully requests that it be adequately compensated for ATC's continued infringement of the '356 patent as set forth above, and at $1.34 per unit.

Dated:  April 26, 2010          Respectfully submitted,

WOOD, HERRON & EVANS L.L.P.


By:  s/ Brett A. Schatz
     Gregory F. Ahrens
     Brett A. Schatz
     Attorneys for Plaintiff
     PRESIDIO COMPONENTS, INC.

**PROOF OF SERVICE**

**STATE OF OHIO** )
) **ss.**
**COUNTY OF HAMILTON** )

    I am employed in the County of Hamilton, State of Ohio.  I am over the age of 18 and not a party to the within action.  My business address is:  2700 Carew Tower, 441 Vine Street, Cincinnati, Ohio 45202.

    On April 26, 2010, I served **PLAINTIFF PRESIDIO COMPONENTS, INC.'S SUPPLEMENTAL BRIEF ON THE ISSUE OF AN ONGOING ROYALTY** on the interested parties in this action by placing a true copy thereof enclosed in a sealed envelope at Cincinnati, Ohio addressed as follows:

Daniel T. Pascucci                                 Marvin S. Gittes
Nathan R. Hamler                                  Timur E. Slonim
MINTZ, LEVIN, COHN, FERRIS,       Peter F. Snell
GLOVSKY AND POPEO, P.C.            MINTZ, LEVIN, COHN, FERRIS,
3580 Carmel Mountain Road, Suite 300   GLOVSKY AND POPEO, P.C.
San Diego, California 92130                 666 Third Avenue
                                                            New York, NY  10017

Attorneys for Defendant AMERICAN TECHNICAL CERAMICS CORP.

    [X]    (**BY MAIL AND EMAIL**) The envelope was mailed with postage thereon fully prepaid.  As follows:  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Cincinnati, Ohio in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

    [ ]    (**BY HAND DELIVERY**)    I caused the attached document to be personally delivered to the above named individual.

    [ ]    (**BY FACSIMILE**)    I delivered such document by facsimile to the ABOVE persons at the facsimile telephone numbers listed ABOVE as a courtesy.

    [ ]    (**FEDERAL**)  I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

    Executed on April 26, 2010 at Cincinnati, Ohio.


                            s/ Brett A. Schatz
                            Brett A. Schatz