UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PRESIDIO COMPONENTS INC., | CASE NO. 08-CV-335 - IEG (NLS) |
| Plaintiff, | ORDER: |
| vs. | (1) SETTING SUPPLEMENTAL DAMAGES FOR PERIOD BETWEEN DECEMBER 1, 2009 AND APRIL 13, 2010; and |
| AMERICAN TECHNICAL CERAMICS CORP., | (2) SETTING ONGOING ROYALTY RATE FOR PERIOD AFTER APRIL 13, 2010. |
| Defendant. | |

Currently before the Court in this patent infringement case are the parties' supplemental briefings on the issues of supplemental damages and the ongoing royalty rate, filed pursuant to the Court's previous Order on the post-trial motions. Having considered the parties' arguments, and for the reasons set forth below, the Court **SETS** the supplemental damages at **$235,172.68** for the period between December 1, 2009 and April 13, 2010, and **SETS** the ongoing royalty at the rate of **12 % of the wholesale price** for each infringing 545L capacitor for the period after April 13, 2010.

### BACKGROUND

The factual and procedural history of this case is set forth in great detail in this Court's prior order and need not be repeated herein. See Presidio Components, Inc. v. Am. Technical Ceramics Corp., — F. Supp. 2d —, 2010 WL 1462757, at **2-4 (S.D. Cal. 2010). As relevant to this Order,

1  Presidio Components, Inc. ("Presidio") sued American Technical Ceramics Corporation ("ATC") for
2  patent infringement, and ATC counterclaimed. The patent at issue is U.S. patent number 6,816,356
3  ("the '356 patent"), which discloses and claims a substantially monolithic, multilayer capacitor with
4  fringe-effect capacitance between its external contacts. Presidio alleged ATC's manufacture of its
5  545L series of monolithic, multilayer capacitors infringed the '356 patent.

6        The case was tried to a jury in December 2009. The jury returned a verdict finding all of the
7  asserted claims to be valid and infringed. The jury awarded Presidio $1,048,677 in lost profits. After
8  hearing argument on the parties' post-trial motions, the Court upheld the jury's verdict in most
9  respects and its award of damages in full. The Court also agreed with Presidio that it was entitled to
10  supplemental damages for the period after December 1, 2009, when the jury trial started, and through
11  the consideration of the post-trial motions. Accordingly, the Court ordered ATC to provide an
12  accounting for any sales of 545L capacitors occurring during that time. On the other hand, the Court
13  denied Presidio's motion for a permanent injunction, finding that Presidio has failed to demonstrate
14  an irreparable injury in the absence of an injunction or that money damages are inadequate to
15  compensate it, and because the public interest tipped in ATC's favor. The Court then ordered the
16  parties to submit supplemental briefing on whether the Court should allow them to negotiate their own
17  license agreement, or whether the Court should impose a specific amount of "ongoing royalty."

18        **DISCUSSION**

19  **I.    Supplemental damages**

20        At the post-trial motions stage, Presidio moved for supplemental damages in light of ATC's
21  continued infringement. ATC did not oppose the motion at that time. (See Def. Opp. to Pl. Motion for
22  Post Trial Remedies, at 15 [Doc. No. 321].) The Court accordingly granted Presidio's motion, finding
23  that supplemental damages ought to be calculated consistent with the damages awarded in the jury
24  verdict. ATC now objects to this determination, arguing instead that supplemental damages for the
25  time period not considered by the jury be calculated on an ongoing royalty basis.

26        Under Section 284, a finding of infringement requires the Court to award damages that are
27  "adequate to compensate" the plaintiff. See 35 U.S.C. § 284. As the Court previously noted,
28  "'supplemental damages are calculated consistent with the damages awarded in the jury verdict.'" See

Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc., No. CV-03-0597-PHX-MHM, 2009 WL 920300, at *3 (D. Ariz. Mar. 31, 2009); accord Aero Prods. Int', Inc. v. Intex Recreation Corp., No. 02 C 2590, 2005 WL 1498667, at *2 (N.D. Ill. June 9, 2005) (setting supplemental damages for the period between the jury verdict and the imposition of permanent injunction at 13.5% based upon extrapolation from the jury's general verdict); Stryker Corp. v. Davol, Inc., 75 F. Supp. 2d 746, 746-47 (W.D. Mich. 1999) (setting supplemental damages for the period between the jury verdict and the imposition of a permanent injunction at 20%, which was the reasonable royalty found by the jury for the period of infringement); Oscar Mayer Foods Corp. v. Conagra, Inc., 869 F. Supp. 656, 668 (W.D. Wis. 1994) (setting additional damages for post-judgment infringing sales at the ratio of damages to sales determined from the jury's verdict). In the present case, the jury awarded Presidio $1,048,677 in lost profits based on the 782,000 545L capacitors sold by ATC between mid-2006 and September 30, 2009. (Trial Tr. Day 4, at 177:6-178:24.) Accordingly, based on the ratio of damages to sales, the Court can extrapolate that the jury awarded Presidio approximately $1.34 per 545L capacitor sold.

Finally, to determine the full amount of Presidio's supplemental damages, the Court will multiply the average lost profit per 545L capacitor by the total number of 545L capacitors sold by ATC between the commencement of the trial (December 1, 2009) and the Court's ruling on Presidio's motion for a permanent injunction (April 13, 2010).[1] Based on the additional sales information submitted by ATC, that number comes out to approximately **175,502** 545L capacitors.[2] Thus, Presidio is entitled to **$235,172.68** in supplemental damages for ATC's continued infringement.

---

[1] In this context, the Court declines to award Presidio supplemental damages for the period between September 30, 2009 and December 1, 2009, which arguably was not included in the sales data produced on the eve of trial. The jury is presumed to have compensated Presidio for all of its lost profits leading up to the trial. During trial, Presidio could have–but did not–argue to the jury that its suggested amount of $1,048,000 should be proportionally increased for the two months not accounted in the sales data. See Oscar Mayer Foods, 869 F. Supp. at 668 (noting there was no justification for awarding additional damages to plaintiff for that period of time prior to trial for which plaintiff could have offered–but did not–evidence of lost profits). Under these circumstances, awarding additional amounts of damages incurred before trial would be "an improper invasion of the jury's province to determine actual damages and an inappropriate use of 35 U.S.C. § 284 to enhance inadequate compensatory damages." See id. (citing Beatrice Foods v. New England Printing, 923 F.2d 1576, 1579 (Fed. Cir. 1991), and Dimick v. Scheidt, 293 U.S. 474, 486-87 (1953)).

[2] The additional sales data submitted by ATC covers the period between December 1, 2009 and May 6, 2010, and indicates that ATC sold 206,502 545L capacitors. (See Notice of Filing of ATC's Add. Sales Info., Ex. A [Doc. No. 359].) To determine the total sales for the period between December 1, 2009 and April 13, 2010, the Court subtracted from that amount all of the sales for May 2010 (2,000 capacitors) and half of the sales for April 2010 (29,000 capacitors).

**II.     Ongoing royalty**

In eBay v. MercExchange, LLC, the Supreme Court reiterated that "in patent disputes no less than in other cases" to be entitled to a permanent injunction, the plaintiff must satisfy the traditional four-factor test. 547 U.S. 388, 391 (2006). Where an injunction is not proper, however, the district court must next consider imposing a reasonable ongoing royalty in lieu of an injunction. Paice LLC v. Toyota Motor Corp. (Paice II), 504 F.3d 1293, 1314 (Fed. Cir. 2007). Such a remedy, however, is not always warranted. Id. ("But, awarding an ongoing royalty where 'necessary' to effectuate a remedy . . . does not justify the provision of such relief as a matter of course whenever a permanent injunction is not imposed."). Moreover, "the district court may wish to allow the parties to negotiate a license amongst themselves regarding future use of a patented invention before imposing an ongoing royalty. Should the parties fail to come to an agreement, the district court could step in to assess a reasonable royalty in light of the ongoing infringement." Id.

In this case, the Court's prior Order asked the parties to discuss whether the Court should allow them to negotiate their own license agreement, or whether the Court should impose a specific amount of "ongoing royalty." Not surprisingly, however, the parties could not agree on the course of action. On the one hand, ATC submits the Court should order the parties to have "reasonable" negotiations as between a reasonable licensor and licensee. On the other hand, Presidio indicates it is not likely that the parties would be able to reach an agreement on the terms of such a license agreement and accordingly urges the Court to impose a specific amount of ongoing royalty. In light of the parties' strongly held positions in this case, and in light of their extremely divergent views as to the appropriate royalty rate,[3] the Court is convinced that requiring them to negotiate is not likely to be fruitful. Accordingly, with the benefit of the parties' supplemental briefing, the Court will proceed to determine a specific amount of ongoing royalty that should be imposed in this case.

The Federal Circuit has approved the use of the Georgia-Pacific Corp. v. U.S. Plywood Corp., 318 F. Supp. 1116, 1120 (S.D. N.Y. 1970), analysis for determining reasonable royalty damages. See Micro Chem., Inc. v. Lextron, Inc., 317 F.3d 1387, 1393 (Fed. Cir. 2003). The Georgia-Pacific court set forth fifteen factors to be considered in a reasonable royalty analysis. 318 F. Supp. at 1120. The

---

[3] While ATC proposes a royalty rate of 2 to 4 %, which would amount to $0.04 to $0.08 per 545L capacitor sold, Presidio proposes an ongoing royalty of $1.34 per capacitor.

central premise is the hypothetical negotiation between a willing patentee and a willing infringer at the time the infringement began. <u>Interactive Pictures Corp. v. Infinite Pictures, Inc.</u>, 274 F.3d 1371, 1384-85 (Fed. Cir. 2001). This framework changes, however, when the court has to determine the appropriate ongoing royalty *once liability has been established*. In such a case, "the hypothetical negotiation occurs post-judgment; therefore, the 'willing licensee' in this negotiation is an adjudged infringer, unlike the situation described in <u>Georgia-Pacific</u>." <u>Paice LLC v. Toyota Motor Corp.</u> (<u>Paice III</u>), 609 F. Supp. 2d 620, 624 (E.D. Tex. 2009). Thus, the main question post-judgment is what amount of money would reasonably compensate a patentee for giving up his right to exclude and at the same time allow an ongoing willful infringer to make a reasonable profit? See <u>id.</u>; <u>Georgia-Pacific</u>, 318 F. Supp. at 1120 (factor 15). It is to this question that the Court now turns.

A. <u>Presidio's proposed $1.34 is not a "royalty" and it is not "reasonable"</u>

As an initial matter, the Court rejects Presidio's suggestion of $1.34 per 545L capacitor sold as an appropriate ongoing royalty. "A reasonable royalty is the amount that a person, desiring to manufacture, use, or sell a patented article, as a business proposition, would be willing to pay as a royalty and yet be able to make, use, or sell the patented article, in the market, at a reasonable profit." <u>Applied Med. Res. Corp. v. U.S. Surgical Corp.</u>, 435 F.3d 1356, 1361 (Fed. Cir. 2006) (citation and internal quotation marks omitted). It is particularly useful where damages are prospective and cannot be proven with certainty. See <u>Hanson v. Alpine Valley Ski Area, Inc.</u>, 718 F.2d 1075, 1078 (Fed. Cir. 1983). What Presidio proposes in its supplemental briefing, however, is an average *lost profit* per unit based on past damages from ATC's infringement, and not a royalty rate. Moreover, as ATC correctly argues, this rate is not "reasonable" because it would amount to 140% of ATC's operating profit and would in effect enjoin ATC from selling the 545L capacitors.[4] See <u>Applied Med. Res. Corp.</u>, 435 F.3d at 1361 (a reasonable royalty must allow the infringer to sell the article at a reasonable profit); <u>Paice III</u>, 609 F. Supp. 2d at 624 (an ongoing royalty must reasonably compensate the patentee and at the same time allow the willful infringer to make a reasonable profit). Accordingly, the Court rejects

---

[4] Mr. Newman, Presidio's own damages expert, admitted at trial that a royalty rate amounting to 50 to 75 % of the profits would be "just unreasonable." (Trial Tr. Day 4, at 192:15-192:18.) According to Mr. Newman, "[t]here's a lot of risk that is undertaken by the licensee in maybe expanding, buying more tooling. So it wouldn't be appropriate . . . to take a lion's share of profits away from ATC in the form of a license." (<u>Id.</u> at 192:18-192:22.) Mr. Newman then suggested that a royalty rate of $0.25 per unit would be reasonable under the circumstances. (<u>Id.</u> at 192:22-193:3.)

Presidio's proposed "royalty" rate of $1.34 per capacitor.

### B. Change in the parties' bargaining positions

The parties argue at length as to whether their respective bargaining positions were strengthened or weakened by the jury's verdict as well as the Court's denial of Presidio's motion for a permanent injunction. It cannot be denied that "[t]here is a fundamental difference . . . between a reasonable royalty for pre-verdict infringement and damages for post-verdict infringement." Amado v. Microsoft Corp. (Amado II), 517 F.3d 1353, 1361-62 (Fed. Cir. 2008); see also Paice II, 504 F.3d at 1317 (Rader, J., concurring) ("But pre-suit and post-judgment acts of infringement are distinct, and may warrant different royalty rates given the change in the parties' legal relationship and other factors."). This "difference," however, is largely due to the threat of an injunction, which "serves as a big stick, essentially framing negotiation in terms of how much an adjudged infringer would pay for a license to continue its infringing conduct." See Paice III, 609 F. Supp. 2d at 624. Where, as here, an injunction is no longer proper, the Court is hard pressed to find in what material respect the situation is different now than it was during trial.[5] In determining the reasonable royalty rate during trial, both parties assumed the '356 patent *was valid and infringed*. The jury's verdict has now confirmed this assumption. See Cummins-Allison Corp. v. SBM Co., 584 F. Supp. 2d 916, 918 (E.D. Tex. 2008) ("[A] jury finding of infringement and no invalidity does not change any logically consistent analysis; rather, it merely confirms the original assumption of those facts. It is inconsistent and unnecessarily confusing to adopt the position that once the assumed facts upon which the expert's analysis of the hypothetical negotiation are confirmed by a verdict, the expert can change his opinion of a reasonable royalty rate."); Ariba, Inc. v. Emptoris, Inc., 567 F. Supp. 2d 914, 918 (E.D. Tex. 2008) ("[I]t is logically inconsistent to argue that a calculation based upon assumptions of infringement and validity would change when those assumptions are replaced by jury findings of the same facts."). Accordingly, with permanent injunction off the table, the bargaining positions of a willing patentee and infringer are substantially the same as they would have been at the time the infringement began.

---

[5] The Federal Circuit itself acknowledged the difference a grant or denial of a permanent injunction makes in determining an ongoing royalty. See, e.g., Amado, 517 F.3d at 1362 ("This is not a case like Paice, however, where the court's task was to assess an appropriate level of damages for ongoing infringement under circumstances in which an injunction was not warranted. Here, Microsoft was enjoined from further infringing activity yet was permitted to continue only by virtue, and with the imprimatur, of the court-ordered stay.").

The cases relied upon by Presidio do not warrant a different conclusion. For example, in Boston Scientific Corp. v. Johnson & Johnson, the district court concluded that the jury's finding of liability in that case would have strengthened the patentee's bargaining position *because of* "the parties' knowledge that [the patentee] could have forced [the infringer's] infringing product off the market for a limited period of time." No. C 02-00790 SI, 2009 WL 975424, at *5 (N.D. Cal. Apr. 9, 2009).[6] Similarly, in Amado v. Microsoft Corp. (Amado III), the district court's analysis was in the context of an injunction that was first *granted* and then *stayed* pending appeal. No. SA CV 03-242 DOC (ANx), 2008 U.S. Dist. LEXIS 110152, at **15-16 (C.D. Cal. Dec. 4, 2008). Indeed, the district court there explained that "[the] factors in support of a stay greatly lessened any bargaining advantage that [the patentee] derived from a finding of infringement and injunction." Id. at *28. In the present case, as already noted, the Court has previously determined that an injunction was not proper. Accordingly, it does not appear to the Court that there is anything, except for the jury's finding of validity and infringement–which both parties' experts have *assumed as given* when proposing their reasonable royalty rates during trial–that would substantially alter the parties' respective bargaining positions in the post-judgment context.

C.   Application of the relevant *Georgia-Pacific* factors

At the outset, the Court agrees with ATC that the appropriate date for the hypothetical negotiation is April 13, 2010, when the Court upheld the jury's finding of validity and infringement, and when the Court denied Presidio's motion for a permanent injunction. The Court next turns to the examination of the relevant Georgia-Pacific factors as a guide in determining whether it should accept the 2 to 4 % royalty rate suggested by ATC, or the 12 % royalty suggested by Presidio.[7]

---

[6] Presidio's argument that the patentee's strengthened bargaining position in Boston Scientific existed "despite the fact that the infringer was not going to have to take its product off the market," (Pl. Supp. Brief on Ongoing Royalty, at 5 [Doc. No. 349]), is groundless. Rather, the district court there expressly noted that the patentee's expert "assumed that [the infringer] would have taken its infringing product off the market after the jury verdict." Boston Scientific, 2009 WL 975424, at *2. The district court embraced this position, and specifically rejected the contrary argument made by the infringer's expert in that case, which assumed the infringer "would have continued to sell its infringing product." See id. at **2-3.

[7] It is unclear whether the Georgia-Pacific factors should control in a post-judgment context. Compare Amado III, 2008 U.S. Dist. LEXIS 110152, at *32 (concluding that the Georgia-Pacific factors were inapplicable in a post-judgment context), with Cummins-Allison, 584 F. Supp. 2d at 918-19 (reasoning that the Georgia-Pacific factors are still relevant in a post-judgment context), Ariba, 567

      *i.*  *Factor 1 (royalties received by Presidio for the licensing of the '356 patent) and Factor 2 (rates paid by ATC for the use of comparable patents)*

The first two <u>Georgia-Pacific</u> factors focus on the comparable royalty rates received by Presidio and paid by ATC. As to Factor 1, this factor is not applicable in this case because Presidio does not license the '356 patent to anyone else. As to Factor 2, there is no information before the Court that would indicate ATC currently pays for the use of any other patents comparable to the '356 patent. Accordingly, these factors do not favor either party.

      *ii.*  *Factor 3 (the nature and scope of the license) and Factor 4 (the licensor's established policy as to licensing)*

The next two factors look at the scope of the license to be granted and the licensor's established policy on licensing. In the present case, Presidio has an established policy of not granting licenses for the '356 patent. This by itself strengthens Presidio's bargaining position because granting a license would require Presidio to abandon its arguably valuable business consideration. Moreover, by granting a license to ATC now, Presidio will also be giving up the right to offer an exclusive license to a third party in the future.[8] Accordingly, both of these factors weigh in Presidio's favor.

      *iii.*  *Factor 5 (the commercial relationship between the licensor and licensee)*

The Court has previously determined that Presidio has failed to show that it and ATC are direct competitors. (<u>See</u> Order on Post-Trial Motions, at 64 [Doc. No. 348].) Accordingly, the Court is not persuaded that this factor weighs in either party's favor.

      *iv.*  *Factor 6 (effect in promoting sales of other products of the licensee)*

Presidio argues ATC has admitted that the sale of the 545L capacitors drives the sale of its other products and is necessary for ATC to maintain continuity with its customers. Presidio, however,

---

F. Supp. 2d at 918 (same), <u>and Orion IP, LLC v. Mercedes-Benz USA, LLC</u>, No. 6:05 CV322, 2008 U.S. Dist. LEXIS 108683, at *14 (E.D. Tex. Mar. 28, 2008) (same). Neither of the parties in this case expressly relies on these factors, although the arguments raised by Presidio (and opposed by ATC) appear to closely track some of them. Accordingly, while not controlling, the Court believes an examination of the relevant <u>Georgia-Pacific</u> factors could be helpful in determining the appropriate royalty rate post-judgment. <u>See Creative Internet Adver. Corp. v. Yahoo! Inc.</u>, 674 F. Supp. 2d 847, 860 (E.D. Tex. 2009) (applying a modified <u>Goergia-Pacific</u> analysis "in light of the changed relationship between the parties"); <u>Boston Scientific</u>, 2009 WL 975424, at *5 (agreeing with the district court in <u>Amado III</u> that the royalty analysis should be different in a post-judgment context, but still proceeding to examine several of the <u>Georgia-Pacific</u> factors).

[8] The parties appear to agree that the license granted in this case will not be exclusive. This by itself, however, does not appear to weigh in either party's favor.

misapprehends ATC's arguments. In opposing Presidio's motion for a permanent injunction, ATC only indicated that in light of the 545L's "irreplaceable" qualities, an abrupt termination in its sales would severely prejudice ATC. (See Def. Opp. to Pl. Motion for Perm. Inj., at 13 [Doc. No. 323].) Accordingly, ATC requested that if the Court was inclined to impose an injunction, that it provide a grace period of approximately one year to gradually phase out the 545L capacitors. (Id.) The Court finds no indication here that the sale of ATC's other products is dependent on the sale of the 545L capacitors. This factor, therefore, does not weigh in either party's favor.

                v.        *Factor 7 (duration of the patent and the term of the license)*

Presidio argues that ATC's three-and-a-half years of infringement reduced the period during which Presidio can exploit the '356 patent. There is, however, no merit to this argument. Presidio has produced no evidence demonstrating that ATC's infringement had any effect on Presidio's decision not to practice the '356 patent. Accordingly, this factor also does not weigh in either party's favor.

                vi.        *Factor 8 (the established profitability of the product) and Factor 11 (the extent to which the infringer has made use of the invention)*

Presidio argues ATC's bargaining position is weakened by the fact that it continues to sell the infringing product at an approximate profit of $1.36 per 545L capacitor. This argument, however, is undercut by Mr. Newman, Presidio's own damages expert, who testified at trial that ATC's operating profit was instead $0.95 per capacitor. Mr. Newman also testified that, in his view, a $0.25 royalty rate per capacitor would be very reasonable for both parties. (Trial Tr. Day 4, at 192:22-193:3.) Similarly, although Presidio is correct in that the demand for the 545L capacitors has been increasing, testimony at trial also showed that the average selling price for those capacitors has been declining during the relevant time. (See, e.g., Def. Opp. to Pl. Supp. Brief on Ongoing Royalty, Ex. 5 [Doc. No. 354-5].) Finally, the Court also rejects Presidio's argument that its bargaining position is strengthened because ATC's sales are not a source of revenue for Presidio. In Amado III, the district court concluded that the patentee's bargaining position was weakened because it did not have a product to sell, such that it needed the infringing product to serve as a profit center. 2008 U.S. Dist. LEXIS 110152, at *23 ("Finally, it was to Amado's advantage to prolong Microsoft's use of the infringing functionality. As noted, Amado had not commercialized the patent, nor were there any other licensees of the patent. Thus, Amado's sole source of profits from the patent was from Microsoft's of the infringing

1  functionality. This further weakened Amado's advantage derived from the finding of liability."). In
2  this case, because Presidio does not practice the '356 patent and does not have any other licensees,
3  it is similarly depended on the infringing 545L capacitors as the sole source of profit.[9] Balancing all
4  of these factors together, they do not weigh in favor of either party.

### D. Conclusion

Accordingly, based on the above considerations, the Court believes an ongoing royalty of 12% proposed by Presidio at trial is adequate to both compensate Presidio for the continuing infringement and at the same time allow ATC to sell the 545L capacitors at a reasonable profit. See Applied Med. Res. Corp., 435 F.3d at 1361; Paice III, 609 F. Supp. 2d at 624. This rate takes into account the changed factual and legal circumstances after trial, and is "adequate to compensate for the infringement" as required by 35 U.S.C. § 284. The Court also notes that had it been faced with this issue at the start of the trial, it very well might have been inclined to adopt a figure somewhere in-between the 2 to 4 % rate suggested by ATC and the 12 % rate suggested by Presidio. However, in light of the jury's verdict of validity and infringement, and because granting a license would require Presidio to give up its valuable business consideration of refusing to license the '356 patent as well as the right to offer an exclusive license to a third party in the future, the Court believes the rate proposed by Presidio is more reasonable. Any rate below 12 % will give ATC, who is now a willful infringer, a windfall at Presidio's expense. On the other hand, the Court is not convinced that the parties' positions have changed to such an extent as to warrant a departure from what Presidio's own damages expert considered to be a reasonable rate pre-trial. For all of the foregoing reasons, the Court sets the ongoing royalty rate at **12 % of the wholesale price** for each infringing 545L capacitor.

## CONCLUSION

For the foregoing reasons, the Court finds that **$235,172.68** in supplemental damages is adequate to compensate Presidio for ATC's continued infringement between December 1, 2009 (when the trial began) and April 13, 2010 (when the Court denied Presidio's motion for a permanent injunction). The Court also finds that an ongoing royalty at the rate of **12 % of the wholesale price** for each infringing 545L capacitor is reasonable and adequate to compensate Presidio for ATC's

---

[9] Indeed, this is confirmed by the fact that Presidio at trial approximated its lost profits due to infringement using the sale of ATC's 545L capacitors.

continued infringement after April 13, 2010. Finally, having considered Presidio's proposed terms to ensure compliance with the ongoing royalty, and ATC's response thereto, the Court **ORDERS** the parties to comply with the following terms:

(1)　ATC shall provide to Presidio a quarterly certified accounting of all sales of the 545L capacitors that identifies the quantity sold, the date of each sale and the sale price, and the total sales;

(2)　ATC shall allow Presidio to conduct a single annual inspection of ATC's records and documents to ensure compliance with this Order. Such inspection shall be conducted by a neutral CPA and shall be subject to the Protective Order. The inspection will be at Presidio's cost unless the results of the audit show a 5% underpayment, in which case the cost would be paid by ATC; and

(3)　ATC shall notify Presidio of any design changes that may be applied to the 545L capacitors should ATC take the position that such design changes take the modified product outside the scope of the ongoing royalty. This notification provision shall apply whether the modified product is designated as a 545L capacitor or otherwise.

**IT IS SO ORDERED.**

DATED: August 5, 2010

*Irma E. Gonzalez*
**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**