# United States Court of Appeals for the Federal Circuit

2010-1355, 2011-1089

PRESIDIO COMPONENTS, INC.,

Plaintiff-Cross Appellant,

v.

AMERICAN TECHNICAL CERAMICS CORP.,

Defendant-Appellant.

# Judgment

ON APPEAL from the     United States District Court for the Southern District of
California

in CASE NO(S).       08-CV-0335

This CAUSE having been heard and considered, it is

ORDERED and ADJUDGED:

## <u>AFFIRMED-IN-PART, VACATED-IN-PART, AND REMANDED</u>

ENTERED BY ORDER OF THE COURT

DATED **DEC 1 9 2012**

~~Jan Horbaly~~ /JB

Jan Horbaly, Clerk

Issued as Mandate: JAN 3 0 2013
COSTS:
Printing .............................. $ *n/a*
Total.................................. $ *n/a*

CERTIFIED COPY
I HEREBY CERTIFY THIS DOCUMENT
IS A TRUE AND CORRECT COPY
OF THE ORIGINAL ON FILE.

UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

By: _Jane Benjamin_ Date: 1/30/2013

# United States Court of Appeals
# for the Federal Circuit

————————————

**PRESIDIO COMPONENTS, INC.,**
*Plaintiff-Cross Appellant,*

**v.**

**AMERICAN TECHNICAL CERAMICS CORP.,**
*Defendant-Appellant.*

————————————

2010-1355, 2011-1089

————————————

Appeals from the United States District Court for the Southern District of California in Case No. 08-CV-0335, Chief Judge Irma E. Gonzalez.

————————————

Decided: December 19, 2012

————————————

BRETT A. SCHATZ, Wood, Herron & Evans, L.L.P., of Cincinnati, Ohio, argued for the plaintiff-cross appellant. With him on the brief was GREGORY F. AHRENS.

MARVIN S. GITTES, Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., of New York, New York, argued for the defendant-appellant. With him on the brief was TIMUR E. SLONIM.

————————————

Before RADER, *Chief Judge*, PLAGER and WALLACH, *Circuit Judges.*

RADER, *Chief Judge.*

After a trial, the United States District Court for the Southern District of California denied American Technical Ceramics Corporation's ("ATC") motions for judgment as a matter of law ("JMOL") and in the alternative a new trial on validity and infringement of U.S. Patent No. 6,816,356 ("the '356 patent"). *Presidio Components, Inc. v. Am. Technical Ceramics Corp.*, 723 F. Supp. 2d 1284 (S.D. Cal. 2010); *Presidio Components, Inc. v. Am. Technical Ceramics Corp.*, No. 3:08-CV-00335, 2010 WL 3070370 (S.D. Cal. Aug. 5, 2010) ("*Post-JMOL Order*"). ATC appeals these decisions. Presidio Components, Inc. ("Presidio") cross-appeals the district court's denial of a permanent injunction, JMOL on willfulness, and its ongoing royalty rate and false marking determinations. *Presidio*, 723 F. Supp. 2d 1284; *Post-JMOL Order*, 2010 WL 3070370. This court affirms the vast majority of the district court's determinations set forth in its comprehensive and attentive opinions with the exception of its finding of no irreparable injury, the related denial of a permanent injunction, and the ongoing royalty determination. This court also vacates the district court's false marking judgment due to an intervening change in law. For the reasons below, this court affirms-in-part, vacates-in-part, and remands.

## I.

Presidio is a family-owned niche manufacturer of electrical components for high-tech applications. It is operated by Dan Devoe and his two sons Alan and Lambert. The Devoes are the three listed inventors on the '356 patent, entitled "Integrated Broadband Ceramic Capacitor Array." ATC, a subsidiary of AVX Corporation, manu-

factures electrical components.  ATC's 545L capacitors, a variety of monolithic broadband capacitors, compete with Presidio's Buried Broadband capacitor ("BB capacitor"). At trial, Presidio asserted that ATC's 545L capacitors infringe the '356 patent.

Capacitors are passive electronic components used in numerous electrical systems including consumer electronics, mobile phones, and audio amplifiers.  These capacitors typically filter ripples or spikes in a power supply and store energy to provide a charge to other components on a printed circuit board.

A traditional capacitor comprises two parallel metal plates separated by a dielectric material, such as a ceramic or air.  Because the dielectric material is not conductive, a positive charge accumulates on one plate with a negative charge on the opposite plate.  The capacitor may release this stored energy by connecting the two plates through a conductive path that closes the circuit.  The amount of energy a capacitor can store is its "capacitance," which depends on the orientation of the metal plates and the properties of the dielectric material.

Frequently, multiple capacitors are combined to create a "multilayer capacitor."  A multilayer capacitor has several layers of conductive and non-conductive materials stacked together.  Each layer has its own electrical properties that affect the overall performance of the multilayer capacitor.  Capacitor design is a compromise between capacitance, resistance, and inductance.  These designs become more complicated as operational frequencies increase in broadband products.  In addition to layering, capacitor design typically must also accommodate mounting on a circuit board.  A capacitor designer must further consider manufacturing costs and size restrictions.  For example, the capacitors in this dispute are tiny—about

PRESIDIO COMPONENTS v. AMERICAN TECH                     4

the size of the tip of a sharpened pencil. They are relatively inexpensive and produced in quantities of several thousand per batch.

The '356 patent claims a capacitor design with a lower frequency portion and a higher frequency portion, for use in broadband applications. The patent teaches a multilayer integrated network of capacitors electrically connected in series and in parallel. This network of capacitors is disposed within a "substantially monolithic dielectric body," as shown in Fig. 10A. The invention incorporates both electrical and mechanical aspects. Conductive plates 10 and 11 extend from conductive contacts 12 and 13 on opposite sides of a ceramic dielectric body. This structure creates a capacitance between the internal plate combinations 10 and 11 in the upper section 60. At the same time a fringe-effect capacitance arises between external contacts 72 and 74 in the lower section 62 of the device. '356 patent col. 7 ll. 20-60.



FIG. 10A

On the mechanical side, the invention uses a "one-piece" design—an improvement over previous "two-piece" designs. A two-piece design, such as shown in Fig. 8A,

had to be joined both together and to a circuit board through soldering or an epoxy. This time-consuming process yielded a less reliable product that in turn was more difficult to use in mass production of end products.



PRIOR ART

FIG. 8A

Presidio asserted claims 1-5, 16, 18, and 19 of the '356 patent against ATC. Independent claim 1 is representative and recites as follows:

> 1. A capacitor comprising:
>
> a substantially monolithic dielectric body;
>
> a conductive first plate disposed within the dielectric body;
>
> a conductive second plate disposed within the dielectric body and forming a capacitor with the first plate;
>
> a conductive first contact disposed externally on the dielectric body and electrically connected to the first plate; and
>
> a conductive second contact disposed externally on the dielectric body and electrically connected to

the second plate, and the second contact being located sufficiently close to the first contact to form a first fringe-effect capacitance with the first contact.

'356 patent col. 12 l. 59–col. 13 l. 5.

According to inventor Lambert Devoe, the '356 patent covers and protects one of Presidio's main products, the BB capacitor. The BB capacitor is a monolithic capacitor used in fiber optic network amplifiers and other broad-band frequency applications. Another inventor, Dan Devoe, also testified that the '356 patent covered the BB capacitors. Based on this belief, Presidio marked the BB capacitors with a reference to the '356 patent. During this litigation however, Presidio conceded that the '356 patent did not cover the BB capacitors. Nonetheless, Presidio maintains that the BB capacitors have a "substantially monolithic dielectric body," as shown in Fig. 10A of the '356 patent.

Presidio filed the application leading to the '356 patent with the U.S. Patent and Trademark Office ("PTO") in April 2003. This application was a continuation-in-part of an application filed in 2002. The '356 patent issued in November 2004. In September 2003, ATC filed a provisional patent application for its work on the 545L broadband capacitor. After reviewing Presidio's published patent application in March 2004, ATC proceeded to file its non-provisional application in September 2004.

In February 2006, the PTO rejected ATC's application, citing the '356 patent as prior art. Nonetheless, ATC started selling 545L capacitors in June 2006. In August 2006, ATC responded to the PTO's rejection by arguing that the '356 patent did not teach "orientation insensitivity," a claimed limitation of its application. This argument convinced the PTO examiner and ATC's application

issued as U.S. Patent No. 7,248,458 ("the '458 patent") in July 2007.

Presidio sued ATC in February 2008, alleging ATC's 545L capacitors infringe the '356 patent. ATC subsequently brought numerous counterclaims against Presidio, including false marking of the BB capacitors with the '356 patent. In July 2009, ATC requested ex parte reexamination of the '356 patent. The PTO granted the request, identifying substantial new questions of patentability in light of nine prior art references identified by ATC. In September 2011, the PTO issued a reexamination certificate confirming patentability of the asserted claims without amendment.

The district court conducted a jury trial in December 2009. The jury found the asserted claims willfully infringed, not invalid, and awarded Presidio $1,048,677 in lost profits. The jury also found that Presidio's marking of the BB capacitors before its October 24, 2008 concession was not done for the purpose of deceiving the public.

After trial, the district court resolved a number of motions. It denied Presidio's motions for a permanent injunction, enhanced damages, and attorney fees, but granted Presidio $235,172.68 in supplemental damages. In response to motions from ATC, the trial court vacated the willfulness verdict and set an ongoing royalty rate of 12% of the 545L capacitor's wholesale price. At the same time, the trial court denied ATC's motions for JMOL or a new trial on noninfringement, anticipation, obviousness, lack of enablement, lack of written description, indefiniteness, and inequitable conduct. The district court went on to deny ATC's motion for JMOL on the jury's lost profit damages award; and on false marking prior to October 24, 2008. However, the trial court fined Presidio $228,086.25 for false marking after that date. *Presidio*, 723 F. Supp.

2d at 1288, 1293–1342; *Post-JMOL Order*, 2010 WL 3070370 at *1–7.

Between ATC's appeal and Presidio's cross-appeal, the parties have challenged the majority of the district court's determinations and numerous evidentiary issues. ATC asserts error on over a dozen issues. This court rejects ATC's attempt to retry the case anew on appeal. Presidio responded with at least five issues of its own on appeal. The parties' appeal strategy completely discounts and overlooks the thorough, well-reasoned, and detailed opinions of the district court. In nearly every respect, this court detects no reversible error. This court has jurisdiction over this appeal under 28 U.S.C. § 1295(a)(1).

## II.

This court reviews JMOL determinations after a jury verdict and new trial rulings as well under the same standard applied by the trial court. *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1309 (Fed. Cir. 2009). The United States Court of Appeals for the Ninth Circuit reviews a motion for JMOL as a matter of law. *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002). "JMOL is appropriate when 'a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue.'" *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1005 (9th Cir. 2004) (quoting Fed. R. Civ. P. 50(a)). A district court in the Ninth Circuit "may grant a new trial only if the verdict is against the clear weight of the evidence." *Id.* The resolution of a motion for a new trial is reviewed for abuse of discretion. *Id.*

## III.

On the issue of infringement, the jury found that ATC's 545L capacitors literally infringe the asserted

claims of the '356 patent. The district court had earlier determined on summary judgment that ATC did not infringe the patent indirectly or under the doctrine of equivalents. ATC challenges the jury's finding that the 545L capacitor meets the "substantially monolithic dielectric body" limitation of the asserted claims.

To prove literal infringement, a plaintiff must show that the accused device contains each and every limitation of the asserted claims. *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1301 (Fed. Cir. 2011). In infringement cases, the court first interprets the claims to determine their scope and meaning. *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1454 (Fed. Cir. 1998) (en banc). Next, the jury compares the properly construed claims to the allegedly infringing device. *Id.* "If any claim limitation is absent from the accused device, there is no literal infringement as a matter of law." *Bayer AG v. Elan Pharm. Research Corp.*, 212 F.3d 1241, 1247 (Fed. Cir. 2000). This court reviews a finding of infringement for substantial evidence. *Uniloc*, 632 F.3d at 1301.

The district court materially adopted ATC's proposed construction of "a substantially monolithic dielectric body" as "a dielectric body largely but not wholly without seams from the inclusion of plates within the dielectric body." *Presidio Components, Inc. v. Am. Technical Ceramics Corp.*, No. 3:08-CV-00335, slip op. at 6–8 (S.D. Cal. June 11, 2008). On appeal, ATC asserts the 545L capacitors do not contain seams and therefore the jury could not find infringement. ATC's contention focuses on the alleged admission of Presidio's expert, Dr. Huebner, that "there are no seams" in the 545L capacitors. J.A. 990–91. To the contrary, Dr. Huebner's testimony, taken as a whole, supports the jury's infringement determination. Dr. Huebner told the jury on direct examination that after analyzing the 545L capacitor, he concluded that it was a

one-piece construction that exhibited a substantially monolithic dielectric body.   J.A. 946–48.   On cross-examination, when discussing "seams," Dr. Huebner indicated that the word "seams" is not used by persons of ordinary skill in the art, thus he did not find "seams" in the 545L capacitor.   Dr. Huebner testified that if one were to examine any ceramic multilayer capacitor that is referred to as monolithic, one would find tiny voids present in the solid.   These tiny voids are referred to as "porosity" in the art.   He explained: "the term substantially monolithic, to me, implies that the vast majority of the component is solid, albeit there could be a percent or two [of porosity], and the same is true for the 545L.  There is some tiny amount of porosity present."  J.A. 978–79.

Simply put, he testified that no ceramic capacitor can be 100% monolithic, which is why the patent claims a "substantially monolithic" capacitor.   Further, based on his testimony that the 545L capacitor had 70 plates, ATC's counsel asked Dr. Huebner to assume that a seam is the boundary between a plate and the dielectric.   Dr. Huebner testified that under this hypothetical, ATC's 545L capacitor would have 140 seams and would thus be largely, but not wholly, without seams.  J.A. 991–95.  As this brief revisiting of Dr. Huebner's testimony shows, he did not admit without qualification that ATC's capacitors had no seams.   Rather he tried to explain his concept of a "substantially monolithic" capacitor.   Even if Dr. Huebner's direct and cross-examination are not entirely consistent, the jury had the ultimate discretion to evaluate his credibility and weigh his presentation.   *See Kinetic Concepts, Inc. v. Blue Sky Med. Group, Inc.*, 554 F.3d 1010, 1024 (Fed. Cir. 2009) (noting a jury can accept the testimony it finds most persuasive); *see also Doan v. United States*, 202 F.2d 674, 680 (9th Cir. 1953) ("It was for the jury who observed him and the manner and emphasis

with which he gave his answers on direct and cross-examination to weigh and evaluate his testimony ….").

ATC's expert, Dr. Dougherty, also testified that the 545L capacitor has 70 plates and corresponding seams. J.A. 1246. Presidio's expert, Dr. Ewell further explained to the jury that a substantially monolithic body sometimes has one seam per plate and sometimes each plate would have two associated seams. J.A. 1654–55. Taken together, this testimony also provides sufficient basis for the jury's conclusion that ATC's 545L capacitor has a substantially monolithic body.

This court affirms the district court's finding that substantial evidence supports the jury's verdict that ATC's 545L capacitors infringe the asserted claims of the '356 patent. This court has also considered ATC's numerous other arguments regarding the jury's infringement determination and finds no reversible error.

IV.

ATC challenges the district court's denial of JMOL on lost profit damages. At trial, Presidio presented both lost profits and reasonable royalty damages theories. Presidio asserted that ATC's infringing sales of 545L capacitors caused it to lose profits that it otherwise would have made from the BB capacitors. The jury awarded Presidio $1,048,677 in lost profits while finding a reasonable royalty not applicable. J.A. 292.

Presidio advanced its lost profits theory under the four-factor *Panduit* test, which requires Presidio to show: (1) demand for the patented product; (2) absence of acceptable noninfringing substitutes; (3) manufacturing and marketing capability to exploit the demand; and (4) the amount of profit that would have been made. *Depuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d

1314, 1329 (Fed. Cir. 2009) (citing *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978)).  ATC argues Presidio did not establish the first two *Panduit* factors.  With respect to the first factor—demand for the patented product—ATC contends Presidio's BB capacitors are neither covered by the asserted patent, nor in direct competition with the infringing 545L capacitors.

As an initial matter, the demand in question in the first *Panduit* factor is not limited to demand for the patented products.  Rather, demand may also arise from a product that "directly competes with the infringing device."  *Depuy Spine*, 567 F.3d at 1330 (citing *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1548–49 (Fed. Cir. 1995) (en banc)).  Because Presidio conceded that the '356 patent does not cover its BB capacitors, this record must show that the BB capacitors directly competed with ATC's 545L capacitors.

ATC argues that the record does not link market demand with the claimed fringe-effect capacitance limitation.  This argument fails because the first *Panduit* factor "does not require any allocation of consumer demand among the various limitations recited in a patent claim."  *Depuy Spine*, 567 F.3d at 1330.  Next, ATC argues that the record does not show that the BB capacitors and the 545L capacitors are sufficiently similar.  According to ATC, the two capacitors have different characteristics and served different markets.  ATC contends that the 545L capacitors have a lower insertion loss, 0.3 dB at 40GHz, and were designed to compete in a higher performance market than the BB capacitors with their higher insertion loss of 0.9 dB at 40GHz.  Thus, ATC asserts the jury could not have found that Presidio established the first *Panduit* factor.

To the contrary, Presidio's BB capacitor and ATC's 545L capacitor are both one-piece broadband capacitors with a substantially monolithic design. Presidio's damages expert, Mr. Newman, testified that the two products compete "head-to-head" in the one-piece capacitor market for the same customers and for the same applications. J.A. 1035–36, 1043. Mr. Newman supported his conclusion using third-party market studies and ATC's internal documents. He stated these sources showed customer demand moving from a two-piece design to a one-piece design, resulting in substantial sales of one-piece capacitors. For example, one ATC document compares the 545L capacitor to the BB capacitor's electrical performance while highlighting the 545L's "[o]ne-piece construction, with its inherently higher reliability." J.A. 1037–38, 2720–21. Mr. Newman further testified that by 2008, ATC was selling several hundred thousand 545L capacitors per year while Presidio was selling over one million BB capacitors per year.

The record also contains Lambert Devoe's explanation that the BB and 545L capacitors are the same type of broadband capacitor used in the same applications, which are different from ATC's other products like its previous generation 540L capacitors. J.A. 682–684. Finally, one ATC witness testified that at least some of its 545L capacitor customers also purchased BB capacitors. J.A. 1136.

In sum, substantial evidence supports the jury's finding that demand existed for Presidio's BB capacitors and that they directly competed with the infringing 545L capacitor. *See Depuy Spine*, 567 F.3d at 1330. This court therefore affirms the district court's finding that Presidio satisfied the first *Panduit* factor.

With respect to the second *Panduit* factor—absence of acceptable noninfringing substitutes—ATC argues the prior art ATC 540L capacitors and DLI's Opticap capacitors were available substitutes for the BB capacitors during the relevant period.  ATC states that customers would have chosen its 540L capacitors with their standard 0402 size and lower insertion loss at 40GHz, compared to Presidio's BB capacitors with their allegedly nonstandard 0502 size and higher insertion loss at 40GHz.  Once again, a review of the record overcomes these assertions.

"A patentee need not negate every possibility that the purchaser might not have purchased a product other than its own, absent the infringement." *Rite-Hite*, 56 F.3d at 1545; *accord King Instrument Corp. v. Otari Corp.*, 767 F.2d 853, 864 (Fed. Cir. 1985) ("[A patentee] need not meet the impossible burden of negating every possibility that a purchaser might not have bought another product or might not have bought any comparable product at all.").  Here, Presidio "need only show that there was a reasonable probability that the sales would have been made 'but for' the infringement." *Rite-Hite*, 56 F.3d at 1545.  Moreover, the "[m]ere existence of a competing device does not make that device an acceptable substitute." *TWM Mfg. Co. v. Dura Corp.*, 789 F.2d 895, 901 (Fed. Cir. 1986).  In some instances, as is true in this case, products lacking the advantages of the patented invention "can hardly be termed a substitute acceptable to the customer who wants those advantages." *Id.* at 901–02 (quoting *Panduit*, 575 F.2d at 1162).

The record shows that the proposed non-infringing substitutes are not adequate substitutes in the same market at all.  ATC's 540L capacitors are broadband capacitors of a two-piece design.  They were the previous generation capacitor replaced by ATC's 545L.  After the

545L capacitor was released, ATC's 540L capacitor sales decreased, while its 545L capacitor sales increased to significant levels. As noted above, two-piece capacitors had inferior reliability and performance results compared to one-piece capacitors. Two ATC employees testified that the 540L product suffered from drawbacks common with two-piece capacitors. The markets are also different because most assembly machines accept a single component, not a two-piece assembled component like the 540L. Indeed, delicate two-piece capacitors break if set in place with too much force. J.A. 6656–6657.

The record also includes Lambert Devoe's testimony that the BB capacitor did not have any competing devices until introduction of ATC's 545L capacitors in 2006. In fact, the BB capacitors were the only one-piece solution on the market when introduced in 2003. It took Presidio, a small niche competitor, a few years to generate significant demand for the BB capacitors. Lambert Devoe further testified that the growth rate of the BB capacitor sales started to decline upon introduction of the 545L capacitor.

The jury also heard Presidio's expert, Mr. Newman, explain that products other than the BB capacitors could not have met the demand if 545L capacitors were removed from the marketplace. Mr. Newman testified that sales of ATC's two-piece 540L capacitors were declining prior to ATC's launch of the 545L capacitor. He further discussed how both Presidio and ATC recognized that the market was moving from two-piece to one-piece designs.

ATC argues customers would have turned to the two-piece DLI Opti-Cap capacitor had they not purchased 545Ls. Mr. Newman testified that ATC did not view the Opti-Cap as competition for itself or Presidio. ATC communications show that during development of the 545L, ATC had not found any customers who liked DLI's prod-

uct because "[m]echanially, it is difficult to work with and electrically, it does not perform as well as competitive devices (specifically ours and Presidio's).  So for all practical purposes, DLI is not a major concern."  J.A. 1047–48, 2384.

The record contains substantial evidence to support the market's migration away from a two-piece design, thus supporting the jury's finding of no acceptable noninfringing substitutes.  *See Rite-Hite*, 56 F.3d at 1545.  This court therefore affirms the district court's finding that Presidio satisfied the second *Panduit* factor.  In sum, the record supports the jury's lost profits verdict with substantial evidence.  This court has considered the remainder of ATC's arguments and does not find reversible error.

## V.

On cross-appeal, Presidio contends the district court erred in denying a permanent injunction in light of its finding that the '356 patent is not invalid and infringed by ATC's 545L capacitors.  Presidio and ATC both challenge the district court's ongoing royalty determination, awarded in light of the court's denial of a permanent injunction.  Based on the four-factor test for permanent injunctions, the district court denied Presidio's request for a permanent injunction.  Specifically the trial court detected no irreparable injury or inadequacy of monetary damages.  The court also found that the balance of hardships favored injunction, while the public interest tipped in ATC's favor.  The trial court noted that "substantial evidence supported the jury's finding that demand existed for the BB capacitors, which compete with the 545L capacitors."  With this direct competition in the same market, the district court still opined that ATC was not a direct competitor for purposes of finding irreparable injury.  *Presidio*, 723 F. Supp. 2d at 1326, 1336–37.  The

tension created by acknowledging competition for one purpose but not for another, combined with Presidio's other evidence showing irreparable injury, shows that the district court clearly erred by dismissing the irreparable injury evident on this record.

Of course the axiomatic remedy for trespass on property rights is removal of the trespasser. *See* 35 U.S.C. § 154(a)(1) ("Every patent shall contain … a grant to the patentee … of the right to exclude others from making, using, offering for sale, or selling the invention …."). However, particularly with an eye to protecting the public interest, the decision to deny a permanent injunction remains within the equitable discretion of the district courts. *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). A trial court, though, can misapply and abuse that discretion with "a clear error of judgment in weighing relevant factors or . . . an error of law or clearly erroneous factual findings." *lnnogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1379 (Fed. Cir. 2008) (quoting *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 772 (Fed. Cir. 1993)). "To the extent the court's decision is based upon an issue of law, we review that issue de novo." *Sanofi-Synthelabo v. Apotex, lnc.*, 470 F.3d 1368, 1374 (Fed. Cir. 2006).

Equity sets forth the four-factor test for removal of a trespasser from property infringement. *eBay*, 547 U.S. at 391. This analysis proceeds with an eye to the "long tradition of equity practice" granting "injunctive relief upon a finding of infringement in the vast majority of patent cases." *Id.* at 395 (Roberts, C.J., concurring). This historical practice of protecting the right to exclude through injunctive relief is not surprising given the difficulties of protecting this right solely with monetary relief. Indeed, a calculating infringer may thus decide to risk a delayed payment to obtain use of valuable property without prior negotiation or the owner's permission.

While a patentee is not entitled to an injunction in every case, "it does not follow that courts should entirely ignore the fundamental nature of patents as property rights granting the owner the right to exclude." *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1149 (Fed. Cir. 2011). This court reviews the district court's decision to impose an ongoing royalty, in light of its denial of a permanent injunction, for abuse of discretion. *Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1315 (Fed. Cir. 2007).

As noted, the district court's finding of no competition for the purpose of irreparable harm conflicts with the clear finding of competition for the purpose of awarding damages. Indeed the record shows direct and substantial competition between the parties. The trial court found that ATC and Presidio shared some of the same customers, that the two products occupy the same markets, and that Presidio was at times seen as ATC's only true competitor. *Presidio*, 723 F. Supp. 2d at 1336–37. Indeed, in its damages award the jury also found this direct competition. *Id.* at 1327. As discussed above, the record contains substantial evidence to support these findings. To briefly recount, the record shows that Presidio and ATC were competing for the same customers in the same markets. In fact, ATC considered Presidio the most significant, if not the only, competitor for the 545L capacitors. *See, e.g.*, J.A. 1054, 1136, 2359, 2384. For example, during the 545L capacitor's development, the named inventor of ATC's '458 patent reported to ATC's Vice President of RF Engineering that "[u]nfortunately, our original belief that Presidio was not a threat because of their small size and limited production capability was totally wrong." J.A. 2384.

In addition to the jury's implicit finding of direct competition, Presidio showed that it was unwilling to license the '356 patent. The district court correctly found Presi-

dio's unwillingness to license favored finding irreparable injury. In light of the record evidence of direct competition, the district court placed too much weight on Presidio's failure to practice the '356 patent. While Presidio conceded during this litigation that its BB capacitors do not practice the '356 patent, this does not prevent Presidio from receiving injunctive relief, as the district court properly noted. Even without practicing the claimed invention, the patentee can suffer irreparable injury. Direct competition in the same market is certainly one factor suggesting strongly the potential for irreparable harm without enforcement of the right to exclude. *See Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 703 (Fed. Cir. 2008) (citations omitted).

Here, Lambert Devoe testified that the BB capacitor is one of Presidio's main products. Presidio also alleges that ATC dissected and analyzed its BB capacitors while developing the 545L capacitor. Independent of any alleged reverse engineering, ATC analyzed the published '356 patent application during development of the 545L capacitor before filing its non-provisional '458 patent application. Further, the PTO used Presidio's '356 patent application as prior art against ATC's application. This indicates, as the jury implicitly found, the BB and 545L capacitors embody similar technology and are close competitors. The jury also awarded lost profit damages, while expressly finding a reasonable royalty not applicable. J.A. 292. Thus, the jury necessarily found ATC's 545L capacitor sales caused Presidio to lose BB capacitor sales. This squarely supports a finding of irreparable harm. The record shows that ATC did not present sufficient evidence to overcome Presidio's showing of irreparable injury inflicted by ATC's entry into the market. These findings, combined with Presidio's unwillingness to license the '356 patent, reveal that the district court clearly

erred in finding no irreparable injury.  *See Robert Bosch*, 659 F.3d at 1151 (holding district court erred in not finding irreparable harm when the parties were direct competitors, patentee showed lost market share and access to potential customers, and defendant lacked financial stability).

Because the district court clearly erred in finding no irreparable injury, this court concludes that the district court abused its discretion when it denied Presidio a permanent injunction.  *See Innogenetics*, 512 F.3d at 1379.  Accordingly, this court vacates the district court's denial of Presidio's motion for a permanent injunction and remands for a re-weighing of the four-factors consistent with this opinion.  This court also vacates the district court's ongoing royalty determination, which was predicated on the district court's denial of a permanent injunction.

## VI.

Both ATC and Presidio challenge portions of the district court's findings regarding ATC's false marking counterclaim under 35 U.S.C. § 292.  ATC contends that the district court erred in declining to grant JMOL overturning the jury's finding of no false marking before October, 24, 2008.  Presidio asserts that the district court erred in granting summary judgment of liability for false marking after Presidio's October 24, 2008 admission that the BB capacitors are not covered by the '356 patent.  ATC and Presidio both argue that the district court abused its discretion in determining the fine for Presidio's false marking after October 24, 2008.  This court reviews false marking fines for abuse of discretion.  *Forest Group, Inc. v. Bon Tool Co.*, 590 F.3d 1295, 1302 (Fed. Cir. 2009).  This court reviews the grant of summary judgment with-

out deference.  *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 424 F.3d 1374, 1378 (Fed. Cir. 2005).

As an initial matter, this court must determine whether recent changes to the false marking statute apply to this appeal.  While ATC's appeal was pending before this court, the President signed into law the Leahy-Smith America Invents Act, Pub.L. No. 112–29, § 16, 125 Stat. 284, 329 (2011) ("AIA").  The AIA made several changes to the false marking statute, 35 U.S.C. § 292, including eliminating the *qui tam* provision supporting ATC's false marking claim.  *Id.*  Under the amended statute, a person must show they have "suffered a competitive injury" to recover false marking damages.  *Id.* § 16(b)(2); *see also* 35 U.S.C. § 292(b).  ATC contends that these AIA amendments do not apply to its false marking counterclaim because the claim was not pending on September 16, 2011, when these AIA amendments were enacted.

Because the amendments to the false marking statute apply retroactively, they cover this appeal.  An Act must clearly indicate its retroactive application.  *See Landgraf v. USI Film Prods.*, 511 U.S. 244, 272-73 (1994).  Section 16 of the AIA states in relevant part:

(b) FALSE MARKING—

(1) CIVIL PENALTY.—Section 292(a) of title 35, United States, Code, is amended by adding at the end the following: "Only the United States may sue for the penalty authorized by this subsection."

(2) CIVIL ACTION FOR DAMAGES.—Subsection (b) of section 292 of title 35, United States Code, is amended to read as follows: "(b) A person who has suffered a competitive injury as a result of a viola-tion of this section may file a civil action in a dis-

> trict court of the United States for recovery of damages adequate to compensate for the injury."
>
> …
>
> (4) EFFECTIVE DATE.—The amendments made by this subsection shall apply to all cases, without exception, that are pending on, or commenced on or after, the date of the enactment of this Act.

The statute's "shall apply to all cases, without exception" language shows a clear intent to preclude all private false marking cases, including cases pending in this appellate court.  The AIA's legislative history confirms that meaning.  157 Cong. Rec. S1360–02 at S1372 (Sen. Kyl) ("It is anticipated that courts will find the same clarity in the language of section 2(k)(2) [of this law], and will apply the revised section 292(b) to cases pending at any level of appeal or review."); *see also generally Boumediene v. Bush*, 553 U.S. 723, 738–39 (2008) (employing legislative history in determining whether legislation was intended to deprive federal courts of jurisdiction to entertain certain habeas corpus actions pending at time of enactment).

In sum, this court applies the AIA's false marking amendments to this case.  *See Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 226 (1995) ("When a law makes clear that it is retroactive, an appellate court must apply that law in reviewing judgments still on appeal that were rendered before the law was enacted, and must alter the outcome accordingly.").  Thus, ATC does not have a claim under amended 35 U.S.C. § 292(a) because this statute only allows the United States to bring a false marking claim.  This court does not reach the question whether ATC has a claim under the amended § 292(b) because the district court has not had an opportunity to address it in the first instance.  This court has reviewed ATC and

Presidio's other arguments directed toward the district court's false marking findings and it finds no reversible error.

Under the amendments to 35 U.S.C. § 292, ATC's appeal of its *qui tam* false marking counterclaim is moot. This court vacates the district court's judgment in favor of ATC and against Presidio on ATC's claim of false marking. This court does not disturb the district court's underlying determinations supporting its false marking judgment.

## VII.

For the foregoing reasons, this case is remanded to the district court for further proceedings consistent with this opinion.

### AFFIRMED-IN-PART, VACATED-IN-PART, AND REMANDED

#### COSTS

Costs to Presidio.

CERTIFIED COPY
I HEREBY CERTIFY THIS DOCUMENT
IS A TRUE AND CORRECT COPY
OF THE ORIGINAL ON FILE.

UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

By: *Jane Benjamin* Date: 1/30/2013